## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

WAYNE R. GRAY,

                    Plaintiff,

vs.                                                      CASE NO.: _____

NOVELL, INC., and
THE SCO GROUP, INC., and
X/OPEN COMPANY LIMITED,                                  Jury Trial Demanded

                    Defendants.

_____

## COMPLAINT

### I.  NATURE OF CASE.

1.   Plaintiff, Wayne R. Gray ("Gray") brings this action against Novell, Inc. ("Novell") The SCO Group, Inc. ("SCO"), and X/Open Company, Ltd., ("X/Open"), seeking cancellation of two UNIX trademark federal registrations and appropriate compensation for damages under the laws of the United States and laws of the State of Florida relating to violations of the federal Racketeer Influenced and Corruption Organizations Act (Civil RICO), fraud, conspiracy to commit fraud, Lanham Act trademark violations, the Florida RICO Act and the Florida Communications Fraud Act, and demands trial by jury.

2.   The present claims are based upon Defendants' long-running scheme involving willful false and fraudulent acts that evidently began in or about October 1993 associated with, *inter alia,* their agreements to conceal the identity of the lawful owner of the UNIX trademarks, their false claims relating to the UNIX marks and fraudulent federal filings, and false UNIX

Dockets.Justia.com

mark acknowledgements implying and/or stating publicly that X/Open owns the UNIX marks.

3.   As part of their scheme, Defendants Novell and X/Open, unrelated legal entities joining together as members of a corrupt enterprise, agreed in or about 1994 to initiate a UNIX trademark re-licensing business unlawfully using the two previous UNIX mark registrations for computers and software, and agreed to use and to force their customers, competitors, and other third parties to use deceptive and false UNIX mark acknowledgements, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

4.   Novell transferred its UNIX operating system software business assets, the two UNIX and two UNIXWARE marks and other UNIX assets to Santa Cruz Operation, Inc. ("Santa Cruz", as SCO's predecessor in interest) in a September 19, 1995 Asset Purchase Agreement (the "APA"), having a closing date on about December 6, 1995.

5.   Santa Cruz joined the corrupt enterprise and scheme about September 1996 and agreed, *inter alia,* to conceal the 1995 transfer of the UNIX marks and certain associated assets and contracts to Santa Cruz, to conceal the enterprise's prior false and fraudulent acts, and to continue to publish false implications or statements that X/Open owned the UNIX marks, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

6.   As part of their scheme, Novell (as purported assignor) and X/Open, with Santa Cruz's participation, willfully executed a false UNIX marks assignment agreement purportedly on November 13, 1998, each knowing Novell was not the UNIX marks lawful owner after 1995.

7.   X/Open furthered their scheme and fraud, recording the false assignment documents, filing them before the United States Patent and Trademark Office ("PTO") in June 1999.

8.   Novell, X/Open and Santa Cruz agreed in or about 1999 that X/Open would send by mail and/or wire fraudulent trademark enforcement letters (one dated February 27, 2001was sent

by U.S. mail to Gray) and initiate objectively baseless sham UNIX mark enforcement lawsuits to advance and conceal their scheme, to promote and profit from a new and different re-licensing business, to conceal their fraudulent acts and to specifically conceal their scheme to appropriate Gray's iNUX trademark and domain name property for their use, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

9. Gray registered "inux" domain names in January 1999 and filed a federal application in April 1999 to register his iNUX mark for software. X/Open filed an opposition action against said application before the Trademark Trial and Appeal Board ("TTAB") of the PTO alleging iNUX infringed upon the UNIX marks in order to further Defendants' scheme, to conceal the prior fraudulent acts and unlawfully appropriate Gray's iNUX property.

10. X/Open's malicious PTO opposition against Gray has continued for over five years with the specific intent to appropriate Gray's iNUX mark and domain names for its own use, to injure his good name and to destroy his iNUX business and property by depletion of his limited financial resources through objectively baseless sham litigation, thus ensuring future association of the iNUX mark and domain names with products and/or services originating only from one or more of the Defendants.

## II.  THE PARTIES.

11.  Plaintiff Gray is an individual and U.S. citizen residing in Hillsborough County, Florida, who registered the "inux.com" and "inux.net" domain names respectively on January 17th and 20th, 1999 and is Defendant/counterclaimant in TTAB trademark opposition No. 91122524 filed by X/Open on April 11, 2001 based upon the UNIX marks and Gray's iNUX application, Serial No. 75680034, filed April 29, 1999. Gray received his engineering degree

from the University of Florida and has over 20 years experience in computer software, hardware and real-time embedded systems applications, development and/or marketing.

12.   Defendant Novell is a Delaware corporation with its executive offices and headquarters in Waltham, Massachusetts that does business in Florida. Novell is a software company and maintains a significant presence on the World Wide Web by which it markets its products and/or services to potential customers. Novell is the purported 1998 assignor to X/Open of UNIX trademark Registration No. 1392203 issued May 6, 1986, for "computer programs" in Class 9, and UNIX trademark Registration No. 1390593 issued April 22, 1986, for "computers" in Class 9, (herein as the "UNIX marks").

13.   Defendant SCO is a Delaware corporation with its executive offices and headquarters in Lindon, Utah that does business in Florida. Defendant is a software company and maintains a significant presence on the World Wide Web by which it markets its products to potential customers. SCO is Santa Cruz's successor in interest, having acquired the assets and assumed the liabilities of Santa Cruz as to UNIX matters.

14.   Defendant X/Open, also known as The Open Group, is a United Kingdom corporation with its headquarters in Reading, Berkshire, England that does business in the U.S. X/Open is a technology consortium that maintains a significant presence on the World Wide Web by which it markets its products and/or services to potential customers. X/Open is the purported 1998 assignee of the UNIX marks, and filed TTAB Opposition No. 91122524 on April 11, 2001 opposing Gray's iNUX trademark registration application.

## III.  JURISDICTION AND VENUE.

15.   This Court has subject matter jurisdiction over Gray's trademark claims under 15

U.S.C. § 1121, and has jurisdiction over Gray's claims for federal civil RICO violations under 18 U.S.C. §§ 1964(a) and 1964(c), in addition to jurisdiction under 28 U.S.C. §§ 1331, 1332, 1337 and 1338.

16.   Based on its subject matter jurisdiction set forth above, the Court also has supplemental jurisdiction over Gray's Florida common law and statutory claims pursuant to 28 U.S.C. § 1367.

17.   This Court has personal jurisdiction over Novell because Novell has agent(s) in and transacts substantial business in the State of Florida.

18.   This Court has personal jurisdiction over SCO because SCO has agent(s) in and transacts substantial business in the State of Florida.

19.   This Court has personal jurisdiction over X/Open because X/Open is an alien corporation that transacts substantial business in the U.S., including the Middle District of Florida.

20.   Venue is proper in this Court pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), (c) and (d) because of the residences and business dealings of the domestic corporate defendants and the fact that X/Open is an alien corporation, and a substantial part of the property that is the subject of this action is situated in the Middle District of Florida.

21.   The amount in controversy between the parties exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest, attorneys' fees, and costs.


## IV.  HISTORICAL BACKGROUND

22.   The original owner of the registered UNIX marks was American Telephone and Telegraph Company, and the business of a related company, AT&T Technologies, Inc. (herein

collectively "AT&T"), included licensing software source code products to unrelated companies at least as early as 1985.

23.    AT&T's UNIX licensing businesses and business assets were subsequently transferred to Unix System Laboratories, Inc. ("USL"), and that transfer of the registered UNIX marks was recorded in the PTO on about May 18, 1990.

24.    USL was purchased by and merged into Novell on about June 14, 1993, and the corresponding transfer of the registered UNIX marks was executed on April 29, 1994 and recorded in the PTO on July 27, 1994.

25.    UNIX trademark licensing prior to June 1993 required the licensed UNIX software to have been derived from AT&T/USL UNIX software source code. Licensing was based in significant part on versions and/or editions of UNIX definition specifications developed and owned by AT&T/USL, including, among others, those specifications known as UNIX System V Interface Definition ("SVID") and the corresponding testing software known as System V Verification Suite ("SVVS").

26.    Following a significant feud between Novell and Microsoft, Inc. ("Microsoft") over a failed merger or buy-out, Novell purchased in about 1993 and 1994 (reportedly for over $1.7 billion) the UNIX operating system as well as office programs known as WordPerfect and Quatro Pro, on information and belief apparently believing that integrating those with its leading NetWare networking software would give it a competitive edge over Microsoft and its products, and additionally Novell began cooperating with the Federal Trade Commission in an investigation of Microsoft.

27.    Novell's UNIX purchase was met with suspicion by certain members of its third-party marketing channel, UNIX code licensees, customers, competitors, and/or the relevant

public, as some believed Novell's intent was to take UNIX proprietary and dominate the UNIX software market, whereas UNIX had always been "open" software.

28.  On information and belief, Novell did not want to anger its marketing channel, licensees, customers and others and jeopardize its UNIX business revenue stream of about $100 million annually, or damage its NetWare products revenue of well over $1 billion annually (damage which could result in a loss of networking products market share to Microsoft), and therefore agreed about September 1993 to appear to relinquish to the X/Open consortium ownership and competitive advantage control of the valuable UNIX marks and certain UNIX assets at a meeting of about 75 computer systems industry vendors that included certain UNIX software source code licensees, but Novell actually retained effective control.

**The Scheme to Conceal Novell's Continuing UNIX Trademarks Ownership**

29.  On information and belief, Novell and X/Open schemed in and after October 1993 to conceal Novell's true intentions of retaining ownership of the valuable UNIX marks and developing a proprietary and closed version of UNIX that would integrate its proprietary NetWare networking technologies with the intent of securing for themselves certain UNIX software competitive advantages and UNIX market domination, while slowing or even reversing Microsoft's increasing computer operating system and office productivity software market share growth, thereby furthering Novell's goal of increasing its dominate networking products market share position over Microsoft.

30.  To advance their scheme, Novell and X/Open agreed that Novell would initiate a new and different UNIX mark re-licensing business to be operated by X/Open as one of its technology certification businesses, and they agreed to falsely imply and/or state publicly that X/Open owned the UNIX marks in and after 1993 and conceal Novell's continuing ownership of

the UNIX marks and certain UNIX assets.

31.   In an article entitled "X/Open Receives UNIX Trademark From Novell" dated

October 11, 1993, embedded in the public Internet newsgroup posting dated October 13, 1993

entitled "The Name 'UNIX' is now the property of X/Open", Ray Noorda, then president and

CEO of Novell, Inc. is quoted as stating:

> "We are transferring the UNIX trademark to X/Open …. We are confident in the
> stewardship of X/Open as the new home for the UNIX trademark."

32.   X/Open falsely implies and/or states in the same article that Novell transferred the

UNIX marks to X/Open in a "Q&A" section in the answer to "Q4", in part stating:

> Novell will continue to own one product (a single implementation of UNIX)
> which currently conforms to the specification.  Novell is clearly free to evolve
> that product in any way that it chooses, but may only continue to call it UNIX if
> it maintains conformance to the X/Open specifications.

33.   Martin Kirk, then X/Open Development Manager, announced that Novell

transferred the UNIX mark to X/Open in a public Internet newsgroup posting dated October 14,

1993 entitled "The Name 'UNIX' is now the property of X/Open", stating "At 4:30 BST

October 11, X/Open and Novell formally announced the transfer of the UNIX trademark to

X/Open," and he also signaled the abandonment of the marks as registered, stating "Currently

UNIX as a trademark is a TECHNOLOGY trademark. As soon as Spec1170…is finalised,

UNIX will become a CONFORMANCE trademark, applicable to any system which conforms to

this approved X/Open spec."

34.   X/Open employee Graham Bird falsely stated that Novell transferred the UNIX

marks ownership to X/Open in a public Internet newsgroup posting dated December 22, 1993

entitled "BBS recommendations UNIX Trademark", stating therein "The UNIX trademark has

been transferred to X/Open Company Ltd."

35.   On information and belief, X/Open and Novell in furtherance of their scheme, in or about May 1994 entered into one or more agreements relating and/or referring to the UNIX marks, some being known or referred to as UNIX trademark re-licensing agreements, wherein they conspired to:

a.  continue concealment of Novell's ownership of the UNIX marks and certain UNIX assets;

b.  abandon the UNIX marks as registered and use the marks exclusively as unregistered certification marks;

c.  initiate, promote and profit from a new and different UNIX mark re-licensing and certification business unlawfully using the two previous UNIX mark registrations for computers and software, to be operated by X/Open and significantly based upon their false representations that X/Open was the UNIX marks' lawful owner and/or registrant; and

d.  use the new UNIX mark re-licensing and certification business and its fraudulent UNIX marks ownership representations to conceal and advance their scheme and fraudulent acts that included, *inter alia*, influence and/or control of interstate and international commerce in certain government and commercial computer software markets;

which actions reasonably contemplated regular use of U.S. mail and/or wire communications.

36.   Novell and X/Open, in furtherance of their scheme, agreed to use deceptive and materially false UNIX mark acknowledgements in and after 1994 that deliberately omitted and fraudulently concealed Novell as the lawful owner of the UNIX marks and falsely implied and represented that X/Open was the UNIX marks owner in written agreements, contracts, press releases, letters and other communications and things, such acknowledgements being substantially similar to the following (herein the "first acknowledgement"):

UNIX is a registered trade mark in the United States and other countries, licensed exclusively through X/Open Company Ltd.

37.   Novell and X/Open, in furtherance of their scheme and false representations that X/Open was the UNIX marks lawful owner in and after 1994, agreed to instruct Novell's UNIX software source code licensees, X/Open's consortium members and/or licensees, licensees' customers, U.S. government departments or agencies, the relevant public and other third parties in letters, press releases and documents and other means, to use deceptive UNIX mark acknowledgements substantially similar to the first acknowledgement set forth above, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

38.   X/Open's willful use of deceptive UNIX mark acknowledgements substantially similar to said first acknowledgement set forth above in press releases in and after 1994 implying it was the UNIX marks lawful owner includes, among others, an October 4, 1994 press release entitled "Single Unix Specification Now Available", publicly Internet posted on October 15, 1994 by X/Open Director of Branding Graham Bird.

39.   X/Open willfully sent press releases, documents and letters by mail and/or wire requiring use of deceptive UNIX mark acknowledgements substantially similar to said first acknowledgement set forth above in and after 1994, including, among others, the following:

a.   X/Open legal counsel Steve Nunn email entitled "UNIX Trademark Acknowledgement" dated June 6, 1994; a copy received by AT&T is embedded in employee Richard Dimock's November 1, 1995 public internet posting entitled "UNIX-the OWNER's LAWYER sez", wherein Mr. Dimock, reasonably relying upon X/Open's misrepresentations, stated "...perhaps you would like to talk to the trademarks owner's lawyer about your observance of their trademark. … Here is the word from Steve Nunn, legal counsel for X/Open Company Limited.", and Mr. Nunn in his email stated the following:

….with immediate effect, the correct trademark acknowledgement for UNIX should be:

"UNIX is a registered trademark in the United States and other countries, licensed exclusively through X/Open Company Limited".

b.  X/Open press release entitled "Companies Warned: UNIX Belongs to X/Open" published in "UniNews" and elsewhere on or about August 31, 1994, and believed sent to UniNews members and/or subscribers and others on about August 1994 by U.S. mail and/or wire communications. It is believed that a copy of said document was received by Karen McBride of "CAUSE" by mail and/or wire on about September 1994 and, reasonably relying upon X/Open's false statements, she embedded said document into a September 8, 1994 public Internet posting entitled "The spelling of UNIX", and therein X/Open stated:

All official references to UNIX in company literature, advertisements and public announcements should include the line: "UNIX is a registered trademark in the United States and other countries, licensed exclusively through X/Open Company Ltd." **All references to** AT&T, USL and **Novell should be deleted**. (emphasis added)

X/Open falsely stated therein that Novell transferred the UNIX marks to it in 1994:

X/Open officially took possession of the UNIX trademark earlier this year after Novell's announcement in October 1993 that it would transfer the UNIX brand to X/Open's control.

40.  Apparently certain Novell employees were directly and/or indirectly aware of the Novell-X/Open scheme and publicly suggested that X/Open was not the UNIX marks lawful owner or registrant, including, among others, Novell employee Martin Sohnius in the following public newsgroup postings:

a.  "UNIX vs. NT" dated September 23, 1994, responding to the posted comment "Novell doesn't own the trademark any more," Mr. Sohnius states:

"I believe the legal situation is a bit subtler than that (read those trademark acknowledgments carefully!)..."

11

b.  "Re: Unix tm" dated October 18, 1994, Mr. Sohnius states:

"I believe the current wording is: UNIX is a Registered Trademark, licensed exclusively by X/Open Ltd. (note that is does *not* state who owns the trademark :-)."

41.  Novell's willful use of deceptive UNIX mark acknowledgements substantially similar to said first acknowledgement set forth above in press releases excluding and concealing Novell as the UNIX marks lawful owner includes, among others, a January 10, 1995 press release entitled "Novell Introduces UnixWare(R) 2" archived at www.archive.org by "Internet Archive Wayback Machine" (hereinafter "Wayback") on June 6, 1997.

42.  Novell willfully implied publicly that X/Open was the UNIX marks lawful owner at its website trademark legal pages entitled "Copyright © 1996 Novell, Inc.," Wayback archived on October 22, 1996 and on December 20, 1996, therein using a deceptive UNIX mark acknowledgement substantially similar to said first acknowledgement set forth above.

43.  Novell sent letters to persons by U.S. mail instructing use of deceptive UNIX mark attributions substantially similar to said first acknowledgement set forth above include, among others, Novell Director of Software Licensing Stephen Baker's letters sent to Novell's primary UNIX software licensees in or about 1994, discussed in a September 29, 1994 public Internet newsgroup posting entitled "UNIX or Unix?", wherein Unisys Corp. employee Gary Greene states therein "This letter details the transfer of control of the UNIX trademark to X/Open Company Ltd.", reasonably relying upon said letter he states "I cannot think of a more authoritative source…" and quotes Mr. Baker as stating in his July 29, 1994 letter to Unisys Corp. (a Novell UNIX software licensee) that the attribution for the UNIX trademark has changed to the following:

"UNIX is a registered trademark in the United States and other countries,

licensed exclusively through the X/Open Company Limited."

44. X/Open willfully issued deceptive and/or false <u>original issue</u> and <u>renewal copy</u> (of original issue and believed annual) technology certification Certificates in and after 1995 (herein as the "Certificates") to UNIX source code software licensees, X/Open's technology licensees, licensees' customers and other third parties, and many, but not all, relate to compliance with versions of X/Open's "Single UNIX Specification" that is associated with the Novell-X/Open UNIX trademark re-licensing business and its unlawful use of the two previous UNIX mark registrations. The Certificates include deceptive UNIX mark acknowledgements similar to said first acknowledgement set forth above, and are associated with, among others: "Base", "UNIX 93 Profile", "UNIX 93", "Base 95" and "UNIX 95" certification, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

45. X/Open's false Certificates include, among others:

a. "UNIX 93 Profile" Certificate No. P1050 originally signed by X/Open President and CEO Geoffrey E. Morris and issued to Novell, first issue date of March 9, 1995 and believed to have been mailed and/or wired by X/Open to Novell on about March 1995, and

b. "UNIX 93" Certificate No. P1086 (renewal copy) believed originally signed by X/Open President and CEO Geoffrey E. Morris and issued to Unisys Corporation ("Unisys"), December 22, 1995 first issue date and believed to have been mailed and/or wired by X/Open to Unisys on about December 1995.

46. X/Open willfully used deceptive UNIX mark acknowledgements in documents relating to its Certificates substantially similar to said first acknowledgement set forth above and these documents include, among others, its trademark licensing agreement entitled "Trade Mark License Agreement (January 1995)" in "Part 7 of How to Brand-What to Buy" at "Schedule 5:

13

Trade Mark Usage Guide", and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

47.    Despite Novell's and X/Open's representations that X/Open owned the UNIX marks, Novell confirmed its continuing UNIX marks ownership in 1994 and 1995 in UNIX trademark enforcement actions that included, among others, the following:

a.    Novell executed and filed before the TTAB trademark Opposition No. 91095813, *Novell, Inc. v System Six, Inc*., it was acknowledged and accepted by the TTAB on about August 29, 1994, and it is believed Novell stated in the complaint it was the UNIX marks owner. In said action Novell executed and filed a motion by mail on about September 1, 1995, just prior to the UNIX marks 1995 APA transfer from Novell to Santa Cruz, and said motion was approved by the TTAB on about September 20, 1995;

b.    Andrew P. Bridges of "Wilson, Sonsini, Goodrich & Rosati", as attorneys for the opposer Novell, executed and filed before the TTAB trademark Opposition No. 91095421, *Andrew P. Bridges v Sabrina C. Stavish Sheridan, Ross & McIntosh*, it was acknowledged and accepted by the TTAB on about September 19, 1994, and it is believed the complaint included a statement that Novell owned the UNIX marks; and

c.    Novell executed on about October 19, 1994 and filed before the TTAB on about October 24, 1994 trademark Opposition No. 91096202, *Novell Inc. v The City of Glendale*, and Novell stated therein in ¶ 3 "In the United States, Novell owns the following federal registrations and applications for UNIX and UNIX-related marks" and lists ownership of UNIX mark Registration No. 1392203 and No. 1390593.

**Novell's 1995 Sale of the UNIX and UNIXWARE Trademarks to Santa Cruz**

48.    Novell was the owner and registrant of the UNIX and UNIXWARE trademarks and

owner of all versions and/or editions of the UNIX definition specifications and software test suites of AT&T and/or USL in September 1995, including, among others, the SVID specifications and the SVVS software test suites.

49.    Novell declared that it was transferring the UNIX and UNIXWARE marks to Santa Cruz in its September 18, 1995 Board Meeting minutes stating "Novell will retain all of its patents, copyrights and trademarks (except for the trademarks UNIX and UnixWare),…". Novell entered this document as evidence on about November 8, 2004 in the civil suit styled *SCO Group v Novell*, Case No. 2:04cv00139, U.S. District of Utah filed January 20, 2004.

50.    Novell and Santa Cruz entered into a UNIX Business Asset Purchase Agreement dated September 19, 1995 ("APA"), wherein they agreed in § I of Schedule 1.1(a) thereto entitled "Assets" that Santa Cruz would purchase all of the original registrant's ongoing and existing business to which the UNIX marks pertain. The transferring assets included, among others: UNIX software products, product documentation, definition specifications and software verification test suites; UNIX software source code and trademark licensing and/or re-licensing businesses; UNIX licensee contracts and agreements; and certain intellectual property that included the two UNIX and two UNIXWARE trademarks. They agreed that Novell would receive a significant percentage of future licensing fees paid to Santa Cruz by certain UNIX licensees in consideration for the agreed upon purchase price.

51.    The APA Schedule 1.1(a) in § V entitled "Intellectual Property" specifically identifies UNIX and UNIXWARE as trademarks transferring from Novell to Santa Cruz, listing them in APA Attachment C, Seller Disclosure Schedule entitled "Trademark Status Report" as marks owned by Novell in September 1995.

52.    UNIX businesses transferring from Novell to Santa Cruz pursuant to the APA

included, among others, one referred to and/or described as a UNIX Trademark Re-Licensing business, and Attachments "B" and "G" to the APA "Seller Disclosure Schedule" identify a related agreement transferring to Santa Cruz as follows: "May 10, 1994 Trademark Re-Licensing Agreement Between Seller and X/Open Company, Ltd."

53.   Novell and Santa Cruz are the only parties to the 1995 APA and its amendments.

54.   Amendment No. 1 executed on about December 6, 1995 and Amendment No. 2 dated about October 16, 1996 are the only two amendments to the 1995 APA, and they do not modify § V in Schedule 1.1(a).

55.   Pursuant to the APA as modified by Amendments No. 1 and No. 2, Santa Cruz was the lawful owner of the UNIX marks in and after December 1995.

56.   Novell was not the UNIX marks lawful owner after 1995, and in association with the APA it entered into an agreement to license back the UNIX technology transferring to Santa Cruz in a Technology Licensee Agreement dated about December 6, 1995, therein agreeing, *inter alia*, Novell would not compete with certain core Santa Cruz software products that apparently included UNIX.

57.   On information and belief, Novell re-confirmed to Santa Cruz that as the UNIX marks owner it lawfully transferred the UNIX marks to Santa Cruz pursuant to the APA, and Santa Cruz informed certain of its employees in and/or after September 1995 and prior to about September 1996 that the APA transferred the UNIX marks to it, including, among others, former Santa Cruz employee John R MacMillan, who, in an Internet newsgroup posting entitled "Re: Linux != UNIX " dated June 24, 1997, stated the following:

> … I was at SCO when they acquired the UNIX property from Novell, and the understanding we were given at that time was that what Novell had really given X/Open was the exclusive right to license the trademark, not the trademark itself, and that's why at the time the attribution was:

"UNIX is a registered trademark in the United States and other countries, licensed exclusively though X/Open Company Ltd."

**Santa Cruz Joins the Corrupt Enterprise**

58.   Santa Cruz evidently joined the Novell-X/Open corrupt enterprise and scheme about September 1996, and signed one or more agreements and letters relating to their scheme and the UNIX marks, with one such agreement in September of 1996 referred to as a Confirmation Agreement, a document that Gray reasonably believes is backdated and was created and/or executed after 1996 for the purpose of concealing Novell's fraud upon the software industry, namely its continuing UNIX marks ownership after 1993 and its 1995 APA UNIX marks transfer to Santa Cruz, and criminally influencing anticipated future official proceedings, because once credibility in the software industry is lost it is difficult, if not impossible to regain, and may result in severe damage to a company's business.

59.   On information and belief, Novell, Santa Cruz and X/Open confirmed their scheme in documents and communications agreeing, *inter alia*, to:

a.   conceal the 1995 APA transfer of the UNIX and UNIXWARE marks and associated UNIX mark (re)licensing business, contracts and agreements from Novell to Santa Cruz;

b.   conceal Santa Cruz's UNIX marks lawful ownership in and after December 1995;

c.   continue concealment of their scheme and prior and continuing fraudulent acts relating to the UNIX marks;

d.   continue falsely implying or stating publicly that X/Open owns the UNIX marks at their websites, in letters, press releases and other documents and communications; and

e.   use the UNIX mark re-licensing and certification business and its fraudulent UNIX marks ownership representations to influence and/or control interstate and international

17

commerce in certain government and commercial computer software markets;

which actions reasonably contemplated regular use of U.S. mail and/or wire communications.

60.   To advance their scheme, Novell, X/Open (also known as "The Open Group" in and

after 1996) and Santa Cruz agreed to use false UNIX mark acknowledgements in and/or after

1996 that omit and fraudulently conceal Santa Cruz as the UNIX marks lawful owner and

falsely state X/Open is the UNIX marks lawful owner and/or registrant, and said statements

(hereinafter the "second acknowledgements") were substantially similar to one of the following:

> Motif, OSF/1 and UNIX are registered trademarks and the 'X' Device and The
> Open Group are trademarks of the Open Group;

> Motif, OSF/1, UNIX, and the "X" Device are registered trademarks, and IT
> DialTone and The Open Group are trademarks of The Open Group in the U.S.
> and other countries; and

> UNIX is the registered trademark of The Open Group.

61.   Novell willfully used false UNIX mark acknowledgements prior to and after

November 1998 substantially similar to said second acknowledgements in, among others, its:

a.   legal notice website pages entitled "Copyright © 1997 Novell, Inc.," Wayback

archived on January 16, 1997, on April 18, 1997 and on June 5, 1997;

b.   1996 Annual Report to shareholders published in or about February 1997 at "Other

Information" on its web site, and Wayback archived on April 20, 1997 and accessible from its

website pages entitled "Novell 1996 Annual Report" Wayback archived on April 19, 1997; and

c.   hardcopy 1997 Annual Report at "Other Information", believed published and sent to

its shareholders and others on or about February 1998 using U.S. mail and/or wire

communications.

62.   X/Open willfully used UNIX mark acknowledgements substantially similar to said

second acknowledgements falsely stating prior to and after November 1998 that it was the

UNIX marks owner and/or registrant in <u>original issue</u> and <u>renewal copy</u> (of original issue and believed annual) Certificates associated with its UNIX re-licensing and its technology certification business, unlawfully using the two previous UNIX mark registrations in Certificates for certifications that include, among others, "UNIX 93", "UNIX 95", "UNIX 98" and UNIX 03", and these actions reasonably contemplated regular use of U.S. mail and/or wire communications with its licensees, licensees' customers and others. Said licensees include Digital Equipment Corp/Hewlett-Packard Corp., Fujitsu Ltd, Hitachi Ltd, International Business Machines Corporation ("IBM"), NRC Corp., NEC Corp., Santa Cruz/SCO, Silicon Graphics, Inc., Sequent Computer Systems, Inc., Sun Microsystems, Inc. ("SUN"), Unisys and others.

63. X/Open's false Certificates include, among others:

a. Certificate No. P1131 issued to SUN for "UNIX 98", first issue date of May 20, 1998 and believed sent by X/Open using U.S. mail and/or wire to SUN on or about May 1998 (original signed by then X/Open President and CEO Joseph De Feo prior to the October 1998 announcement of his departure, and in which the mark acknowledgement falsely states, "Motif, OSF/1, UNIX and the "X" device are registered trademarks and IT DialTone and The Open Group are trademarks of The Open Group in the US and other countries"). It is believed SUN relied upon this and other false X/Open Certificates dated in and after 1995, in turn sending them to others by mail and/or wire;

b. Certificate No. P1129 issued to IBM for "UNIX 98", first issue date of May 20, 1998 and believed sent by X/Open using U.S. mail and/or wire to IBM on or about May 1998 (original signed by then X/Open President and CEO Joseph De Feo and includes the same false UNIX mark acknowledgement as Certificate No. P1131 above). It is believed IBM relied upon this and other false X/Open Certificates that were dated in and after 1995, in turn sending them

to others by mail and/or wire.

64.  X/Open willfully used UNIX mark acknowledgements substantially similar to said second acknowledgements falsely stating X/Open was the owner and/or registrant of the UNIX marks prior to and after November 1998 in its books that include, among others, the following:

a.  "Go Solo 2", ISBN 0-13-575689-8, published May 1997 by The Open Group, a copy sent by Amazon.com marketplace Bookmonk bookstore using U.S. mail to Gray on about March 9, 2004; and

b.  "CAE Specification Systems Management: Common Management Facilities", ISBN 1-85912-174-8, published October 1997 by The Open Group, a copy sent by Amazon.com marketplace Alibris bookstore using U.S. mail to Gray on about April 20, 2004; and these actions reasonably contemplated regular use of the U.S. mail.

65.  X/Open employee Andrew Josey falsely published in 1997 that X/Open owned the UNIX marks in a public Internet newsgroup posting entitled "Is Unixware exactly SVR4 ????" dated April 17, 1997, stating:

"Yes, but legally this [UNIX trademark] was deeded to The Open Group from Novell not from SCO"

in response to the comment therein:

"The UNIX trademark is *now* owned by The Open Group.  I believe you will see the trademark changed to reflect that."

66.  X/Open willfully used false UNIX mark acknowledgements substantially similar to said second acknowledgements at "Schedule 5: Trademark Usage Guide" to its trademark licensing agreement entitled "The Open Brand Trade Mark License Agreement January 1998" copyright January 1998, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications with its licensees, licensees' customers and other third parties.

20

67.   X/Open falsely stated at its website in June 1997 that it was the registrant of the UNIX marks, willfully used and instructed use of false UNIX mark acknowledgements similar said second acknowledgements, and confirmed that Novell continued its instruction of third-parties use of said acknowledgements, as revealed in public Internet newsgroup postings that include, among others, one entitled "Re:Linux!=UNIX" by Mr. Joel Gallun dated June 18, 1997, wherein he quotes from The Open Group's website ("From http://www.rdg.opengroup.org/ unix/../unix/trademark.html ...."):

> Some trade mark attributions still say Novell (or even AT&T or Bell Labs), which is correct?
>
> UNIX® is a registered trademark of The Open Group.
>
> The correct attributions are either:
> "UNIX is a registered trademark of The Open Group"
> or before X/Open Company became part of The Open Group
> "UNIX is a registered trademark in the United States and other countries, licensed exclusively though X/Open Company Ltd."
>
> All existing Licensees have been instructed by Novell that they should now use the correct attribution. Any other attribution is incorrect.
> *
> *
> *
> Motif®, OSF/1®, X/Open® and UNIX® are registered trademarks and the X deviceTM and The Open GroupTM are trademarks of The Open Group.

68.   X/Open willfully used false UNIX mark acknowledgements similar to said second acknowledgements prior to and after November 1998 at its website pages, among others, entitled:

a.   "The Open Group Trademarks" Wayback archived on February 12, 1998 and on June 24, 1998;

b.   "UNIX System" Wayback archived on May 26, 1998;

c.   "Who Owns What?" Wayback archived May 26, 1998.

69.   Santa Cruz willfully used false UNIX mark acknowledgements prior to and after November 1998 substantially similar to said second acknowledgements in press releases that include, among others, the following:

a.   "Computer Telephony Industry Embraces SCO's High-Volume Unix Market" dated and publicly Internet posted March 4, 1997;

b.   "SCO Announces Support for Network Computing Standards" dated and publicly Internet posted November 14, 1997;

c.   "SCO's UnixWare System Fuels Award-Winning Servers" dated and publicly Internet posted April 1, 1998; and

d.   "SCO Ranks #1 In What Matters Most To VARs" dated and publicly Internet posted October 19, 1998;

actions which reasonably contemplated regular use of U.S. mail and/or wire communications.

70.   On information and belief, X/Open and/or its UNIX mark certification business licensees (under instruction from X/Open), persuaded the U.S. Air Force ("USAF"), U.S. Navy ("USN"), the U.S. Internal Revenue Service ("IRS"), the National Aeronautics and Space Administration ("NASA"), U.S. Department of Defense ("DoD") and other U.S. federal government departments and/or agencies to require compliance with X/Open's "Single UNIX Specification" ("SUS") associated with X/Open's UNIX trademark re-licensing business unlawfully using the two previous UNIX mark registrations, as a vendor qualification requirement in certain procurement in and after 1995. The bidders' compliance requirements in certain government procurements are confirmed by X/Open in its document "Value of Procurements: By Year, Governments and Commercial" dated February 17, 2002.

71.   On information and belief, many of X/Open's UNIX mark certification licensees

were direct and/or indirect vendors to the USAF, USN, IRS, NASA and DoD in and/or after 1995, and certain of its licensees submitted Certificates and/or associated documents to the USAF, USN, IRS, NASA and DoD falsely representing X/Open was the UNIX marks lawful owner and relating to compliance with X/Open's SUS as vendor qualification and/or bidders compliance requirements in certain government procurements in and after 1995. These actions reasonably contemplated regular use of U.S. mail and/or wire communications with its licensees, licensees' customers, government departments and/or agencies and other third parties.

**The False 1998 UNIX Marks Assignment & Its Fraudulent 1999 PTO Recordation**

72.   Novell and X/Open, with Santa Cruz's knowledge and co-operation, willfully entered into a purported UNIX mark "Deed of Assignment" dated November 13, 1998 that includes a trademark "Schedule" (herein collectively the "Assignment"), with the intent to record said Assignment at the PTO. Gray reasonably believes this is a backdated document created and/or executed after 1998 for the purpose of criminally influencing the outcome of anticipated future official proceedings.

73.   In the 1998 Assignment Novell and X/Open falsely represent that Novell is the "Assignor" and X/Open is the "Assignee," falsely stating, "The Assignor is the Proprietor of the trade marks referred to in the schedule attached hereto...," and falsely stating that Novell as "the Assignor hereby assigns unto the Assignee all property, right, title and interest in said trade marks with the business and goodwill attached to the said trade marks." The Assignment "Schedule" falsely includes and represents that UNIX mark Registration No. 1392203 and No. 1390593 are owned by Novell in November 1998, as Novell, X/Open and Santa Cruz knew or should have known that Novell did not assign any UNIX business assets associated with the UNIX marks to X/Open in or prior to 1998, that Novell was not the lawful owner of the UNIX

marks after 1995 and that the Assignment was a willfully misleading and false document.

74.   On June 22, 1999 X/Open executed a PTO Trademark Conveyance Form ("PTO Form"), PTO Trademark Library Reel 001920 at frames 0794 and 0795, and filed the PTO Form (herein the "Recordation") before the PTO on about June 22, 1999, knowingly and willfully attaching thereto the false Assignment, a mere two months after Gray's April 1999 iNUX mark PTO trademark application, and Novell, X/Open and Santa Cruz knew or should have known that Recordation of the Assignment before the PTO was a fraudulent act upon the PTO.

75.   On information and belief, as a part of the continuing scheme Novell conspired in or about 1999 with X/Open's cooperation that it would develop and market a version of the Linux operation system to include proprietary technology components of Novell's network software products and the UNIX operating system in an effort to, among other things, regain its Netware networking software market domination over Microsoft, and "INUX" was a preferred product name.

76.   Novell, X/Open and Santa Cruz agreed in or about 1999 that X/Open would falsely state it owned the UNIX marks in trademark actions before the PTO, in trademark usage and/or enforcement letters and initiate objectively baseless sham UNIX trademark enforcement suits to, *inter alia*, advance their scheme, continue fraudulent concealment of their prior and continuing fraudulent acts, promote and profit from their UNIX licensing businesses unlawfully using the two previous UNIX mark registrations and increase their influence and/or control of interstate and international commerce in certain computer software markets, and these actions reasonably contemplated regular use of U.S. mail and/or wire communications.

77.   On information and belief, X/Open sent and continues to send fraudulent trademark enforcement letters by U.S. mail and/or wire to companies, among others, that it eventually

opposed in PTO actions in 1999 and through 2001, falsely representing therein that X/Open owned the UNIX marks, warning said companies that their respective mark and/or mark use infringed upon the UNIX marks, demanding they abandon their respective mark applications and/or registrations in the PTO, and said actions include the following:

a. fraudulent letter sent by U.S. mail and/or wire to Syntunix, LLC and/or its counsel on or about 1999 warning the SYNTUNIX mark infringed upon the UNIX marks;

b. fraudulent letter sent by U.S. mail and/or wire to Financial Data Corp. and/or its counsel on or about 1999 warning the CUNIX mark infringed upon the UNIX marks;

c. fraudulent letter sent by U.S. mail and/or wire to UBIX Corporation and/or its counsel on or about 1999 warning the UBIX mark infringed upon the UNIX marks;

d. fraudulent letter sent by U.S. mail and/or wire to IPC Unipost and/or its counsel on or about 1999, warning the UNEX mark infringed upon the UNIX marks;

e. fraudulent letter sent by U.S. mail and/or wire to Unex Technology, Inc. and/or its counsel on or about 2000 warning the UNEX mark infringed upon the UNIX marks; and

f. fraudulent letter sent by U.S. mail and/or wire to R. Wayne Bost Trucking, Inc. and/or its counsel on or about 2000 warning the registered UNIXTRACS trademark infringed upon the UNIX marks.

78. X/Open, through counsel, knowingly made materially false UNIX trademark ownership representations to the TTAB and defendants in TTAB actions in 1999 and through 2001 in objectively baseless sham complaints. X/Open's standing in its sham TTAB actions was and is based upon the false 1998 UNIX marks Assignment and its fraudulent 1999 Recordation as it knew or should have known that a detailed and truthful UNIX marks chain of title would reveal that Novell transferred the UNIX marks to Santa Cruz pursuant to the 1995 APA, that

Santa Cruz was the lawful owner of the UNIX marks in and after December 1995, and that

Novell did not lawfully assign the UNIX marks to X/Open in the purported 1998 Assignment; it

knew or should have known that probable cause cannot exist where lawful standing does not

exist, knowingly having no standing it expected to prevail only using the petitioning process

itself as opposed to a merit-based outcome; and but for the false 1998Assignment and its

fraudulent 1999 Recordation, the PTO would not have permitted X/Open's UNIX mark

opposition, cancellation and other actions related to the UNIX marks.

79.   Through counsel, X/Open filed an objectively baseless sham trademark Notice of

Opposition before the TTAB using the U.S. mail on about June 16, 1999 as Opposition No.

91114431, *X/Open Company Limited v. Syntunix, LLC.*, and sent it using U.S. mail and/or wire

to Syntunix, LLC. and/or its counsel on or about June 1999. X/Open therein falsely states

"Opposer is the owner of, and successor in interest to, the following United States trademark

registrations for the mark UNIX" and lists ownership of UNIX mark Registration No. 1392203

and No. 1390593.

80. Through counsel, X/Open filed an objectively baseless sham trademark Notice of

Opposition before the TTAB using the U.S. mail on about July 27, 1999 as Opposition No.

91114893, *X/Open Company Limited v. Financial Data Corp.*, and sent it using U.S. mail and/or

wire to Financial Data Corp. and/or its counsel on or about July 1999. X/Open therein falsely

states "Opposer is the owner of, and successor in interest to, the following United States

trademark registrations for the mark UNIX" and lists ownership of UNIX mark Registration No.

1392203 and No. 1390593.

81. Through counsel, X/Open filed an objectively baseless sham trademark Notice of

Opposition before the TTAB using the U.S. mail on about August 11, 1999 as Opposition No.

91114954, *X/Open Company Limited v. UBIX Corporation*, and sent it using U.S. mail and/or wire to UBIX Corporation and/or its counsel on or about August 1999. X/Open therein falsely states "X/Open is the owner of, and successor in interest to, the following United States trademark registrations for the mark UNIX" and lists ownership of UNIX mark Registration No. 1392203 and No. 1390593.

82. Through counsel, X/Open filed an objectively baseless sham trademark Notice of Opposition before the TTAB using the U.S. mail on about November 3, 1999 as Opposition No. 91115922, *X/Open Company Limited v. IPC Unipost*, and sent it using U.S. mail and/or wire to IPC Unipost and/or its counsel on or about November 1999. X/Open therein falsely states "X/Open is the owner of the following United States trademark registrations for the mark UNIX" and lists ownership of UNIX mark Registration No. 1392203 and No. 1390593.

83. Through counsel, X/Open filed an objectively baseless sham trademark Notice of Opposition before the TTAB using the U.S. mail on about April 26, 2000 as Opposition No. 91118446, *X/Open Company Limited v. Unex Technology, Inc.*, and sent it using U.S. mail and/or wire to Unex Technology, Inc. and/or its counsel on or about April 2000. X/Open therein falsely states "X/Open is the owner of the following United States trademark registrations for the mark UNIX" and lists ownership of UNIX mark Registration No. 1392203 and No. 1390593.

84. Through counsel, X/Open filed an objectively baseless sham trademark Cancellation Petition before the TTAB using the U.S. mail on about August 17, 2000 as Cancellation No. 92030937, *X/Open Company Ltd. v. R. Wayne Bost Trucking, Inc.*, and sent it using U.S. mail and/or wire to R. Wayne Bost Trucking, Inc. and/or its counsel on or about August 2000. X/Open therein falsely states "X/Open is the owner of the following United States trademark

registrations for the mark UNIX" and lists ownership of UNIX mark Registration No. 1392203 and No. 1390593.

**Defendants' Targeted Acts At Gray and Continuing Fraud Upon the PTO**

85.    X/Open, through counsel, executed and sent a fraudulent letter dated February 27, 2001 by U.S. mail to Gray entitled "Infringement of UNIX Trademark by iNUX, Inc.". Therein X/Open stated "UNIX has become a famous trademark…" and made false accusations relating to Gray and his "iNUX" mark, included, among others, the false statement "… X/Open Company Limited, owner of the UNIX trademark," and X/Open demanded Gray cease use of iNUX as a mark, business name, domain name or other identifier and abandon his iNUX trademark application.

86. Through counsel, X/Open filed an objectively baseless sham trademark Notice of Opposition before the TTAB using the U.S. mail on April 11, 2001 as trademark Opposition No. 91122524, *X/Open Company Limited v. Wayne R. Gray*, and sent it by U.S. mail and/or wire to Gray and/or his counsel on or about April 2001. X/Open therein falsely states "X/Open is the owner of the following United States trademark registrations for the mark UNIX", lists ownership of UNIX mark Registration No. 1392203 and No. 1390593 and states the UNIX mark is famous.

87.    Gray, relying upon X/Open's knowing and willful materially false representations and statements in said February 27, 2001 infringement letter to Gray and in said *X/Open v. Gray* Opposition complaint, suspended iNUX business activities after receipt of X/Open's opposition complaint pending what he believed would be a quick resolution.

88.    Negotiations ensued, but ultimately X/Open delayed the matter for eight months without reasonable explanation, finally forcing Gray, a person of limited means, to continue

business suspension and proceed with the opposition suit, and injury to Gray's good name and iNUX business and property was a foreseeable and intended consequence of X/Open's actions. Yet X/Open, as the purported owner of the "famous" UNIX marks, at that time was not even the owner of any existing "unix" Internet domain names.

89.    X/Open's malicious targeting of Gray's iNUX property is confirmed in that in spite of its claims that the UNIX mark is "famous" it filed no PTO action against the trademark "UNIX" (Registration No. 2534586) published for opposition seven months prior to Gray's iNUX mark and registered on January 29, 2002 by a company unrelated to it. X/Open has filed no PTO actions against any mark relating to and in defense of their purported UNIX mark ownership, including many that include the word "unix," after filing its opposition to Gray's iNUX trademark application, including no PTO opposition to, and no petition to cancel, among others, the trademarks "UNIX-100" (Registration No. 2668450) or "UNIXIN" (Registration No. 2885179), registered respectively in 2002 and 2004, and no PTO opposition to the trademark applications "UNIX USA" (Serial No. 76492488) or "UNIXPRESS" (Serial No. 78513403), both opposition periods completed and notice of allowance mailed for each.

90.    SCO purchased Santa Cruz's entire UNIX business, related assets and operations in a May 2001 UNIX business asset purchase, assumed its liabilities and became Santa Cruz's successor in interest in the corrupt enterprise and scheme. SCO was known as Caldera Systems or Caldera International in 2001, and formally changed its name to The SCO Group, Inc. in or about May 2003. SCO owns "OpenLinux" as its distribution version of Linux operating system software. In the industry, Santa Cruz is referred to as "SCO" prior to 2002 and The SCO Group, Inc. is referred to as "SCO" in and/or after 2002.

91. On June 12, 2003 X/Open executed a "Request That Database Be Updated To

Reflect Current Owner of Registration" relating to its claim of ownership of UNIX mark Registration No. 1392203 and/or No. 1390593, and filed it before the PTO on or about June 13, 2003, attaching the false 1998 Assignment and fraudulent 1999 Recordation. X/Open therein falsely states "…this registration was transferred from Unix System Laboratories, Inc. to Novell, Inc… Thereafter, the [UNIX mark] registration was assigned from Novell, Inc. to Registrant [X/Open]," willfully and deceptively omitting and concealing material facts of the UNIX marks' 1995 APA transfer from Novell to Santa Cruz, and falsely representing its ownership of UNIX mark Registration No. 1392203.

92.   On information and belief, Novell, X/Open and SCO conspired in or about 2003 to allow the UNIX and UNIXWARE marks to expire and the consequential PTO cancellation in order to advance the concealment of Defendants' continuing scheme and associated fraudulent acts, realizing:

a.  they knew that the APA had been or would be entered into evidence in the civil suit *SCO Group v IBM*, Case No. 2:03cv0294, U.S. District of Utah, filed on about March 6, 2003, and its revelation that the UNIX marks lawful transfer from Novell to Santa Cruz in 1995 may result in discovery that the 1998 Assignment is a false document and its 1999 Recordation was a fraudulent act upon the PTO, and thus reveal their scheme;

b.  the PTO may require X/Open and/or SCO, as an alleged assignee(s), to submit a sworn chain of title affidavit with detailed documentary evidence to renew mark registrations;

c.  pursuant to Gray's continuing request in *X/Open v Gray* the TTAB may require X/Open to submit a sworn chain of title affidavit with detailed documentary evidence; and

d.  cancellations and new registrations might avoid such scrutiny.

93.   Since at least 2002 SCO has made false public representations in press releases, at

its web site and elsewhere that the UNIXWARE marks transferred from it to X/Open. SCO

documents falsely representing that X/Open is the registrant of the UNIX and UNIXWARE

marks in acknowledgements substantially similar to "UNIX and UnixWare, used under an

exclusive license, are registered trademarks of the Open Group in the United States and other

countries" include, among others, the following:

a.  SCO web site pages entitled "Legal Notice", Wayback archived on October 11, 2002

and on December 2, 2003;

b.  SCO press release "Caldera to Change Name to The SCO Group" dated August 26,

2002, Wayback archived on September 2, 2002;

c.  SCO press release "SCO Manager v1.5 Wins Best Systems Administration Tool

Award at LinuxWorld 2003" dated January 30, 2003, Wayback archived on February 1, 2003;

and

d.  SCO press release "SCO Announces Intellectual Property License for Linux" dated

August 5, 2003, Wayback archived on October 8, 2003;

actions which reasonably contemplated regular use of U.S. mail and/or wire communications.

94.  Since at least 2003 X/Open has made false public representations that SCO

transferred the UNIXWARE marks to it in or prior to 2003 in press releases and at its website

and elsewhere, and such documents include, among others, its press release entitled

"Backgrounder on the UNIX® System and SCO/IBM legal action" updated May 22, 2003,

Wayback archived on June 3, 2003.

95.  SCO and IBM are parties to the civil suit *SCO Group v IBM*, and are therein

apparently contesting SCO's ownership enforcement rights in certain UNIX intellectual

property, as SCO is alleging that IBM's misuse of SCO's valuable UNIX software source code

copyrights and/or trade secrets has resulted in several billion dollars in damages to SCO.

96.  In the *SCO Group v IBM* lawsuit, Steven Sabbath, Santa Cruz Vice President of Law and Corporate Affairs throughout 1995 and 1996, and Jim Wilt, a Santa Cruz former employee negotiating for Santa Cruz with respect to the 1995 APA, state the 1995 APA transferred Novell's entire UNIX business assets to Santa Cruz in their declarations respectively dated November 19, 2004 and November 23, 2004; such assets by necessity would include the UNIX trademarks. SCO entered both documents as evidence on about December 1, 2004.

97.  Novell purchased SuSE GmbH, Nürnberg, Germany and its SUSE Linux operating system distribution version software products and business on or about January 12, 2004.

98.  SCO and Novell are the parties to the civil suit styled *SCO Group v Novell*, Case No. 2:04cv00139, U.S. District of Utah filed on about January 20, 2004, wherein they are contesting, *inter alia*, SCO's ownership of valuable software copyrights only identified as UNIX copyrights.

99.  On information and belief, the prevailing party in *SCO Group v Novell* will introduce a version of Linux operating system software that will include proprietary UNIX operation system technology components and/or will license the UNIX technology to certain Linux software vendors and their customers with the intent of influencing and/or controlling the multi-billion dollar interstate and international UNIX and Linux software markets.

100.  In the *SCO Group v Novell* suit, counsel for Novell (referring to the 1995 APA Schedule 1.1(A) as discussed at ¶ 51 herein), confirmed the 1995 APA transferred the UNIX marks from Novell to Santa Cruz in a Motion Hearing on May 11, 2004 (hearing transcript dated June 24, 2004 and first viewed by Gray on June 25, 2004):

> We're still in Schedule 1.1(A).  And if you go down to Roman V, there's a heading there for intellectual properties.  So we're still in the included assets.

> What intellectual property is being conveyed to SCO in this agreement? And the answer is a couple trademarks. No copyrights are shown. No patents are shown. Just a couple trademarks.

In spite of Gray's specific May 2004 subpoena document request in *X/Open v Gray*, Novell never provided Gray with a copy of or even informed him of this document and its position therein that the 1995 APA transferred the UNIX marks from it to Santa Cruz.

101.   Novell first confirmed that the UNIX and UNIXWARE marks 1995 APA transfer from Novell to Santa Cruz was never modified in its "Answer and Counterclaims" dated July 29, 2005, in the *SCO Group v Novell* suit, substantially stating:

a.   UNIX and UNIXWARE were trademarks owned by Novell in September 1995;

b.   the 1995 APA includes the UNIX and UNIXWARE trademarks as assets transferring from Novell to Santa Cruz;

c.   Amendment No. 1 and Amendment No. 2 are the only amendments to the APA;

d.   Novell and Santa Cruz are the only parties to the APA and its amendments;

thus § V of Schedule 1.1(a) listing the UNIX and UNIXWARE marks as assets transferring from Novell to Santa Cruz was never modified by the APA as amended, and Novell has not denied and does not now deny that said transfer was never modified.

102.   SCO, in its September 12, 2005 Reply to Novell's Counterclaim in the *SCO Group v Novell* suit, does not deny Novell's implications or statements above relating to the UNIX and UNIXWARE trademarks and the APA, and SCO does not now deny said transfer.

103.   SCO also confirmed the UNIX and UNIXWARE marks transferred from Novell to Santa Cruz pursuant to the 1995 APA in its "Response to Office Action" correspondence to the PTO dated about August 3, 2005, filed in its "Unix System Laboratories" trademark application Serial No. 78438912 dated about June 21, 2004, stating:

In 1995, The Santa Cruz Operation, Inc. purchased all of the UNIX assets from Novell. As part of the transaction, Novell assigned the UNIX and UNIXWARE trademarks to The Santa Cruz Operation.

In spite of Gray's specific May 2004 subpoena request in *X/Open v Gray*, SCO never provided Gray with a copy of or even informed him of this document and its position therein that the 1995 APA transferred the UNIX marks from Novell to Santa Cruz.

104.   The continuing scheme appears to be becoming more difficult to maintain, because now X/Open contradicts Novell and SCO, falsely stating under oath in its November 1, 2004 response to Gray's Second Set of Interrogatories No. 7 in *X/Open v. Gray* that SCO (and thus Santa Cruz as SCO's predecessor) never owned the UNIX marks.

105.   After allowing the original UNIXWARE registrations to expire without renewal, X/Open executed and filed before the PTO a new trademark application for the same "UNIXWARE" mark on March 9, 2006 as application serial No. 78833448; this was less than 40 days after the PTO canceled UNIXWARE mark registration No. 2241666, in order to further Defendants' scheme, conceal fraud and obstruct justice. As the purported owner of said first registration, X/Open, as a reasonable option, could have filed before the PTO a "Request for Reinstatement of Registration" for the canceled UNIXWARE mark, however, it did not. In its trademark application for the mark "UNIXWARE" at "Prior registration(s)" X/Open states "Applicant claims ownership of [UNIX] U.S. Registration Number(s) 1390593 and 1392203," and willfully and deceptively omitted and concealed the material facts of its purported prior UNIXWARE marks ownership.

**Defendants' Fraudulent Concealment and Obstruction of Justice**

106.   Although Gray diligently and continuously investigated the facts relating to X/Open's claims in its February 2001 letter to him and in its sham April 2001 complaint in the

TTAB proceeding styled *X/Open v. Gray*, he did not and could not have suspected fraud relating to the UNIX marks 1998 Assignment, its 1999 Recordation, and X/Open's purported UNIX mark ownership until first viewing Schedule 1.1(a) of the 1995 APA. Gray downloaded and first viewed the APA and said Schedule from the Internet web site "Tuxrocks.com" on November 1, 2003 (believed first publicly available and first publicly posted at this web site on about October 27, 2003), and Gray downloaded and viewed a copy of the APA and said Schedule on November 3, 2003 from the Internet site "Groklaw.com", an Internet web log significantly dedicated to aggressively researching and commenting upon SCO related litigation that includes the civil suits *SCO v IBM* and *SCO v Novell*, believed first posted at this web site that same day.

107.   Gray received from SCO and viewed on January 15, 2004 what he believes SCO represented as a complete copy of the APA with schedules, exhibits, attachments and the two amendments, with many pages marked "NOVELL-SCO-Proprietary & Restricted; Not for Disclosure to Third Parties."

108.   The APA revealed the 1995 transfer of the UNIX business assets and trademarks from Novell to Santa Cruz, and, believing that the UNIX business associated with the UNIX marks may have remained with Santa Cruz after 1995 and may not have been assigned by Novell to X/Open in to the 1998 Assignment as stated therein, Gray moved in *X/Open v. Gray* to present his amended answer and counterclaims relating to fraud on December 20, 2003 and his second amended answer and counterclaims relating to fraud on January 22, 2004.

109.   The TTAB granted and entered Gray's second amended answer and counterclaims on April 12, 2004.

110.   On May 4, 2004 Gray propounded discovery requests upon X/Open and on about May 13, 2004 served subpoenas duces tecum on Novell and SCO, requesting they submit, *inter*

*alia*, documents relating to the May 1994 Novell-X/Open agreements, documents relating to the UNIX marks and the 1995 APA, documents supporting Novell as the lawful assignor in the November 1998 UNIX mark Assignment, and a detailed UNIX marks chain of title, but such requests were and continue to be mostly resisted.

111.   X/Open, instead of answering Gray's discovery request, sent a letter to Gray dated May 19, 2004, attacking his request in an attempt to improperly limit Gray's discovery, and incredibly stated that "the ownership of the UNIX mark is outside the scope of discovery, except to the extent it relates to the May 10, 1994 agreement…" and stated "the overwhelming majority of your discovery requests directed to Novell and SCO are outside the scope of permissible discovery". Gray reasonably believes said letter represents a coordinated act by Defendants to conceal fraud and obstruct his discovery in *X/Open v Gray*.

112.   SCO faxed a copy of the 1996 Confirmation Agreement to Gray's counsel on May 19, 2004 designated by Defendants as "Highly Confidential" (for attorney's eyes only), designated as such only to further Defendants' scheme, conceal fraud and obstruct justice.

113.   Novell, in a letter to Gray dated May 21, 2004 in response to his subpoena document request, stated that the documents from SCO (the Confirmation Agreement) are dispositive and "resolved Mr. Gray's claim, and, in fact, contradict Mr. Gray's position" concerning the Unix trademark ownership issues in said *X/Open v Gray* opposition. The Confirmation Agreement is not dispositive, does not resolve said issues and it is believed to be a fraudulent document created and/or finalized after 1996 that was likely only contrived as a means to fraudulently conceal Novell's continuing UNIX mark ownership in and beyond 1994, to contradict and fraudulently undo the 1995 APA UNIX marks transfer to Santa Cruz and to deceive Gray's counsel into relying upon the fraudulent document and erroneously advise Gray

to abandon his TTAB counterclaim relating to fraud.

114.  SCO, in improper blanket assertions, objected to Gray's entire subpoena document request by mail and facsimile in a letter to Gray dated May 26, 2004, and copied Novell and X/Open. Therein SCO's objection to Gray's document request No. 14 stated in part the following:

> Objections to Document Request No. 14
> SCO objects to this Document Request on the following grounds:
> A. The Request seeks documents that are protected from disclosure by the attorney-client privilege and attorney work product doctrine.

as Gray's document request No. 14 pursuant to the subpoena stated the following:

> Provide copies of all documents and all communications of any kind between SCO, Novell, and X/Open, or any of them, concerning the 1995 Unix Asset Purchase Agreement titled "Asset Purchase Agreement by and between Santa Cruz Operation, Inc. and Novell, Inc." dated on or about September 19, 1995 and all amendments.

115.  SCO and Novell know, or should know that all documents in SCO's possession that transferred to it from Novell and/or Santa Cruz relating to the 1995 APA UNIX business transfer have been judicially ruled to possess no privilege in *SCO v IBM* by Magistrate Judge Brooke Wells' order dated March 10, 2006, stating the following:

> Any attorney-client privilege or work product protection that may have existed with respect to the documents on SCO's privilege log…was waived in connection with either or both the Novell to Santa Cruz and Santa Cruz to Caldera transactions.

Thus IBM's reply memorandum dated December 8, 2005 had successfully argued that since 1998 SCO has known or should know, pursuant to a January 28, 1998 hearing before Judge Ronald N. Boyce in the suit styled *Caldera, Inc. v Microsoft Corp.*, Case No. 2:96-CV-00645B, U.S. District of Utah, all privileges over certain UNIX documents originating with other corporations or their attorneys are waived when actual transfer of control over the selling entity

did not occur.

116.   X/Open, instead of properly responding to Gray's second interrogatory, second document production and first admissions request in *X/Open v Gray*, filed before the TTAB an improper protective order motion dated May 20, 2004, sent a copy to Gray using the mail and it is believed it sent copies to, and coordinated this action with, Novell and SCO. Therein X/Open willfully attempted to severely limit the scope of, substantively quashing, Gray's Novell and SCO subpoenas, and obstruct his discovery as an attempt to conceal Defendants' scheme in statements that include, among others, objections related to Gray's second interrogatories, stating the following:

> Nos. 3-6. The use and chain of title of the UNIX mark and any mark that contains the UNIX mark is also irrelevant to Novell's transfer of the mark.
>
> No. 7. While the **May 10, 1994 agreement transferring the UNIX mark from Novell to X/Open is within the scope of discovery**, many of the subparts of this interrogatory are not, e.g., those concerning the relationship between Novell and X/Open. (emphasis added)
>
> No. 9. The Novell-SCO asset purchase agreement is outside the scope of discovery, except with regard to the portions of the agreement showing that SCO acquired the UNIX source code from Novell, not the UNIX mark.

Gray's Interrogatory No. 7 stated in relevant part the following as part of his attempt, unsuccessful to date, to learn the contents of the May 1994 agreement:

> Identify all communications and documents concerning an agreement known as the Unix mark Trademark Re-Licensing Agreement between Novell and X/Open Company dated on or about May 10, 1994 and all amendments in detail, …

117.   X/Open, in *X/Open Company, Ltd. v Apple Computer, Inc.*, Case No. C01-21218, U.S. District of Northern California, filed on about December 28, 2001, contradicts its 1994 UNIX marks transfer claim in *X/Open v Gray*, declaring therein the UNIX marks transferred to it from Novell in 1998 in its July 12, 2002 reply to Apple's counterclaim, wherein X/Open stated the following prior to the *SCO Group v IBM* lawsuit and public release of the 1995 APA:

X/Open admits that, on November 13, 1998, an assignment was executed that validly assigned U.S. Trademark Registration Nos. 1,392,203 and 1,390,593 for the mark UNIX from Novell, Inc. to X/Open.

118.    X/Open, in its *X/Open v Gray* reply brief dated about June 25, 2004, in support of its improper protective order motion stated the following in FN 3 at 10:

For the sake of clarity, X/Open notes that it does not object to Document Request Nos. 4, 6-7, 9-10, 28 (as modified), and 48, and Interrogatory No. 10 of the requests to X/Open….

and Gray's thus far unsuccessful Document Request No. 4 (second production request) states:

Provide copies of all documents and all communications of any kind concerning the Unix mark Trademark Re-Licensing Agreement between Novell and X/Open Company dated on or about May 10, 1994 and all amendments.

119.    The TTAB, in a July 22, 2004 order, mostly denied X/Open's protective order motion attempt to limit Gray's discovery (only limiting his discovery to documents dated after Novell's June 14, 1993 purchase of USL and documents not publicly available from the PTO), and stated therein "the scope is not so limited as opposer would present."

120.    Gray received X/Open's replies to his first admissions request, second interrogatories and second document production discovery request on November 1, 2004, six months after his initial request, but even then X/Open submitted no documents.

121.    Although X/Open clearly declared to Gray and the PTO that it did not object to many of Gray's discovery request, and in particular agreements dated about May 10, 1994 that it claimed transferred the UNIX marks to it from Novell, in its November 1, 2004 discovery responses X/Open did not answer many of Gray's admission requests, objected to almost all Gray's discovery requests and responded to his second Document Request No. 4 as follows:

X/Open objects to this request as seeking information protected by the attorney-client and/or work-product privileges, and as seeking the confidential or highly confidential information of X/Open and/or third parties in the absence of a protective order. Subject to the above general and specific objections, X/Open

> will search for and produce non-privileged, responsive documents to the extent
> any exist and subject to the entry of an order protecting confidential and highly
> confidential information.

Defendants' concealment of agreements and communications dated about May 10, 1994

continues as of the date of this complaint.

122.   X/Open sent Gray a letter dated November 19, 2004 and attached thereto a

supplemental response to Gray's admissions request. In said letter, to Gray's surprise, X/Open

requested he enter into a stipulated protective order that was also attached to said letter even as

it's May 2004 protective order motion was mostly denied, and provided no justification to

support this request.

123.   Gray's counsel made repeated requests of Defendants for permission to allow

Gray to view the September 1996 Confirmation Agreement, as it predates Amendment No. 2 of

the APA, yet as a purportedly "dispositive" document of UNIX mark ownership issues executed

only about one month prior to Amendment No. 2, it is not even cited in said Amendment.

124.   SCO gave its permission on about November 3, 2004 to allow Gray to view the

1996 Confirmation Agreement.

125.   Gray sent X/Open a letter on December 3, 2004 requesting X/Open explain on or

before Wednesday December 8, 2004 why, after mostly denial of its protective order five

months prior, it would withhold every document relating to Gray's discovery request, make new

privilege and/or confidentiality objections at this late date to almost all Gray's second

interrogatory and second document requests and not provide a log identifying the documents it

claimed as privileged.

126.   X/Open, instead of replying to Gray's concerns regarding its discovery response,

on December 8, 2004 merely requested an extension to December 10, 2004 to respond.

127.   On December 10, 2004 Gray, having received no response from X/Open, filed a Motion to Compel X/Open's response to his second interrogatory and second document production request and a Motion to Test the Sufficiency of X/Open's admission answers in hopes of securing discovery cooperation.

128.   On December 10, 2004 X/Open sent a response letter to Gray stating therein that its continuing discovery delays are proper, and even implied that it intended to withhold its documents until after the close of discovery, thus denying Gray the opportunity to test said documents in additional discovery, request additional documents pursuant to possible new revelations and deny Gray use of its documents in depositions. X/Open therein continued its unsupported request that Gray enter into a protective order and in its discussion of the 1996 Confirmation Agreement, X/Open stated the following:

> X/Open does not have the right to authorize your client to see this document **for the simple reason** that it contains information confidential to others. (emphasis added)

This statement can have no reasonable interpretation other than approval for Gray to view said document conditioned upon authorization by both SCO and Novell.

129.   X/Open, in a letter to Gray dated December 13, 2004, claimed that Gray's two discovery motions were improper and he should withdraw them, and after delaying its responses to Gray's discovery requests for five months and having produced no documents six months after they were due, X/Open made the peculiar statement relating to document discovery that "Given… 60 days, there is ample time to work out these issues". Gray suspected X/Open intended to run out the clock, obstruct discovery, conceal fraud and deny him justice. Therein X/Open continued its unsupported request Gray enter into a protective order.

130.   On December 17, 2004 X/Open sent its first documents to Gray, but they were

mostly irrelevant to his document discovery request. In its cover letter to Gray X/Open continued its unsupported request that Gray enter into a protective order.

131.   X/Open filed before the TTAB its combined opposition to Gray's two discovery motions on December 30, 2004, therein arguing only on technical issues that his motions should be denied, and accusing Gray of bad faith when it is X/Open that continues to obstruct justice, but X/Open did not deny that its responses to Gray's discovery requests were deficient. X/Open therein continued its unsupported request that Gray enter into a protective order, stating "To date, X/Open has not received any specific response to its draft protective order" even as its prior fully briefed protective order motion was mostly denied, and Gray detailed his position that it had waived all confidentiality and privileges in his two briefs in support of his two motions to compel. X/Open also described the 1996 Confirmation Agreement stating that it is "a three-way agreement between X/Open, Novell, and SCO dispositive of Gray's allegation that Novell transferred the UNIX mark to SCO and not to X/Open", yet X/Open continues its refusal to allow Gray to view this purportedly "dispositive" document.

132.   Novell finally authorized Gray to view the 1996 Confirmation Agreement on February 15, 2005. Upon informing X/Open's counsel on February 16, 2005 of Novell's counsel's authorization to allow Gray to view said document and its conditional approval once SCO and Novell gave their approval, Novell's counsel abruptly contracted "amnesia" concerning said document in a letter dated February 16, 2005 sent by mail to Gray's counsel, believed written at the request of and/or in cooperation with X/Open. Therein counsel for Novell incredibly stated "It was my understanding we were discussing the Novell/SCO Asset Purchase Agreement." Gray reasonably believes Novell and X/Open devised this letter to undo Novell's permission for Gray to view the agreement and to lure Gray's counsel into sending a copy of the

Confirmation Agreement to Novell without first securing permission for the purpose of discrediting Gray before the TTAB and enabling X/Open to re-argue it's mostly denied protective order motion.

133. Gray's counsel reminded Novell's counsel in a letter dated February 17, 2005 that it was counsel for Novell that had previously termed that agreement as "dispositive" in it's May 21, 2004 subpoena response letter to Gray, stating:

> You (not I) first brought this item up in your letter of May 21, 2004 in which you stated, near the top of page 2, that you had been in contact with attorney Ryan Tibbitts of SCO, and that he was furnishing documents that would resolve Mr. Gray's claim…

and documented four occasions in which the Confirmation Agreement was discussed with or in voice messages for its counsel by Gray's counsel since May 2004. Novell's "amnesia" was miraculously cured and it then re-confirmed its authorization for Gray to view said document.

134. The very next day X/Open's counsel emailed and faxed a letter to Gray's counsel dated and received February 18, 2005 reversing its position concerning its conditioned authorization of Gray to view said document, and it is believed that Novell again withdrew its authorization to view said document at the request of X/Open.

135. Counsel for X/Open scheduled an emergency TTAB telephonic conference for about February 22, 2005 to argue its position that Gray should not be allowed to view the 1996 Confirmation Agreement. In said conference counsel for X/Open again requested with no support a protective order, and the TTAB Interlocutory Attorney informed it that discussion of a protective order would not occur at that time. In closing, X/Open and Gray were instructed to file sealed five-page briefs arguing their positions relating to Gray viewing the Confirmation Agreement, and X/Open would (and it is believed did) attach a sealed copy of the Confirmation Agreement to its brief filed on about February 24, 2005.

136.   The TTAB suspended *X/Open v Gray* on February 24, 2005 (except as to prior discovery requests) pending disposition of Gray's December 2004 Motion to Compel X/Open's interrogatory response and document production and Gray's December 2004 Motion to Test the Sufficiency of X/Open's admissions answers, and the issue regarding X/Open's continuing refusal to allow Gray to view the purportedly dispositive 1996 Confirmation Agreement.

137.   As a result of X/Open's and Novell's coordinated concealment of the fraudulent 1996 Confirmation Agreement Gray realized the Defendants were acting as one in obstructing his *X/Open v Gray* discovery, and expanded his continuing search into the many assignments of the UNIX marks and complex history to include inter-relationships between the Defendants and the UNIX marks.

138.   Novell, in a letter dated March 15, 2005 faxed to Gray, stated it had "searched its records and found a Term Sheet dated January 1993 and Settlement agreement between Unix Systems Laboratories and Berkeley Software Design", and stated that "Novell considers the documents to be "Highly Confidential" at the very least." Novell also stated therein "I am copying X-Open's counsel…" and asked counsel for Gray and X/Open resolve any issues relating to confidentially and terms of any protective order.

139.   Gray requested in a letter to Novell dated March 16, 2005 that Novell confirm the date of the Term Sheet, as he was puzzled and suspicious as to why Novell would offer Gray a document clearly outside of permitted discovery, and knowing that X/Open was in receipt of said document offer, Gray expected its prompt response.

140.   Novell, in a letter dated March 17, 2005 copying counsel for X/Open and faxed to Gray, stated the Settlement agreement is dated February 3, 1994 and confirmed the date of the Term Sheet as January 1993. Novell again, with no justification, requested Gray enter into a

44

protective order and, even as it knew or should have known that Gray's position in his pending

motions was that X/Open has waived all privileges and confidentiality, questioned Gray's

motives in refusing to enter into a protective order.

141.   Gray informed Novell in a letter dated March 23, 2005 that the January 1993 Term

Sheet predated Gray's permissible discovery pursuant to the TTAB's July 22, 2004 order. Gray

had previously informed Novell of said discovery limitation in a July 30, 2004 discovery

modification letter and attached thereto a copy of said order. Gray's response was delayed six

days to allow X/Open sufficient time to respond to Novell's apparent "poison fruit" offer, yet

X/Open, remaining strangely silent, did not and has not responded.

142.   In his March 23, 2005 letter to Novell Gray also requested Novell confirm the

Settlement agreement contained "specific references to the UNIX marks", as Gray believed this

agreement related to the civil suit styled *Unix System Laboratories, Inc. v Berkeley Software

Design, Inc., et al*, Case No. 92-CV-1667, U.S. District of New Jersey, filed on about April 20,

1992, and believed UNIX marks issues in said suit were resolved prior to 1994 and not

discussed in this agreement. Novell has not responded.

143.   Gray reasonably believes that Novell and X/Open, with complete knowledge that

said two documents were completely irrelevant to his *X/Open v Gray* discovery requests, and

one clearly outside permissible discovery, conspired to offer Gray said documents as "highly

confidential" to lure him into entering into a protective order and, failing that, the January 1993

Term Sheet offer was for the purpose of entrapping Gray, manufacturing evidence of a

discovery violation to discredit him before the TTAB, thus justifying X/Open re-arguing its

mostly denied protective order motion to advance Defendants' scheme and obstruct justice.

144.   Gray now believes that X/Open's and Novell's repeated protection order requests

and attempts at manufacturing evidence of bad faith against Gray where none exist could only be for the purpose of furthering their scheme, concealing fraud and obstructing justice, and believes it is their intent to use a protective order as a sword and shield to conceal through improper classification almost all documents relating to his discovery request.

145.   Novell produced its only documents pursuant to Gray's subpoena request attached to a letter dated April 1, 2005 mailed to Gray, and it consists only of what he believes is a substantially complete copy of the APA and its two amendments, even as Novell knew or should have known these document had been publicly available for over a year. In its letter Novell again, without justification, requested Gray enter into a protective order.

146.   On July 30, 2005 Gray first discovered Defendants' scheme and realized that they were the source of his injuries after viewing Novell's July 29, 2005 document revealing previously undisclosed details relating to the 1995 APA in *SCO Group v Novell* (see ¶ 101). Of paramount importance was Gray's discovery of Novell's revelations therein that only it and Santa Cruz are parties to the APA and its amendments, and no amendments to the APA exist that modify its proper transfer of the UNIX marks to Santa Cruz. Thus Novell tacitly revealed that it could not have lawfully assigned the UNIX marks to X/Open in 1998, and that SCO and X/Open are knowing and willful participants in the scheme.

147.   Gray began preparation of motions to join Novell and SCO in *X/Open v Gray* and to amend his counterclaim to amplify and clarify fraud in late 2005 as a result of Defendants' coordinated obstruction of his discovery requests and subpoenas and his recently discovered evidence, to be filed upon resumption of the suspended proceedings.

148.   As the two UNIX mark registrations were approaching their expiration dates, Gray sent X/Open a letter dated April 10, 2006 requesting its renewal intent. Therein Gray

informed X/Open he was aware of the apparent scheme to willfully facilitate UNIX marks cancellation (just as had been done for UNIXWARE) only for dismissal of *X/Open v Gray* so as to avoid chain of title scrutiny, and again requested X/Open provide the PTO and Gray with a detailed UNIX mark chain of title and discovery privilege logs.

149.   With expiration of one of the UNIX marks only days away, not having received a response from X/Open to his letter and *X/Open v Gray* then being suspended for well over a year, Gray sent the TTAB a Letter of Inquiry dated April 14, 2006 inquiring as to the status of his pending motions and how the UNIX mark expirations and X/Open's continuing refusal to submit a detailed Unix mark chain of title may effect the TTAB's consideration of his pending motions.

150.   In said Inquiry Letter Gray informed the TTAB of X/Open's apparent scheme to facilitate PTO cancellation of the UNIX marks and thus dismissal of *X/Open v Gray* so as to avoid chain of title scrutiny, and informed the TTAB that notations of the parties' five-page (sealed) briefs related to the 1996 Confirmation Agreement and the document itself as a sealed exhibit attached to X/Open's brief are missing from the official *X/Open v Gray* docket record. Said suspension and the docket errors continue as of the date of this complaint, and the TTAB has not yet responded.

151.   Gray submitted a Letter of Protest to the Director of the PTO dated April 15, 2006 (posted at the PTO "Trademark Document Retrieval" site for UNIXWARE Serial No. 78833448 on about April 18, 2006 through at least June 26, 2006) after discovering X/Open's false and fraudulent application to register the UNIXWARE mark. Therein Gray informed the Director of Defendants' apparent scheme, conspiracy to commit fraud and fraudulent acts relating to the UNIX and UNIXWARE marks, of Novell's and SCO's declarations that the APA transferred the

UNIX marks to Santa Cruz in 1995, and requested that the PTO require X/Open, as a purported

trademark assignee filing trademark actions before the PTO, submit a detailed and truthful

UNIX mark chain of title. Therein Gray also informed the Director of X/Open's scheme to

facilitate UNIX marks cancellation and thus dismissal of *X/Open v Gray* so as to avoid chain of

title scrutiny, yet the PTO has not responded.

152.    Contrary to the progression in the UNIXWARE cases, X/Open suddenly executed

"Combined Declaration of Use and Renewal Application Under Sections 8 and 9" affidavits on

April 20, 2006 and its counsel filed said affidavits on April 21, 2006 before the PTO for renewal

of the two UNIX marks, Registration No. 1390593 and No. 1392203, but only after Gray's

recent letters revealing the apparent scheme to avoid scrutiny. Therein X/Open, as a purported

UNIX marks assignee, states in both affidavits "X/Open Company…owns the above-identified

registration as shown by the records of the U.S. Patent and Trademark Office", willfully failing

to inform the PTO the UNIX marks chain of title PTO assignment records are incorrect as they

do not include the 1995 APA transfer of the UNIX marks from Novell to Santa Cruz; these are

omissions and concealment of material facts X/Open knows or should know are relevant to mark

renewal, as are the fraudulent 1999 Recordation of the false 1998 Assignment documents and

X/Open's fraudulent acts upon the PTO. Relying upon X/Open's omissions and concealment of

material facts in its two deceptive affidavits, the PTO renewed the two UNIX mark registrations

on July 27, 2006, thus apparently leaving the ownership issue for the courts to settle.

153.    X/Open declared for the first time in a letter dated May 18, 2006 faxed to Gray

that no privileged documents exist, even as it unambiguously claimed in almost every response

to Gray's second document discovery request (see ¶ 121 above) and second interrogatories in

*X/Open v Gray* that it is withholding privileged documents. It is reasonable to believe that as

X/Open now admits it falsely declared most documents requested by Gray are privileged, its confidentiality claims are also false.

154.  On June 5, 2006 X/Open, SCO and/or their counsel recorded a purported February 12, 2004 UNIXWARE trademark assignment from SCO to X/Open at the PTO for the canceled UNIXWARE Registration No. 1845474 and No. 2241666, but only after Gray's recent letters revealing their apparent scheme. Yet they began falsely publishing that X/Open was the owner and/or registrant of the UNIXWARE marks to advance their scheme and to conceal fraud almost two years prior to the purported 2004 assignment (see ¶¶ 93-94 above) in documents reasonably believed sent by mail and/or wire.

155.  X/Open, with Novell's and SCO's knowing and willful cooperation, has stated and continues to falsely state that the UNIX marks transferred from Novell to X/Open in 1994 at its Internet web site pages, including the following assertions:

a.  "Who Owns UNIX?" updated July 21, 2003 at www.opengroup.org, Wayback archived on July 21, 2003, wherein X/Open falsely states "The Open Group has owned the registered trademark UNIX since 1994.";

b.  "History and Timeline" updated January 29, 2003 (last visited October 18, 2006), wherein at the timeline entitled "1994 Single UNIX Specification" X/Open falsely states "As the new owner of the UNIX trademark, X/Open introduces ….."; and

c.  "The Single UNIX Specification History & Timeline" poster, copyright 2004 available at X/Open web site URL www.unix.org/Posters/download/unix_posterA3.pdf (last visited October 18, 2006), therein at the timeline entitled "1994 Single UNIX Specification" X/Open falsely states, "As the owner of the UNIX trademark, X/Open introduces the Single UNIX Specification (formally Spec 1170) which separates the UNIX trademark from any actual

code stream itself, thus allowing multiple implementations."

156.   SCO continues to renew its "UNIX 95" Certificate No. P1133, first issue date to Santa Cruz on about August 13, 1998. Gray reasonably believes former X/Open President and CEO Joseph De Feo signed the original; the original included the same false UNIX mark acknowledgement as Certificate No. P1131 (see ¶ 63a above); X/Open sent said Certificate to Santa Cruz by mail and/or wire on about August 1998; and Santa Cruz/SCO sent on about August 1998 and continues to send said Certificate by mail and/or wire to its agents, customers and others. SCO has not submitted copies to Gray or even informed him of said documents.

157.   Gray reminded X/Open in a letter dated July 14, 2006 that it continues to withhold discovery documents that it had previously declared it did not object to in the TTAB opposition proceeding *X/Open v Gray*, that its document production continues to consist mostly of irrelevant documents and that any discussion of a protective order is not appropriate prior to the TTAB's ruling on Gray's pending motions to compel.

158.   X/Open argues in its August 15, 2006 letter faxed to Gray that X/Open is the one being somehow falsely accused even as it continues without justification to withhold documents that it has declared to Gray and the TTAB it did not object to, and therein continues its unsupported request that Gray enter into a protective agreement. While noticeably not admitting or denying the 1995 APA transferred the UNIX marks from Novell to Santa Cruz, X/Open presents Gray with a challenge, stating "we invite you to provide proof of this claim", apparently a reference to Defendants' so far, and anticipated continuing, successful concealment of fraud and obstruction in the *X/Open v Gray* proceeding.

159.   Novell confirmed the trademarks transferred to Santa Cruz pursuant to the 1995 APA (which mentions only the UNIX and UNIXWARE marks) in various documents filed in

the civil suits *SCO v Novell* and *SCO v IBM*, stating "Under the APA and its Amendments, Santa Cruz obtained a variety of assets, including assignment of tens of thousands of contracts and licenses, various trademarks, …" in the following:

a.  Novell's Answer to SCO's Second Amended Complaint and Counterclaims dated April 10, 2006 at ¶ 14 in *SCO v Novell*;

b.  Novell's Amended Counterclaims dated September 21, 2006 at ¶ 14 in *SCO v Novell*; and

c.  Greg Jones, Associate General Counsel for Novell employed in its Legal Department since 1992, speaking on Novell's behalf in his declaration dated September 22, 2006 in *SCO v IBM*.

160.   For over two years after Gray's subpoena document requests in *X/Open v Gray*, Novell continues to maintain that almost all its documents are "highly confidential" and/or privileged, and conceals, among others, all documents relating to its purported UNIX marks transfer to X/Open dated about May 10, 1994. Novell has not produced or identified even one document supporting its UNIX marks ownership after 1995 or the legitimacy of the 1998 Assignment. It is now reasonable to believe that said documents contain evidence of Defendants' scheme and/or fraudulent acts and are therefore not confidential or privileged.

161.   SCO, in its response to Gray's subpoena document request knowingly and willfully conceals, among others, its false certification Certificates issued to it by X/Open, continues to conceal all documents relating to Novell's purported 1994 UNIX marks transfer to X/Open, and declares all documents relating to the APA and transferred to it from Novell and/or Santa Cruz are privileged even as SCO and Novell know or should know that no privilege exists.

162.   For over two years after Gray's subpoena document requests in *X/Open v Gray*, SCO has not produced or identified even one document that supports Novell's UNIX marks ownership after 1995 or validity of the 1998 Assignment, and has produced only two documents after said subpoena (the Confirmation Agreement being one). It is now reasonable to believe said documents contain evidence of Defendants' scheme and/or fraudulent acts, that as SCO falsely declared certain documents are privileged then all its privilege and confidentiality claims are false.

163.   For over two years after Gray's discovery requests, X/Open continues to unjustly withhold almost all relevant documents, and continues to make false and baseless accusations attacking Gray's actions and/or motives in almost all of its correspondence and briefs since its fraudulent February 27, 2001 letter and sham April 11, 2001 *X/Open v Gray* opposition only for the purpose of using said documents in the future to present its version of events and undermine and injure Gray's credibility. Defendants' actions have and continue to further their scheme as they conceal fraud, obstruct justice and destroy Gray's iNUX property and good name.


## V.  THE NOVELL-X/OPEN-SANTA CRUZ/SCO SCHEME

164.   Novell and X/Open engaged in a scheme beginning in about October 1993 and continuing as of the date of this complaint to influence and/or control certain interstate and international UNIX and UNIX-like software markets, compete against Microsoft's software business and defraud their UNIX software licensees, licensees' customers, government agencies, the public and others through Novell's 1993 purchased of the UNIX business, by concealing Novell's continuing ownership of the UNIX marks and certain UNIX assets, by falsely implying and stating that X/Open was the UNIX marks lawful owner and/or registrant in trademark

acknowledgements and elsewhere and requiring third-party use of said false acknowledgements, by Novell's initiation and control of a new and different UNIX trademark (re)licensing business that separated the UNIX marks from the UNIX source code, and by X/Open's initiation and control of a new and different UNIX software certification business separate from the original UNIX source code specifications of AT&T/USL using and requiring use of deceptive and/or false UNIX mark acknowledgements.

165.   Santa Cruz purchased Novell's UNIX licensing and re-licensing businesses and certain assets that included, among others, the UNIX and UNIXWARE marks pursuant to the 1995 APA, and joined the continuing Novell-X/Open scheme in about September 1996. SCO, as Santa Cruz's successor, assumed its interest and liabilities in the scheme in about May 2001. All Defendants schemed in about 1996 through the date of this complaint to defraud their UNIX (re)licensees, (re)licensees' customers, government agencies, the public and others, and more recently to defraud Gray, by means of their continuing acts alleged above in ¶ 164, by X/Open's false UNIX mark enforcement letters and objectively baseless sham UNIX trademark enforcement actions that include, among others, opposition of Gray's iNUX trademark application, and by Defendants' campaign to discredit Gray, injure his good name and destroy his iNUX property through concocted entrapment and mischaracterization of Gray in letters and other documents. Defendants' knowingly devised and participated in a scheme or artifice to defraud Gray, to appropriate his money and/or property and/or injure his good name by means of false or fraudulent pretenses or representations, and/or sham litigation. Defendants engaged in this scheme without regard to the possible financial, legal and professional liabilities to Gray and/or his iNUX business interest.

166.   The intent of Defendants' objectively baseless sham trademark opposition initiated

directly and/or indirectly by X/Open, Novell and Santa Cruz/SCO and maliciously targeting Gray was to appropriate his iNUX mark and domain names for their use, to defraud Gray and to destroy his iNUX business property and professional reputation, thus ensuring future association of the iNUX mark and domain names with products and/or services originating only from one or more of the Defendants, with the malicious intent of:

a.  depriving Gray of the use of his property valued in excess of $75,000, including but not limited to his iNUX mark and products, services and goodwill represented thereby;

b.  forcing Gray to expend considerable attorneys' fees and other costs in his defense of X/Open's objectively baseless sham TTAB suit styled *X/Open v Gray*; and

c.  fraudulently concealing their scheme to unlawfully appropriate Gray's iNUX mark, domain names and other property for their use as just another UNIX trademark enforcement action.

**Mail and Wire Fraud**

167.   Pursuant to their scheme, Defendants could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343, and Florida Statute § 817.034. In particular, Defendants could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia,* facsimile coversheets, letters using and instructing use of UNIX trademark acknowledgements, UNIX certification Certificates, UNIX trademark licensing documents, UNIX trademark enforcement letters, UNIX trademark litigation documents, books, website pages, marketing and sales related materials, press releases, announcements and other documents falsely representing X/Open as the UNIX marks lawful owner and/or registrant;

letters, emails, facsimile and other correspondence among and between the Defendants; letters, emails, facsimile and other correspondence among and between the Defendants and their licensees; letters, emails, facsimile and other correspondence among and between the Defendants or their licensees and licensees' customers; and letters, emails, facsimile and other correspondence among and between the Defendants and Gray.

168.   Defendants acting singularly and in concert, personally or through their agents, as co-conspirators, or as aiders and abettors, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out Defendants' scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343, and Florida Statute § 817.034.

169.   It is not possible for Gray to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed Defendants' scheme because the particulars of many such communications are (or were) within the exclusive control and within the exclusive knowledge of Defendants and/or other presently unknown persons, and pursuant to Rule 11(b)(3), Fed.R.Civ.P., additional evidence of other criminal acts by each Defendant (Novell, X/Open and Santa Cruz/SCO), including, among others, mail and wire fraud and obstruction of justice, is reasonably anticipated after further investigation or discovery.

170.   By way of example, however, all Defendants specifically used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver each and every document bearing a trademark acknowledgement and/or other representation falsely implying and/or stating X/Open is the UNIX marks lawful owner and/or registrant between September 1996 and the present and to deliver all of the following communications, among others, for the purpose of advancing, furthering, executing, and concealing Defendants' scheme:

| Type of Communication | Date | From | To | Manner in Which Scheme to Defraud was Furthered |
|---|---|---|---|---|
| 1) U.S. Postal Service | 06/22/ 1999 | X/Open | PTO | Fraudulent PTO recordation of false Novell-X/Open UNIX mark Assignment purportedly dated November 13, 1998 to conceal Novell's continuing UNIX marks ownership after 1993 and the 1995 APA UNIX marks transfer to Santa Cruz; to criminally influence the outcome of official proceedings, including, among others, *X/Open v Gray.* |
| 2) U.S. Postal Service | 06/16/ 1999 | X/Open | PTO / Syntunix Corp. | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 3) U.S. Postal Service | 07/27/ 1999 | X/Open | PTO / Financial Data Corp. | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 4) U.S. Postal Service | 08/11/ 1999 | X/Open | PTO / UBIX Corp. | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 5) U.S. Postal Service | 11/03/ 1999 | X/Open | PTO / IPC Unipost | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 6) U.S. Postal Service | 04/26/ 2000 | X/Open | PTO / Unex Technology Inc. | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 7) U.S. Postal Service | 08/17/ 2000 | X/Open | PTO / R. Wayne Bost Trucking, Inc. | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims; and its standing is based upon the fraudulent UNIX mark PTO assignment recordation |
| 8) U.S. Postal Service | 02/27/ 2001 | X/Open | Gray | UNIX mark enforcement letter; X/Open falsely claims UNIX mark ownership to confiscate Gray's iNUX property and deprive him of its use |
| 9) U.S. Postal Service | 04/11/ 2001 | X/Open | PTO / Gray | Sham PTO mark opposition to support X/Open's false UNIX mark ownership claims and to confiscate Gray's iNUX property; its standing is based upon the fraudulent UNIX mark PTO assignment recordation |

| 10) U.S. Postal Service | 06/12/2003 | X/Open | PTO | X/Open knowingly falsely states SCO never owned the UNIX marks to conceal Novell's continuing UNIX marks ownership after 1993 and the 1995 APA UNIX marks transfer to Santa Cruz; omitting and concealing material facts |
|---|---|---|---|---|
| 11) U.S. Postal Service | 06/12/2003 | X/Open | PTO | X/Open falsely states or implies Novell lawfully assigned it the UNIX marks to conceal Novell's continuing UNIX marks ownership after 1993 and the APA UNIX marks transfer to Santa Cruz, and attached the backdated 1998 Assignment fraudulently PTO recorded in 1999 |
| 12) U.S. Postal Service | 03/09/2004 | Amazon bookstore | Gray | "Go Solo 2", May 1997, Open Group book; UNIX mark acknowledgement falsely stating X/Open is the UNIX marks registrant to conceal Novell's continuing UNIX marks ownership after 1993 and the APA UNIX marks transfer to Santa Cruz |
| 13) U.S. Postal Service | 04/20/2004 | Amazon bookstore | Gray | "CAE Specification Systems Management", October 1997, Open Group book; UNIX mark acknowledgement falsely stating X/Open is the UNIX marks registrant to conceal Novell's continuing UNIX marks ownership after 1993 and its APA UNIX marks transfer to Santa Cruz |
| 14) U.S. Postal Service | 05/19/2004 | X/Open | Gray | False statements to induce Gray to limit his discovery requests to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false 1998 marks Assignment |
| 15) Facsimile | 05/19/2004 | SCO | Counsel for Gray | Fraudulent 1996 Confirmation Agreement falsely represented as "dispositive" of Gray's fraud claims in *X/Open v Gray* to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, its APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false 1998 Assignment |
| 16) U.S. Postal Service | 05/26/2004 | SCO | Gray | Blanket privilege objections to Gray's subpoena production request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false UNIX marks Assignment, knowing no privileges attached to all UNIX business documents from Novell |

| 17) U.S. Postal Service | 11/01/2004 | X/Open | Gray | Second Interrogatories response; X/Open knowingly falsely states SCO never owned the UNIX marks to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false 1988 UNIX marks Assignment |
|---|---|---|---|---|
| 18) U.S. Postal Service | 12/13/2004 | X/Open | Gray | Document confidentiality representation and baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the APA UNIX marks transfer to Santa Cruz, the fraudulent 1999 Recordation of the false UNIX marks Assignment and the false Confirmation Agreement, and to obstruct justice |
| 19) U.S. Postal Service | 02/16/2005 | Novell | Gray | False document confidentiality representations to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the fraudulent 1999 Recordation of the false UNIX marks Assignment and the false Confirmation Agreement, and to obstruct justice |
| 20) Email | 02/18/2005 | X/Open | Gray | False document confidentiality representations & baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the APA UNIX marks transfer to Santa Cruz, the false Confirmation Agreement and the fraudulent 1999 Recordation of the false marks Assignment and to obstruct justice |
| 21) U.S. Postal Service | 02/03/2005 | X/Open | Gray | UNIX93 Certificate No. P1050; UNIX mark acknowledgement omitting Novell as marks owner; falsely represents X/Open owns the UNIX marks to conceal documents revealing Novell's continuing UNIX marks ownership after 1993 and its APA UNIX marks transfer to Santa Cruz |
| 22) U.S. Postal Service | 02/03/2005 | X/Open | Gray | January 1995 Trade Mark Licensing Agreement; UNIX mark acknowledgement omitting Novell as marks owner; falsely represents X/Open owns the UNIX marks to conceal documents revealing Novell's continuing UNIX marks ownership after 1993 |

| | | | | |
|---|---|---|---|---|
| 23) U.S. Postal Service | 02/03/2005 | X/Open | Gray | UNIX98 Certificate No. P1129; UNIX mark acknowledgement falsely stating X/Open is the marks' registrant to conceal documents revealing Novell's continuing UNIX marks ownership after 1993 and its APA marks transfer to Santa Cruz |
| 24) U.S. Postal Service | about 03/01/2005 | X/Open | PTO | Fraudulent backdated 1996 Confirmation Agreement falsely represented as "highly confidential" filed with PTO to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false marks Assignment, and criminally influence the outcome of the official proceedings, *X/Open v Gray* |
| 25) U.S. Postal Service | 03/09/2005 | X/Open | PTO | UNIXWARE trademark application Serial No. 78833448 falsely stating X/Open owns UNIX trademarks to conceal Novell's 1995 APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false UNIX marks Assignment; material omission and concealment of prior UNIXWARE mark ownership claims |
| 26) Facsimile | 03/15/2005 | Novell | Gray | Irrelevant evidence offer and baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz, the false 1996 Confirmation Agreement and the fraudulent 1999 Recordation of the false 1998 UNIX marks Assignment, and to obstruct justice |
| 27) Facsimile | 03/17/2005 | Novell | Gray | Irrelevant evidence offer and baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz, the false 1996 Confirmation Agreement and the fraudulent 1999 Recordation of the false 1998 UNIX marks Assignment, and to obstruct justice |
| 28) U.S. Postal Service | 04/01/2005 | Novell | Gray | False document confidentiality and/or privilege representation; baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz, the false 1996 Confirmation Agreement and the fraudulent 1999 Recordation of the false 1998 marks Assignment, and to obstruct justice |

| 29) U.S. Postal Service | 04/21/2006 | X/Open | PTO | UNIX Registration No. 1390593 renewal affidavit; X/Open omits informing PTO its UNIX assignment records incorrectly excludes APA assignment to Santa Cruz to conceal documents revealing Novell's 1995 APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false 1998 UNIX marks Assignment, and to obstruct justice |
|---|---|---|---|---|
| 30) U.S. Postal Service | 04/21/2006 | X/Open | PTO | UNIX Registration No. 1392203 renewal affidavit; X/Open omits informing PTO its UNIX assignment record incorrectly excludes APA assignment to Santa Cruz to conceal documents revealing Novell's 1995 APA UNIX marks transfer to Santa Cruz and the fraudulent 1999 Recordation of the false 1998 UNIX marks Assignment, and to obstruct justice |
| 31) Facsimile | 05/18/2006 | X/Open | Gray | False representation of PTO UNIX mark assignment records as correct; baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the 1995 APA UNIX marks transfer to Santa Cruz, the false 1996 Confirmation Agreement and the fraudulent 1999 Recordation of the false 1998 UNIX marks Assignment, and to obstruct justice |
| 32) Facsimile | 08/15/2006 | X/Open | Gray | False implication no UNIX marks APA transfer to Santa Cruz; false document confidentiality representation; baseless protective order request to conceal documents revealing Novell's continuing UNIX marks ownership after 1993, the APA UNIX marks transfer to Santa Cruz, the false 1996 Confirmation Agreement and the fraudulent 1999 Recordation of the false UNIX marks 1998 Assignment, and to obstruct justice; implies Defendants' success obstructing justice |

171.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by or caused to be committed by all Defendants as described herein with the intent to defraud Gray and/or others or for appropriating the money or property of Gray and/or others by means of deceptive, false or fraudulent pretenses, representations, or promises.

Defendants' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, and Florida

Statute § 817.034 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B), and §§

772.102(1)(a) and (b) and 895.02(1)(a) and (b), Fla. Stat.

172.  Gray justifiably relied on Defendants' fraudulent representations and omissions and

concealment of material facts made pursuant to the above-described scheme in that, among other

things, Gray, believing the PTO trademark assignment records were correct and X/Open was the

UNIX marks lawful owner, suspended iNUX related business activities; Gray in good faith

entered into settlement negotiations with X/Open and offered to abandon his iNUX trademark

application and abandon use of iNUX as a business, product and website name relating to

International Class 009 products or services; and after the failure of said negotiations Gray,

reasonably believing that X/Open was the UNIX marks lawful owner, continued suspension of

iNUX business activities and committed his limited financial and other resources to defending

his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of

Gray's iNUX trademark application.

**Obstruction of Justice**

173.  Pursuant to their scheme, X/Open, as a party in *X/Open v Gray*, and Novell and

SCO, as third parties to *X/Open v Gray*, conspired to and did knowingly engaged in misleading

conduct to another person (i.e., Gray) by (among other things) concealing documents revealing

the Novell-X/Open scheme and the fact that the UNIX marks did not transfer to X/Open in 1993

or 1994; concealing documents revealing the UNIX marks lawfully transferred from Novell to

Santa Cruz pursuant to the APA; concealing the fraudulent 1996 Confirmation Agreement and

documents relating or referring to it; concealing documents relating or referring to the false 1998

Assignment and its fraudulent 1999 Recordation; concealing documents relating or referring to

X/Open's sham UNIX trademark enforcement actions that include its sham opposition to Gray's iNUX trademark application; concealing Defendants' deceptive and false UNIX trademark representations that X/Open is the UNIX marks lawful owner and/or registrant; and concealing other information they know is also not privileged or confidential with intent to further their scheme, and to conceal fraud, and obstruct, delay, influence and/or otherwise impair the integrity or the availability of document discovery and witness depositions as discussed in ¶¶ 105, 111-145, 152-158 and 160-163 above to prevent its use in official proceedings, including, among others, *X/Open v Gray*, in violation of 18 U.S.C. § 1512, and Florida Statute § 843.14; said actions constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B), and §§ 772.102(1)(a) and (b) and 895.02(1)(a) and (b), Fla. Stat.

174.  These actions are distinguishable from Rule 11 violations in that X/Open conspired with non-parties Novell and SCO to said TTAB proceeding *X/Open v Gray*, non-parties who are believed to be important witnesses therein, to deliberately withhold documents, to obstruct, influence, delay or prevent their use in said official proceeding, and Defendants created and fraudulently filed or caused to be created and fraudulently filed at the PTO deceptive, false and, upon information and belief backdated documents, including, among others, the 1996 Confirmation Agreement, the 1998 UNIX mark Assignment and the two 2006 UNIX mark renewal Affidavits to criminally influence the outcome of the official proceeding *X/Open v Gray* and/or others.

**Equitable Tolling and Continuing Scheme**

175.  Gray's discovery of Defendants' scheme and wrongful conduct alleged in this complaint was delayed by the fraudulent concealment, continuing deceptive, false and fraudulent acts, practices, and omissions, and continuing conspiracy of Defendants.

176.   On November 1, 2003 Gray discovered the 1995 APA, and first suspected that his injury may be the result of wrongdoing. Gray immediately directed his ongoing investigation to the APA and related documents, as they were newly discovered evidence, and he moved to amend his counterclaim in *X/Open v Gray* on December 20, 2003 and on January 22, 2004 to include fraud, propounded X/Open with discovery requests on May 4, 2004 relating to the APA and the identity of UNIX marks owner after 1995 on May 4, 2004, and subpoenaed Novell and SCO on May 13, 2004 requesting documents related to the APA and the UNIX marks and the identity of marks lawful owner after 1995.

177.   Prior to July 30, 2005 Gray did not know that the Defendants were the source of his injury, did not know of the existence of the enterprise, and did not know the facts of and/or the extent of Defendants' scheme and their wrongful conduct alleged herein. Gray reasonably believes that the evidence referenced in this complaint was at all relevant times in the possession, custody, and control of the Defendants.

178.   The communications, acts and/or meetings concerning the wrongful conduct by and between these persons, as specifically alleged in this complaint, were conducted in secret, were maintained as confidential, and could not, in the exercise of reasonable diligence, have been discovered earlier by Gray.

179.   Defendants took affirmative steps to conceal their scheme and wrongful conduct, as specifically alleged in this complaint. They fraudulently concealed their wrongful conduct by various means and methods not reasonably discoverable by Gray.

180.   The wrongful conduct, as specifically alleged in this complaint, also involved multiple, continuous, deceptive and fraudulent acts, practices, and omissions by Defendants over a period of many years, and there is a likelihood that this conduct is continuing. Gray is

informed and believes that Defendants have been continuing and are still performing overt acts in furtherance of their scheme and illegal conduct.

181.   Because the illegal conduct, as specifically alleged in this complaint, was kept secret by Defendants, Gray did not know of their scheme, secret agreements and deceptive and fraudulent acts to further their scheme.

182.   Even as Gray has expended considerable resources in discovering Defendants' scheme and wrongdoing since 2001, he did not discover and could not have discovered the illegal conduct at an earlier date by the exercise of due diligence because of Defendants' deceptive practices and techniques of secrecy.

183.   As a result of the fraudulent concealment by Defendants', all applicable statues of limitations have been tolled.

## COUNT ONE
## RACKETEER INFLUENCED AND CORRUPTION ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)

184.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

185.   At all relevant times Novell, X/Open and Santa Cruz/SCO as unrelated legal entities constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were and are "a group of persons associated in fact" as an ongoing organization and its members were and are functioning as a continuing unit with common purpose or goals related to, among others, concealing the lawful owner of the UNIX marks and certain UNIX assets, promoting and profiting from their UNIX licensing and certification businesses, appropriating Gray's iNUX property for their use in new and different UNIX-like businesses, and thereby influencing and/or controlling certain UNIX and UNIX-like software markets.

a.  Novell, X/Open and Santa Cruz/ SCO are a "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated directly and/or indirectly in the conduct of said enterprise's affairs.

b.  Between about October 1993 and September 1996, enterprise leader Novell and X/Open each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

c.  Between about September 1996 and the present, Novell as the continuing enterprise leader, X/Open and Santa Cruz/SCO each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). Defendant's pattern of racketeering activity consisted of mail and wire fraud (as described with particularity in ¶¶ 167-172 above); and obstruction of justice (as described with particularity in ¶¶ 173-174 above).

These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

186.  At all relevant times, the enterprise alleged in ¶ 185 above was engaged in, and its activities affected, interstate commerce and foreign commerce.

187.  All of the predicate acts described in ¶¶ 167-174 above were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to conceal the lawful owner of the UNIX trademarks and certain UNIX assets and to conceal the real controlling entity for the promotion and operation of UNIX software and trademark licensing and certification businesses, the intended common result being

65

to defraud UNIX licensees and licensees' customers, Gray and others of property; Novell,

X/Open and Santa Cruz/SCO personally or through their agent or agents, directly or indirectly,

participated in all of the acts and employed the same or similar methods of commission from

about September 1996 to the present; their UNIX software and trademark licensees, licensees'

customers, technology consortium members, certification customers, government agencies, Gray

and others were the victims of these acts of racketeering; and/or the acts of racketeering were

otherwise interrelated by distinguishing characteristics and were not isolated events.

188.   All of the predicate acts described in ¶¶ 167-174 above were continuous so as to

form a pattern of racketeering activity in that Defendants engaged in the predicate acts over a

substantial period of time or in that such predicate acts had become their regular way of

conducting business and said business practices will continue indefinitely into the future.

189.   As a direct and proximate result of, and by reason of, the activities of Novell,

X/Open and Santa Cruz/SCO, and their conduct in violation of 18 U.S.C. § 1962(c), Gray has

been injured in its business and/or property, within the meaning of 18 U.S.C. § 1964(c). Among

others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's

false statements that it was the UNIX marks lawful owner and consequently suspended iNUX

related business activities which directly resulted in Gray's loss of his significant financial and

other investments therein; Gray continued suspension of iNUX business activities and

committed his limited financial and other resources to defending his iNUX property and good

name in X/Open's objectively baseless sham TTAB opposition of his iNUX trademark

application which directly resulted in Gray expending significant financial and other resources

therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX

property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing

significant financial losses.

190.  By reason of Defendants' violation of 18 U.S.C. § 1962(c), Plaintiff Gray is

entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the actual damages he has sustained

together with the cost of the suit, in an amount to be proven at trial, believed to be substantially

greater than $225,000.00, with interest thereon, plus reasonable attorneys' fees and reasonable

experts' fees in connection with this suit.

**COUNT TWO**
**RACKETEER INFLUENCED AND CORRUPTION ORGANIZATIONS ACT**
**18 U.S.C. § 1962(d)**

191.  Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if

fully set forth herein, and further alleges:

192. Novell, X/Open and Santa Cruz/SCO conspired to conduct or participate, directly

and/or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering

activity (as described with particularity in ¶¶ 167-174 above) in violation of 18 U.S.C. §

1962(d). In particular, Defendants intend to further the endeavors of the enterprise, which, if

completed, would satisfy all of the elements of a substantive RICO criminal offense and adopted

the goal of furthering or facilitating the criminal endeavor.

193.  Gray was injured by Defendants' overt acts that are acts of racketeering or

otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and

wire fraud (as described with particularity in ¶¶ 167-172 above) and obstruction of justice (as

described with particularity in ¶¶ 173-174 above).

194.  As a direct and proximate result of, and by reason of, the activities of Novell,

X/Open and Santa Cruz/SCO, and their conduct in violation of 18 U.S.C. § 1962(d), Gray has

been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c). Among

others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false statements that it was the UNIX marks lawful owner and suspended iNUX related business activities which directly resulted in Gray's loss of his significant financial and other investments therein; Gray continued suspension of iNUX business activities and committed his limited financial and other resources to defending his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

195.   By reason of Defendants' violation of 18 U.S.C. § 1962(d), Plaintiff Gray is entitled, pursuant to 18 U.S.C. § 1964(c), to threefold the actual damages he has sustained together with the cost of the suit, in an amount to be proven at trial, believed to be substantially greater than $225,000.00, with interest thereon, plus reasonable attorneys' fees and reasonable experts' fees in connection with this suit.

## COUNT THREE
## FRAUDULENT FEDERAL TRADEMARK REGISTRATION

196.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

197.   Novell in or about 1994 knowingly and willfully abandoned use of the UNIX marks as registered as described with particularity in ¶¶ 33, 35 and 155(c) above, and abandoned all rights in and to the UNIX marks in 1995 through an assignment of the UNIX marks and the businesses and business assets associated with the UNIX marks to Santa Cruz pursuant to the 1995 APA as described with particularity in ¶¶ 4, 48-57, 96, 100-103 and 159 above.

198.   Defendants did knowingly and willfully devise and intend to devise schemes and

artifices to defraud the PTO in a June 1999 UNIX marks recordation of the false and fraudulent November 1998 UNIX marks Assignment, as they knew or should have known Novell had previously abandoned the UNIX marks, knew or should have know Novell falsely represented in the 1998 Assignment that it was the lawful owner and/or registrant of the UNIX marks, falsely represented that it was the lawful owner of the underlying assets and goodwill attached to the UNIX marks in November 1998, and thus falsely representing X/Open as the UNIX marks lawful owner and/or registrant in and after November 1998.

199.   It was Defendants object and goal to execute and attempt to execute said schemes and artifices to fraudulently assign the federal UNIX trademark registrations from Novell to X/Open in violation of 15 U.S.C. § 1120 and 18 U.S.C. § 1001 as described with particularity in ¶¶ 72-74 above, defrauding the PTO and the public, and injuring Gray.

200.   As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 15 U.S.C. § 1120 and 18 U.S.C. § 1001, Gray has been injured in its business or property. Among others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false representations that it was the UNIX marks lawful registrant and suspended iNUX related business activities which directly resulted in Gray's loss of his significant financial and other investments therein; Gray continued suspension of iNUX business activities and committed his limited financial and other resources to defending his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

201.   By reason of the foregoing, Gray is entitled to all remedies available under the Lanham Act, including, but not limited to cancellation of said UNIX trademarks.

**COUNT FOUR**
**FRAUD UPON THE PTO - TRADEMARK CANCELLATION**

202.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

203.   Defendants did knowingly and willfully devise and intend to devise schemes and artifices to defraud the PTO, Gray and others in a fraudulent UNIX marks Assignment, pleadings, trademark renewals and applications and other documents, letters and communications, falsely representing that X/Open was the lawful owner and/or registrant of the UNIX marks in and after November 1998.

204.   On or about the dates listed herein, Defendants, for the purpose of executing and attempting to execute said schemes and artifices to defraud the PTO, Gray and the public, fraudulently represented to the PTO that X/Open was the lawful owner and/or registrant of the UNIX marks in violation of 15 U.S.C. §§ 1120 and 1125(a) and 18 U.S.C. § 1001. Defendants fraudulent acts upon the PTO include, among others, the following as described with particularity in ¶¶ 72-74, 79-84, 86, 91-92, 105 and 152 above.

205.   As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 15 U.S.C. §§ 1120 and 1125(a) and 18 U.S.C. § 1001, Gray has been injured in its business or property. Among others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false representations that it was the UNIX marks lawful registrant and suspended iNUX related business activities which directly resulted in Gray's loss of his significant financial and other investments therein; Gray continued suspension of iNUX business activities and committed his limited financial and other resources to

defending his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

206.   By reason of the foregoing, Gray is entitled to all remedies available under the Lanham Act pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1119 including, but not limited to UNIX trademark cancellations, compensatory damages, treble damages, disgorgement of profits and costs and attorney's fees.

**COUNT FIVE**
**UNFAIR COMPETITION BY FALSE DESIGNATION OF ORIGIN**

207.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

208.   Novell and X/Open since about October of 1993, and Santa Cruz/SCO since about September of 1996, have knowingly and intentionally deceived the U.S. and foreign public, and continue their deception, by false statements and mark acknowledgements substantially similar to the ones identified herein as said first acknowledgement and said second acknowledgements, and false and fraudulent acts relating to their concealment of the UNIX marks' lawful owner.

209.   By willfully engaging in the false and fraudulent activities as described in peculiarity in ¶¶ 31-46, 60-86, 93 and 167-174 above, Defendants have made and are making false, deceptive, and misleading statements constituting unfair competition, false representations and false designation of origin made in connection with products and/or services distributed in interstate commerce, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

210.   The aforesaid acts were undertaken knowingly and willfully and with the intent to

cause, have caused and are causing confusion, mistake and deception in the marketplace as to the lawful owner of the UNIX marks.

211.   As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of 15 U.S.C. § 1125(a), Gray has been injured in its business or property. Among others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false representations that it was the UNIX marks lawful registrant and suspended iNUX related business activities; Gray continued suspension of iNUX business activities which directly resulted in Gray's loss of his significant financial and other investments therein; and committed his limited financial and other resources to defending his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

212.   Because the PTO, Gray and the public relied upon Defendants' false representations, and the acts as set forth above were undertaken knowingly, willfully and with malicious design and specific intent, they have caused and are causing deception and great and irreparable injury to Gray's property and good name, including but not limited to his iNUX property and goodwill, this court should impose punitive damages against Defendants in an amount to be determined at trial, believed to be substantial.

213.   By reason of the foregoing, Gray is entitled to all remedies available under the Lanham Act pursuant to 15 U.S.C. §§ 1116(a), 1117(a) and 1119, including, but not limited to UNIX trademark cancellations, compensatory damages, treble damages, disgorgement of profits

and costs and attorney's fees.

## COUNT SIX
## COMMON LAW FRAUD

214.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

215.   Defendants engaged in numerous misrepresentations pursuant to the Novell, X/Open and Santa Cruz/SCO scheme, as described with particularity in ¶¶ 31-47, 60-86, 93 and 167-174 above.

216.   Defendants made these misrepresentations with knowledge of their falsity.

217.   In making these misrepresentations, Defendants intended to defraud Gray and to induce his reliance.

218.   Gray and his counsel justifiably relied on Defendants' misrepresentations, which directly resulted in Gray's loss of his significant financial and other investments; Gray continued suspension of iNUX business activities and was forced to defend his iNUX property and good name in X/Open's objectively baseless sham TTAB opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

219.   As a direct and proximate result of Defendants' fraud, Gray has suffered damages in an amount which is unknown at this time, but which is estimated to be in substantial excess of $75,000.00 exclusive of interest, attorneys' fees, and costs.

## COUNT SEVEN
## <u>CONSPIRACY TO DEFRAUD</u>

220.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

221.   Gray alleges that Defendants conspired to and did engage in numerous misrepresentations pursuant to the Novell, X/Open and Santa Cruz/SCO scheme, as described with particularity in ¶¶ 31-47, 60-86, 93 and 167-174 above.

222.   Defendants made these misrepresentations with knowledge of their falsity.

223.   In making these misrepresentations, Defendants intended to defraud Gray and to induce his reliance.

224.   Gray and his counsel justifiably relied on Defendants' misrepresentations, which directly resulted in Gray's loss of his significant financial and other investments; Gray continued suspension of iNUX business activities and was forced to defend his iNUX property and good name in X/Open's objectively baseless sham TTAB opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

225.   Each Defendant had agreements between the others whereby they knowingly and wrongfully conspired to and did agree to facilitate, conceal, advance, promote, and otherwise further the Novell, X/Open and Santa Cruz/SCO scheme and to defraud Gray.

226.   Defendants' numerous wrongful acts pursuant to their scheme, included (among other acts) falsely misleading their licensees, licensees' customers, the PTO and other government agencies, the media, the public, Gray and others whom they informed, and/or who

inquired, as to the owner and/or registrant of the UNIX marks, concealing the 1995 APA

transfer of the UNIX marks to Santa Cruz, concealing that X/Open does not now own, and has

never lawfully owned the UNIX marks and concealing their conspiracy to injure Gray and to

defraud him of his iNUX property is a part of Defendants' scheme.

227.  As a direct and proximate result of Defendants' conspiracy to defraud, Gray has

suffered damages in an amount which is unknown at this time, but which is believed to be

substantially greater than $75,000.00 exclusive of interest, attorneys' fees, and costs.

## COUNT EIGHT
## FLORIDA RICO ACT
## FLORIDA STATUTE § 895.03(3)

228.  Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if

fully set forth herein, and further alleges:

229.  At all relevant times Defendants, as unrelated legal entities, constituted an

"enterprise," as defined by §§ 772.102(3), 895.02(3), Florida Statutes, and within the meaning of

§ 895.03(3) Fla. Stat., in that they were and are a group of persons associated in fact as an

ongoing organization and its members were and are functioning as a continuing unit with

common purpose or goals related to, among other things, concealing the lawful owner of the

UNIX marks and certain UNIX assets, promoting and profiting from their UNIX licensing and

certification businesses, appropriating Gray's iNUX property for their use in new and different

UNIX-like businesses, and thereby influencing and/or controlling certain UNIX and UNIX-like

software markets in that:

a.  Novell, X/Open, and SCO (or its predecessor in interest, Santa Cruz) at all relevant

times participated directly and/or indirectly in the conduct of said enterprise's affairs within the

meaning of §§ 772.103(3) and 895.03(3), Fla. Stat.

b.  Between about October 1993 and September 1996, Novell as enterprise leader and X/Open each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity as defined by §§ 772.102(4) and 895.02(4), Fla. Stat., and within the meaning of § 895.03(3), Fla. Stat.

c.  Between about September 1996 and the present, Novell as the continuing enterprise leader, X/Open and SCO (or its predecessor in interest Santa Cruz) each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity as defined by §§ 772.102(4) and 895.02(4), Fla. Stat., and within the meaning of § 895.03(3), Fla. Stat.

d.  Said pattern of racketeering activity consisted of acts of mail and wire fraud (as described with particularity in ¶¶ 167-172 above); and acts of obstruction of justice (as described with particularity in ¶¶ 173-174 above), and said acts all occurred after the effective date of the Florida RICO Act and at least two such acts occurred within five years of one another.

230.   All of the predicate acts described in ¶¶ 167-174 above were related so as to establish a pattern of racketeering activity, within the meaning of § 895.03(3), Fla. Stat., in that their common purpose was to conceal the lawful owner of the UNIX trademarks and certain UNIX assets and the promotion and operation of UNIX software and trademark licensing and certification businesses, their common result was to defraud UNIX licensees and licensees' customers, Gray and others of property; Defendants personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission from about September 1996 to the present; their UNIX software and trademark

licensees, licensees' customers, technology consortium members, certification customers, government agencies, Gray and others were the victims of the acts of racketeering; and/or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

231. All of the predicate acts described in ¶¶ 167-174 above) were continuous so as to form a pattern of racketeering activity in that Defendants engaged in the predicate acts over a substantial period of time or in that such predicate acts had become Defendants regular way of conducting business and said business practices will continue indefinitely into the future.

232. As a direct and proximate result of, and by reason of, the activities of Defendants as described above in violation of §§ 772.103(3) and 895.03(3), Fla. Stat., Gray has been injured in its business and/or property, contrary to the provisions of Chapters 772, 817, and 895, Fla. Stat.  Among other things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false statements that it was the UNIX marks' lawful owner and suspended iNUX related business activities which directly resulted in Gray's loss of his significant financial and other investments therein; Gray continued suspension of iNUX business activities and committed his limited financial and other resources to defending his iNUX property and good name in X/Open's objectively baseless sham TTAB opposition of his iNUX trademark application which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

233. By reason of Defendants' violation of §§ 772.103(3) and 895.03(3), Fla. Stat., Plaintiff Gray is entitled, pursuant to §§ 772.104(1) and 895.05, Fla. Stat., to threefold the actual

damages he has sustained together with the cost of the suit, in an amount to be proven at trial, believed to be substantially greater than $225,000.00, with interest thereon, plus reasonable attorneys' fees and costs in connection with this suit, and injunctive relief appropriate under the circumstances.

**COUNT NINE**
**FLORIDA RICO ACT**
**FLORIDA STATUTE § 895.03(4)**

234.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

235.   At all relevant times Defendants, as unrelated legal entities, conspired and agreed to associate for the purpose of forming and/or operating an "enterprise" as defined by §§ 772.102(3), 895.02(3), Florida Statutes, and within the meaning of § 895.03(3) Fla. Stat., in that they were and are a group of persons intending to associate in fact as an ongoing organization and its members were and are functioning as a continuing unit with common purpose or goals related to, among other things, concealing the lawful owner of the UNIX marks and certain UNIX assets, promoting and profiting from their UNIX licensing and certification businesses, appropriating Gray's iNUX property for their use in new and different UNIX-like businesses, and thereby influencing and/or controlling certain UNIX and UNIX-like software markets in that:

a. Novell, X/Open, and SCO (or its predecessor in interest, Santa Cruz) at all relevant times conspired to and did participate directly and/or indirectly in the conduct of said enterprise's affairs within the meaning of §§ 772.103(3), 895.03(3), and 895.03(4) Fla. Stat.

b.  Between about October 1993 and September 1996, Novell as enterprise leader and X/Open each individually conducted, participated in, engaged in, conspired to engage in, or

78

aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering

activity as defined by §§ 772.103(3), 895.03(3), and 895.03(4) Fla. Stat.

c.  Between about September 1996 and the present, Novell as the continuing enterprise

leader, X/Open and SCO (or its predecessor in interest, Santa Cruz) each individually

conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct

of the affairs of the enterprise through a pattern of racketeering activity as defined by §§

772.102(4) and  895.02(4), Fla. Stat., and within the meaning of § 895.03(3), Fla. Stat.

d.  Said pattern of racketeering activity consisted of acts of mail and wire fraud (as

described with particularity in ¶¶ 167-172 above); and acts of obstruction of justice (as

described with particularity in ¶¶ 173-174 above).

236.   Said acts all occurred after the effective date of the Florida RICO Act and more

than two such acts occurred within five years of one another.

237.   Gray was injured by Defendants' overt acts that are acts of racketeering or

otherwise unlawful under the Florida RICO ACT, which included (among other acts) acts of

mail and wire fraud (as described with particularity in ¶¶ 167-172 above) and obstruction of

justice (as described with particularity in ¶¶ 173-174 above).

238.   As a direct and proximate result of, and by reason of, the activities of Defendants

as described above in violation of §§ 772.103(4) and 895.03(4), Fla. Stat., Gray has been injured

in its business and/or property, contrary to the provisions of Chapters 772, 817, and 895, Fla.

Stat.  Among other things, Gray has suffered damages to the extent he and his counsel relied

upon X/Open's false statements that it was the UNIX marks' lawful owner and suspended iNUX

related business activities which directly resulted in Gray's loss of his significant financial and

other investments therein; Gray continued suspension of iNUX business activities and

committed his limited financial and other resources to defending his iNUX property and good

name in X/Open's objectively baseless sham TTAB opposition of his iNUX trademark

application which directly resulted in Gray expending significant financial and other resources

therein; and Defendants' have deprived and continue to deprive Gray of his valuable iNUX

property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing

significant financial losses.

239.   By reason of Defendants' violation of §§ 772.103(4) and 895.03(4), Fla. Stat.,

Plaintiff Gray is entitled, pursuant to §§ 772.104(1) and 895.05, Fla. Stat., to threefold the actual

damages he has sustained together with the cost of the suit, in an amount to be proven at trial,

believed to be substantially greater than $225,000.00, with interest thereon, plus reasonable

attorneys' fees and costs in connection with this suit, and injunctive relief appropriate under the

circumstances.

### COUNT TEN
### FLORIDA COMMUNICATIONS FRAUD ACT ("FCFA")
### FLORIDA STATUTE § 817.034(4)(a)

240.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if

fully set forth herein, and further alleges:

241.   At all relevant times Defendants constituted an "enterprise," within the meaning of

§ 772.102(3), Fla. Stat.,  in that they were and are a group of persons associated in fact as an

ongoing organization and its members were and are functioning as a continuing unit with

common purpose or goals related to, among others, concealing the lawful owner of the UNIX

marks and certain UNIX assets, promoting and profiting from their UNIX licensing and

certification businesses, appropriating Gray's iNUX property for their use in new and different

UNIX-like businesses, and thereby influencing and/or controlling certain UNIX and UNIX-like

software markets, in that:

a.  Novell, X/Open and SCO (or its predecessor in interest, Santa Cruz) are a "persons" within the meaning of § 817.034(4), Fla. Stat., who associated with and/or participated directly and/or indirectly in the conduct of said enterprise's affairs.

b.  Between about September 1996 and the present, continuing enterprise leader Novell, X/Open and SCO (or its predecessor in interest, Santa Cruz) each individually conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of criminal activity as defined by § 772.102(4), Fla. Stat., and within the meaning of §772.103(3), Fla. Stat.

c.  Said pattern of criminal activity "communications" as defined by § 817.034(3)(a), Fla. Stat., consisted of, among others, mail and wire fraud (as described with particularity in ¶¶ 167-172, above). These acts mostly occurred after the effective date of The Florida Communications Fraud Act and at least two such acts occurred within five years of one another.

242.  As a direct and proximate result of, and by reason of, the activities of Defendants, and their conduct in violation of §§ 772.103(3) and 817.034(4)(a), Fla. Stat., Gray has been injured in its business and/or property. Among others things, Gray has suffered damages to the extent he and his counsel relied upon X/Open's false statements that it was the UNIX marks lawful owner and suspended iNUX related business activities which directly resulted in Gray's loss of his significant financial and other investments therein; Gray continued suspension of iNUX business activities and committed his limited financial and other resources to defending his iNUX property and good name in X/Open's objectively baseless sham PTO opposition of his iNUX trademark application, which directly resulted in Gray expending significant financial and other resources therein; and Defendants' have deprived and continue to deprive Gray of his

valuable iNUX property within the meaning of § 817.034(3)(b), Fla. Stat., directly resulting in his continuing significant financial losses.

243.   By reason of Defendants' violation of §§ 772.103(3) and 817.034(4)(a), Fla. Stat., Plaintiff Gray is entitled, pursuant to § 772.104(1), Fla. Stat., to threefold the actual damages he has sustained together with the cost of the suit, in an amount to be proven at trial, believed to be substantially greater than $225,000.00, with interest thereon, plus reasonable attorneys' fees and costs in connection with this suit.

**COUNT ELEVEN**
**FLORIDA COMMUNICATIONS FRAUD ACT ("FCFA")**
**FLORIDA STATUTE § 817.034(4)(b)**

244.   Gray adopts, incorporates and realleges herein by reference ¶¶ 1 through 183 as if fully set forth herein, and further alleges:

245.   From about September 1996 and continuing to the present, Defendants engaged in a scheme to defraud and thereby obtained and endeavored to obtain the property of Gray comprising his iNUX trademark and domain names, said property being valued in excess of $300.00, through the acts described in ¶¶ 167-172 above.

246. By reason of Defendants' violation of §§ 772.103(4) and 817.034(4)(b), Fla. Stat., Plaintiff Gray is entitled, pursuant to § 772.104(1), Fla. Stat., to threefold the actual damages he has sustained together with the cost of the suit, in an amount to be proven at trial, believed to be substantially greater than $225,000.00, with interest thereon, plus reasonable attorneys' fees and costs in connection with this suit.

**WHEREFORE**, Plaintiff Gray prays this Court enter judgment against Defendants as follows:

1.   To award damages against Defendants for a sum of money equal to the amount of

damages and/or losses Gray has sustained or will sustain pursuant to 15 U.S.C. § 1117(a), 18 U.S.C. § 1964(c), and/or Fla. Stat. § 772.104(1);

2.   To treble the amount of said damages pursuant to 15 U.S.C. § 1117(a), 18 U.S.C. § 1964(c), and/or Fla. Stat. § 772.104(1);

3.   To award prejudgment interest on the amount of damages and/or losses that Gray has sustained;

4.   To award all costs of all litigation incurred by Gray, including his reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a), 18 U.S.C. § 1964(c) and/or Fla. Stat. §772.104(1);

5.   To cancel the UNIX trademark Registration No. 1,392,203 and UNIX mark Registration No. 1,390,593 pursuant to 15 U.S.C. § 1119;

6.   To enter an order granting injunctive relief as may be reasonably necessary or appropriate to eliminate the effects of Defendants' violations of 15 U.S.C. § 1125(a) and Chap. 895, Fla. Stat.; and

7.   To award such other and further relief as the Court deems just and equitable. Plaintiff Gray demands trial by jury on all issues so triable.

DATED this _____ day of _____ 2006.

Respectfully submitted,

David L. Partlow, FBN 239682
David L. Partlow, P.A.
P.O. Box 82963
Tampa, FL  33682-2963
(813) 287-8337; FAX (813) 287-8234
dlppa@mindspring.com
Counsel for Plaintiff