## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| WAYNE R. GRAY,<br><br>        Plaintiff,<br><br>v.<br><br>NOVELL, INC., and<br>THE SCO GROUP, INC., and<br>X/OPEN COMPANY LIMITED,<br><br>        Defendants. | CASE NO.:8:06-CV-01950-JSM-TGW |

### SCO Group, Inc.'s Motion To Dismiss And Memorandum Of Law In Support (Dispositive Motion)

Defendant, SCO Group, Inc. ("SCO") by and through its counsel and pursuant to Fed. R. Civ. P. 12(b)(6) hereby files this Motion to Dismiss and Memorandum of Law in Support. Pursuant to this Motion and Memorandum of Law, SCO seeks dismissal of all claims asserted against SCO by Plaintiff, Wayne R. Gray ("Gray") for failure to state any actionable claims against SCO.

### Memorandum of Law

### Preliminary Statement

Though the factual allegations in Plaintiff's Complaint total 183 paragraphs, it is clear upon review that the majority of the allegations revolve around actions and activities which have no connection to Plaintiff Gray[1] and which are insufficient for him to state claims against SCO. Gray's Complaint is based on the conclusory allegation that

Gray v. Novell, Inc. et al

Doc. 27

---

[1] Indeed, the only allegations that implicate any of the defendants' interactions with Gray involve his prior litigation with X/Open Company Limited ("X/Open") before the Trademark Trial and Appeal Board ("TTAB") which is addressed below.

when Novell, Inc. ("Novell") purchased the UNIX operating system in 1993 or 1994, this "purchase was met with suspicion by certain members of its third-party marketing channel, UNIX code licensees, customers, competitors, and/or the relevant public." Complaint at ¶¶ 26 -27. Based on nothing more than information and belief, Gray alleges that Novell did not want to anger its customers and, therefore, while it maintained control of the assets, it nevertheless, appeared to relinquish control of those assets, including certain trademarks, to X/Open Company Limited ("X/Open") in 1993. Complaint at ¶ 28. Gray fails to plead what if any agreements Novell and X/Open entered or purported to enter transferring the UNIX assets, which assets were purportedly transferred and which assets were not. Significantly, Gray does not allege why those agreements were false. Nor does he plead any of the facts regarding communications about the alleged planned fraud that purportedly took place between Novell and X/Open, who participated, when and how those communications took place, or what the parties allegedly agreed to. Instead Gray alleges only in conclusory fashion that Novell and X/Open schemed and agreed that X/Open would operate the UNIX mark re-licensing business and state that X/Open owned the UNIX marks. Complaint at ¶¶ 29 -30. Based on nothing more than this unsubstantiated conclusion, Gray alleges that practically every action or statement taken by X/Open and Novell since that time is not only fraudulent but part of a conspiracy to commit fraud.

SCO's involvement is even more attenuated. Gray alleges that Novell was the owner and registrant of the UNIX and UNIXWARE trademarks which were sold to Santa Cruz, which was SCO's predecessor. Complaint at ¶¶ 48-56. Gray cannot even affirmatively allege that Santa Cruz was part of the purported conspiracy along with

Novell and X/Open, but asserts only that Santa Cruz "*evidently*" joined the scheme. Complaint at ¶¶ 58 (emphasis added). Without providing any rational basis for such an agreement, Gray further alleges on information and belief that Santa Cruz agreed to conceal its ownership of the marks it acquired from Novell. Complaint at ¶¶ 59. Once again, the Complaint provides no specifics regarding this apparent agreement to commit fraud, failing to identify who participated in those communications, where, when and how those communications occurred or the terms of those agreements.

Although Gray alleges that all the defendants acted together in communications regarding the UNIX marks, he provides no facts to support any inference that the defendants were aware of the other defendants' press releases or communications with third parties. Indeed, the only representations that Gray attributes to Santa Cruz or SCO are certain unspecified filings before the PTO, trademark certifications, and certain press releases that Gray alleges are false. *See* Complaint at ¶¶ 69, 93, 154 and 156. Gray does not provide specifics for these alleged misrepresentations, including who made the statement, what precise statements were made, why they were false,[2] or where the press releases at issue allegedly appeared.[3] *See id.* Gray further does not allege that he received any of these communications or relied on any false statement of fact purportedly contained therein.

---

[2] With regard to the allegedly false PTO filings and certificates, Gray also fails to allege the date of the statements or who received the purportedly false certificates.

[3] Gray also alleges that SCO, in pleadings in cases unrelated to Gray, made certain statements regarding its ownership of certain UNIX business assets. *See* Complaint at ¶¶ 96-97, 102-03. Significantly, in other paragraphs of the Complaint, Gray alleges these statements are not false or misleading, but rather are true. Equally important, these alleged statements are not necessarily inconsistent with any other statement purportedly made by SCO. *Cf.* Complaint at ¶¶ 69, 93 and 154.

The Complaint does not allege that Gray is a participant in any of the facts that are discussed above. Gray's involvement is far more limited and involves his prior litigation with X/Open before the TTAB which was filed in 2001 (Complaint at ¶ 86) and has not yet reached a conclusion. *See* Complaint at ¶ 85 *et seq.* Indeed, every communication that Gray alleges with any of the defendants is related to this litigation.[4] *See id.* Gray alleges that the communications between the parties and discovery in the TTAB action was disputed and included motions to compel responses and for a protective order.[5] *See* Complaint at ¶¶ 110-131. Gray asserts the proceedings were distrustful and acrimonious, and alleges that each of the defendants' action pursuant to that litigation was itself part of the alleged scheme.[6] Refusing to concede that any documents may contain confidential or proprietary information, he alleges that SCO's production of a document designated as "'Highly Confidential' (for attorney's eyes

---

[4] Gray provides a list of purported instances of mail or wire fraud at ¶ 170 of the Complaint. This list includes two communications from SCO, both of which are part of the litigation before the TTAB. *Id.* at p. 57. Even though not designated as wire or mail fraud, every communication between SCO and Gray, in fact, was part of the prior litigation before the TTAB. *See* Complaint at ¶¶ 107, 112, 114-124, 161 and 162.

[5] Although Gray apparently disputes SCO's responses to a subpoena served pursuant to that action, there is no allegation that Gray moved to compel further responses from SCO or disputed SCO's assertions of privilege before the TTAB. *See* Complaint at ¶¶ 114.

[6] Emblematic of how every fact is alleged to be part of the "scheme" regardless of how speculative or illogical, Gray alleges that he believes that part of X/Open's "scheme" was to not file for renewal of certain marks. Gray further alleges that X/Open's action in filing for renewal of those same marks was part of the very same scheme. Complaint at ¶¶ 148-152. These allegations become even more nonsensical when Gray asserts that, because he informed the PTO of the alleged fraud and X/Open's attempts to avoid chain of title review, X/Open responded by filing for renewal of the registration, a process which apparently required the very review Gray says X/Open was seeking to avoid. *See id.*

only)" was part of the fraudulent scheme.[7]  Complaint at ¶ 112.  Moreover to the extent

that Gray's action is premised on what he views as discovery abuses in TTAB, he

provides no explanation why he has not sought to resolve those issues in the pending

TTAB action which, after almost 6 years of litigation, is in the best position to resolve

those disputes.

Gray's allegations regarding damages are equally insufficient to state a claim.

Gray alleges that based on correspondence from X/Open and the opposition to his

trademark application he "suspended" his business activities.  Complaint at ¶ 87.  Gray

does not plead that there has been any order entered that would prohibit him from using

the "iNUX" name which he is seeking to trademark (*see id.*) or that he has been forced to

use a different name.  Gray has also not alleged that he has any products that have been

developed and are ready for sale that could not be sold under another name, that he lost

sales already agreed to, or that he lost any prospective sales because of X/Open's

opposition to Gray's trademark.  In short, Gray does not allege that he was a competitor

of X/Open or any other defendant either at the time the trademarks were registered in

1986[8] (Complaint at ¶ 12) or when the purported transfer to X/Open was recorded by a

---

[7]  With regard to Novell and X/Open, Gray's allegations are equally unconvincing.
Despite complaining that he has not received documents responsive to his document
requests or subpoenas, Gray refused to enter a protective order under which he alleges
certain documents would have been produced to him because he believes Novell and
X/Open were attempting to "lure him into entering a protective order" and to "entrap[]
Gray, [by] manufacturing evidence of a discovery violation to discredit him before the
TTAB."  (Complaint at ¶ 143).

[8]  For the purposes of this Motion to Dismiss, SCO, as it must, assumes the accuracy of
the allegations of the Complaint.  SCO does not either affirm or deny any of the
Complaint's allegations in asserting this Motion to Dismiss.

PTO Trademark Conveyance Form with the PTO in 1999.[9]  (Complaint at ¶ 74)  Because Gray was not a competitor and did not suffer any loss as such, he has suffered no damages and does not have standing to bring the present action.

Gray's Complaint is fatally flawed for other reasons as well.  First, it ignores the litigation privilege in Florida which provides absolute immunity for actions taken relating to prior litigation.  *Green Leaf Nursery v. E.I. Dupont De Nemours and Co.*, 341 F.3d 1292 (11th Cir. 2003); *cert. denied* 541 U.S. 1037 (2004)  In addition, Gray is barred from bringing the alleged RICO, Florida RICO, and Florida Communications Fraud Act claims because he has failed to allege any direct representations to him outside of the context of prior litigation.  As a matter of law Gray cannot establish reasonable reliance on representations made in prior litigation.  *Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.,* 470 F.3d 1036, 1043 (11th Cir. 2006)  The other representations which Gray alleges were not made to him but rather to third parties, which is insufficient to establish standing to bring these causes of action.[10]  *Nicor Int'l Corp. v. El Paso Corp.*, 318 F.Supp. 2d 1160 (S.D.Fla. 2004).

---

[9]  Gray pleads but does not specify that the trademark was originally issued to AT&T and was transferred to Unix System Laboratories, which was acquired by Novell and which subsequently registered the transfer of the marks.  Complaint at ¶¶ 22 -25.  There is no allegation that Gray was a competitor in the relevant market at the time AT&T owned the trademark.

[10]  Indeed, while Gray appears to have performed research regarding these representations to third parties, he does not allege that he received any of these communications at or near the time they were made nor that he relied on any such representations in acting or refraining from taking any action.

**Argument**

I.    **Gray's Action Under 15 U.S.C. § 1120 Should Be Dismissed For Lack of Standing And Failure To State A Claim**

Counts Three and Four of the Complaint based on 15 U.S.C. § 1120 are barred on two independent grounds. First, Gray does not have standing to assert a violation of this act by any defendant, including SCO, based on alleged false or fraudulent registration of certain trademarks by X/Open because only injuries that were caused at the time of the registration are compensable. As discussed below, Gray's complaint contains no allegation that he was not a competitor either at the time of the registration of the trademarks he disputes or at the time the marks were transferred to Novell or X/Open. Therefore, even assuming all allegations to be true, Gray did not suffer any damages which can be redressed by this act. Second, even if Gray could assert a cause of action against any party under 15 U.S.C. § 1120, Gray could not assert a cause of action against SCO because, by its terms, that statute only imposes liability on the person who "procure[s] registration in the Patent and Trademark Office of a mark by a false and fraudulent declaration or representation, oral or in writing or by any false means. . . ." 15 U.S.C. § 1120. Gray did not plead that SCO obtained any trademark registration of which he complains. In fact, Gray affirmatively pleads that other parties obtained the registration of certain marks based on allegedly false representations. Even if Gray could establish these allegations, no liability under 15 U.S.C. § 1120 would extend to SCO for a registration that other parties obtained.

A.    Gray Does Not Have Standing To Assert The 15 U.S.C. § 1120 Claim

Assuming *arguendo* that the allegations of Gray's Complaint are true, Novell was in 1998 the holder of certain UNIX trademarks that were registered in 1986.[11]  Complaint at ¶ 12.  Although Gray alleges that certain agreements of the parties and subsequent recording of the transfer of the marks by X/Open raises a dispute as to the true ownership of the marks, there is no allegation that the marks were not valid as issued in 1986.  Gray does not have standing to dispute either the registration of the marks or the validity of those marks as 15 U.S.C. § 1120 only provides for a cause of action related to the registration of the mark, not a subsequent transfer thereof.  More importantly, Gray was not a competitor when those marks were issued in 1986 and can allege no harm occurred to him *at the time the registration was issued.*[12]  For example, in *Aureflam Corp. v. Pho*

---

[11]  Gray pleads, but does not specify, that the trademark was originally issued to AT&T and was transferred to Unix System Laboratories, which was acquired by Novell and which subsequently registered the transfer of the marks.  Complaint at ¶¶ 22 -25.

[12]  Indeed, because Gray does not dispute the validity of the original registration and apparently, even today, does not have competing software, Gray can not establish that he has suffered any injury-in-fact arising from the registration or use of the disputed marks.  In fact, instead of alleging that he possessed or marketed a competing product, Gray clearly alleges that he suspended the business of "iNUX" after receiving a correspondence from X/Open and a Notice of Opposition to Gray's trademark registration.  Complaint at ¶¶ 85 – 87.  Because Gray has not alleged that he has any competing software, there is no injury in fact to a recognizable interest.  *Joint Stock Society v. UDV North America, Inc,* 266 F.3d 164, 177 (3d Cir. 2000) (Plaintiffs were unable to establish injury in fact where they had not shipped any competing product into the United States); *Sunrich Food Group, Inc. v. Pacific Foods of Oregon, Inc.*, 233 F.Supp. 2d 1273, 1277-78 (D.Ore. 2002); quoting *Star-Kist Foods, Inc. v. P. J. Rhodes, & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (Petitioner for cancellation must show "'a real and rational basis for [its] belief that [it] would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in [its] own mark.'"  *Havana Club Holdings, S.A. v. Galleon, S.A.,* 62 F.Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd* 203 F.3d 116 (2nd Cir. 2000), *cert. denied* 531 U.S. 918 (2000) (Allegations of prospective future damages are speculative and insufficient to support standing).  Even assuming Gray were a competitor, there is no injury that results from any alleged false

*Hoa Phat I, Inc.,* 375 F.Supp. 2d 950, 954 (N.D. Cal. 2005), the Court held that damages

under 15 U.S.C. § 1120 "must arise from and at the time of registration rather than from

later use." The Court further held that because the claimant did not exist at the time of

the registration it could not demonstrate any injury that directly resulted from the

registration. *Id.; see also Joint Stock Society v. UDV North America, Inc.* 53 F.Supp. 2d

692, 712 (D. Del. 1999) *aff'd* 266 F.3d 164, 179-185 (3d Cir. 2001) (Because party

asserting claim for damages did not exist at time of registration it was not injured at the

time of registration.) Both *Aureflam* and *Joint Stock Society* rely on *Gilbert/Robinson,*

*Inc. v. Carrie Beverage-Missouri, Inc.* 989 F.2d 985 (8th Cir. 1993), *cert. denied* 510 U.S.

928 (1993). In *Gilbert*, the Court held that despite alleging fraud in the original

registration of a service mark,[13] the defendant could not assert a cause of action under 15

U.S.C. § 1120, where at the time of the registration the defendant was not a competitor:

> Carrie did not exist in 1976, when the fraud occurred, so it was not
> immediately injured by the fact that Gilbert's mark was registered. Nor
> has Carrie proved that registration fostered either consumer confusion or
> unfair competition at that time. Carrie's injury arose many years later and

---

statement, representation or communication of any defendant; rather, any purported
injury would be the result of the original trademark registration which Gray does not
dispute. *See, id.* at 177-78; *see also Hampshire Paper Corp., v. Highland Supply Corp.*
2002 WL 31114120 (D.N.H. 2002) (Plaintiffs' Lanham Act and unfair competition
claims were barred where the plaintiff had not yet begun to compete with the Defendant
and alleged that its product did not infringe on the trademarks and patents of Defendant);
*see generally, Hallmark Cards, Inc. v. Lehman*, 959 F.Supp. 539,544-45 (D.D.C. 1997)
(Alleged injury was not caused by issuance of Certificate of Correction by PTO but
caused by issuance of original patent.). Moreover, even if Plaintiff could establish injury-
in-fact and causation sufficient for Article III standing, he could not meet the demands of
prudential standing. *Joint Stock Society v. UDV North America, Inc,* 266 F.3d 164, 179-
185 (3d Cir. 2001) (Indirect nature of injury, speculative damages and risk of duplicative
damages led Court to hold prudential standing did not exist).

[13] This case involved service marks. However, as noted by the Court in *Gilbert
Robinson*, trademark law treats service marks and trademarks the same. *Id.* at 988, n. 1.

is attributable to Gilbert's prior right to employ the HOULIHAN'S name in this line of business, a right established by Gilbert's longstanding use.[14]

Because the Court held that the defendant had not been injured by the alleged fraudulent recording of the mark, the defendant could not establish a cause of action under 15 U.S.C. § 1120. *Id.* at 991. This same rationale is even more compelling here. Although Gray pleads that the marks were registered in 1986, Gray does not allege that he took any actions with regard to his alleged business based on "iNUX" until 13 years later.[15] *Cf.* Complaint at ¶¶ 12 and 9. Gray did not attempt to register the "iNUX" mark until April 1999 and the internet domain names for "iNUX" until January 1999.[16] Complaint at ¶¶ 9 and 11. Therefore, even if Gray alleged there was a false statement in the original registration of the mark – which he does not -- as the Court held in *Gilbert/Robinson*, Gray is not within the zone of interests that the Lanham Trade-Mark act is intended to protect and he cannot state a cause of action under 15 U.S.C. § 1120. *Id.* at 990.

---

[14] *Id.* at 990.

[15] The Complaint similarly contains no allegations that Gray was a competitor at the time that AT&T registered the marks.

[16] Because Gray is not a competitor and has not alleged that he has competing software, Gray has also failed to state a claim against SCO for Count 5 of the Complaint under 15 U.S.C. § 1125(a) which prohibits false or misleading representations that is either likely to cause confusion (subsection A), or which appears in commercial advertising or promotion that misrepresents the nature, characteristics, qualities or geographic origin of goods, services or commercial activities (subsection B). Gray cannot fulfill the requirements of this statute because he has not alleged that he has a competing product and thus, there is no possibility of confusion between competing products and he has not alleged any advertisement or promotion from SCO that contained any misrepresentation regarding the nature, characteristics, qualities or geographic origin of any product.

B.    Gray May Not Assert A 15 U.S.C. § 1120 Claim Against SCO

Even if this Court were to find that Gray does have a right to pursue an action for

damages under the Lanham Act against some defendant(s), 15 U.S.C. § 1120, by its own

terms does not permit an action against SCO.  That statute provides:

> Any person who shall procure registration in the Patent and
> Trademark Office of a mark by a false or fraudulent declaration or
> representation, oral or in writing, or by any false means, shall be
> liable in a civil action by any person injured thereby for any
> damages sustained in consequence thereof.

Here, Gray has not alleged that SCO obtained registration of the marks which are

the subject of this dispute.  Instead, he has alleged that other parties obtained that

registration.  In addition, Gray has not alleged that SCO made any false or fraudulent

declaration or representation with regard to the registration of these marks in 1986 and

which was purportedly the subject of X/Open's trademark conveyance form filed with the

PTO on or about June 22, 1999.  Complaint at ¶¶ 12 and 74.  Gray cannot state a claim

against SCO for this alleged violation because he has not, and cannot, point to any false

statement of SCO, let alone the other required elements of this cause of action: (1)

knowledge of the representation's falsity; (2) the intention to cause reliance on the

statement; (3) reliance on the statement; (4) that the reliance was reasonable and (5)

damages.[17]  *See King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138

(S.D.Tex. 1982).  Because Gray has failed to plead the elements of a violation of 15

---

[17]  Because there is no statement, there is no need for SCO to address any other required
elements regarding the statement, such that the statement is material to the decision to
grant the application.  *See, West Indian Sea Island Cotton Ass'n, Inc. v. Threadtex, Inc.*,
761 F.Supp. 1041 (S.D.N.Y. 1991).

U.S.C. § 1120 against SCO, that claim should be dismissed for failure to state a claim pursuant to F.R.C.P. 12(b).

**II.    Counts Six Through Eleven of Gray's Complaint Allege Causes Of Action Under Florida Law That Are Barred By the Florida Litigation Privilege**

All of Plaintiff's allegations against SCO regarding representations to him on which Counts Six through Eleven are based relate solely to SCO's actions in prior litigation. Specifically with regard to SCO, Gray complains that in response to his subpoena duces tecum, SCO objected to the subpoena, produced one document marked "Highly Confidential" and objected to the document requests based on privilege. *See* Complaint at ¶¶ 110, 112 and 114. Although Gray apparently disputes SCO's claim of privilege based on an order issued in another case (Complaint ¶ 115), the Complaint is devoid of any allegation that he filed any motion to compel or to dispute the privilege in the PTO action or that there was any order in that proceeding finding the privilege assertions invalid. Indeed, Gray's list of purportedly false representations distributed by defendants via mail lists only SCO's provision of a document to Gray's counsel and SCO's privilege objections in response to Gray's subpoena, both of which were provided in response to the X/Open/Gray proceedings.[18] *See,* ¶ 170 at p. 57  These facts are

_____

[18] Other than the allegations addressed above that SCO's conduct in prior litigation is the basis for Counts Six through Eleven, the Complaint has few allegations of any misrepresentation by SCO, and those few allegations are both contradicted by the terms of the Complaint and insufficient to support the Claims asserted in Counts Six through Eleven thereof. Specifically, Gray alleges that Santa Cruz used false UNIX mark acknowledgements in press releases (Complaint at ¶ 69), SCO made false statements that X/Open "is the registrant of the UNIX and UNIXWARE marks," and these are registered trademarks of the Open Group in the United States and other countries. *See* Complaint at ¶¶ 93, 154 and 156.  Not only does the Complaint fail to plead that each of these statements is false, it affirmatively alleges that several of these assertions are true. Specifically, there is no doubt that X/Open is, in fact, the registrant of certain Unix marks as Gray alleges in paragraphs 73 and 74.  Gray cannot deny this registration because he

insufficient to state a cause of action against SCO under any cause of action sounding under Florida law because there is an absolute immunity under Florida law for actions taken during the course of litigation. Thus, even assuming there was any merit to Gray's claims against SCO for actions taken in the TTAB litigation – which there is not -- those actions cannot  form the basis for a claim in a subsequent litigation against SCO.

In *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell P.A. v. United States Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994), the Florida Supreme Court held that "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding. . . ." There is no doubt this absolute immunity applies to discovery response in prior litigation.  In *Green Leaf Nursery v. E.I. Dupont De Nemours and Co.*, 341 F.3d 1292 (11th Cir. 2003), *cert. denied* 541 U.S. 1037, the plaintiffs alleged that in addition to improper discovery responses, defendants gave "untruthful testimony, submitted improper or obstructive motions, committed misconduct during trial, disobeyed court orders and took false litigation positions." *Id.* at 1302.  The Court made clear that because the alleged misconduct occurred during the underlying litigation or in other underlying litigation, "Florida law clearly provides an absolute immunity to [the defendant] for their alleged misconduct." *Id.* at 1303.  Because SCO's allegedly false representations were made during the course of prior litigation, it is immune from any cause of action arising under Florida law, and Gray's causes of action six through eleven must be dismissed as to SCO.

---

seeks here to cancel those very trademarks.  Moreover, although Gray alleges that SCO misrepresented the transfer of the "UNIXWARE" trademarks to X/Open, the Complaint does not allege any facts that such a transfer did not occur.

III.    **Gray's RICO, Florida RICO and Florida Communications Act Claims Must
Be Dismissed for Failure to State a Claim**

In addition to the other fatal flaws alleged above, Counts One, Two and Eight

through Eleven must be dismissed for failure to state a claim since they do not allege any

actionable statements directed at Gray.  The Complaint alleges two types of

communications: (1) communications directed to Gray as a part of the prior trademark

litigation and (2) communications that are not directed at Gray.  Neither of these is

sufficient to state a claim for violation of RICO, Florida RICO or the Florida

Communications Fraud Act.

Gray's claims for violations of Federal RICO, Florida Rico and the Florida

Communications Fraud Act all require that the Plaintiffs plead reasonable reliance on the

communications.  *See Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336

F.Supp.2d 1239, 1262 – 64 (S.D.Fla. 2004); *aff'd* 470 F.3d 1036 (11th Cir. 2006) (Finding

the same showing of reasonable reliance was required for plaintiffs' Federal RICO,

Florida RICO and Florida Communications Act causes of action and finding that Plaintiff

must establish reasonable reliance); *see also Green Leaf Nursery v. E.I. DuPont De

Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003), *cert. denied* 541 U.S. 1037

(2004) citations omitted, ("[T]o establish a RICO fraud claim Plaintiffs must make the

same showing of reasonable reliance that is required for establishing common law

fraud.")  As discussed above at p. 4, footnote 4, the Complaint alleges that certain

communications were directed at Gray related to or during the course of the *X/Open

Company Limited v. Wayne R. Gray* case before the TTAB.  *See* Complaint at ¶¶ 85 – 86,

170.  Gray has alleged that litigation before the TTAB was disputed, he served discovery

that was disputed, and that the Gray and X/Open litigated motions for a protective order

and to compel production. (Complaint at ¶ 110 – 131)  Gray has also pled his suspicion of each of the defendants' actions.  The section reciting his allegations of that prior litigation is specifically titled "Defendant's Fraudulent Concealment and Obstruction of Justice."  (Complaint at p. 34)  Gray alleges that Novell and X/Open were attempting to "lure him into entering a protective order" and to "entrap[] Gray, [by] manufacturing evidence of a discovery violation to discredit him before the TTAB."  (Complaint at ¶ 143).  Gray further alleges that SCO designated a copy of a document "Highly Confidential" (for attorney's eyes only)" as part of the Defendants' alleged scheme to conceal fraud and obstruct justice.  (Complaint at ¶ 112).  Gray also alleges that he had prepared to join Novell and SCO as parties to the *X/Open v. Gray* case based on, *inter alia,* alleged "obstruction of his discovery requests and subpoenas."  (Complaint at ¶ 147).  Gray has also submitted an Inquiry Letter and a Letter of Protest to the PTO regarding the alleged scheme and fraud of the parties.  (Complaint at ¶¶ 149 – 51).  In sum, Gray's Complaint alleges that the prior underlying litigation was characterized by suspicion and mistrust.

None of the communications in that prior litigation, however, may serve as communications on which a claim of mail or wire fraud may be predicated.  This is because as a matter of law, Gray cannot establish reasonable reliance on any of the representations made as a part of that prior litigation. *Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.,* 470 F.3d 1036, 1043 (11th Cir. 2006).  In that case, the Eleventh Circuit emphasized its decision in a related proceeding that there could be no reasonable reliance on the communications of an adversary in a prior litigation for the purposes of a mail or wire fraud case:

In *Green Leaf*,[19] we also held that the plaintiffs could neither prove common law fraud nor mail and wire fraud as a matter of law because they could not reasonably have relied on any alleged misrepresentation by DuPont. 341 F.3d at 1305. . . . We reiterate our previous ruling: "because Plaintiffs were represented by counsel, were in an antagonistic and distrusting relationship with DuPont, and settled litigation that included accusations of fraud and other dishonest conduct by DuPont, [the Growers] could not reasonably or justifiably rely on any of DuPont's misrepresentations."

As in *Florida Evergreen*, Gray here was represented by counsel and the prior litigation was antagonistic and distrusting as alleged in the Complaint. As in *Florida Evergreen,* the same result applies here – none of the representations made in that prior litigation may serve as predicate acts for the RICO, Florida RICO and Florida Communication Fraud Act causes of action because Gray could not, as a matter of law, have reasonably relied on those statements.

Gray alleges a large number of specific wire or mail communications which he alleges are instances of mail and wire fraud at paragraph 170 of the Complaint. Many of those statements were, however, issued pursuant to the TTAB proceedings. Excluding those representations made to Gray in the prior litigation,[20] what is left is a series of representations made either by parties in private communications, proceedings unrelated to the litigation to which Gray was a party, or statements made in press releases.[21] Because the Complaint does not – and indeed cannot – allege that any of these statements

---

[19]  *Green Leaf Nursery v. E.I. DuPont De Nemours and Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003), *cert. denied* 541 U.S. 1037 (2004).

[20]  With regard to SCO specifically, the only two communications that Gray alleges as instances of wire or mail fraud both were during the course of and part of the prior litigation. *See, id.* at p. 57.

[21]  *See* Complaint at ¶ 31-34, 36-47, 49, 57, 60-71, 74-84, 91, 93-96, 100-103, 105, 153-156, 159.

were directed to Gray, these alleged statements are insufficient predicate acts for the assertion of RICO, Florida RICO or the Florida Communications Fraud Act claims. Significantly, Gray does not allege that he was recipient of any of these communications at the time it was issued or that he relied on any such communication, including the alleged press releases, at the time it was issued.

*Nicor Int'l Corp. v. El Paso Corp.*, 318 F.Supp. 2d 1160 (S.D.Fla. 2004) is instructive. In *Nicor*, the plaintiffs alleged that the defendants had engaged in various wrongful acts to coerce a court in the Dominican Republic to rule in favor of the defendants. As alleged by the plaintiffs in furtherance of this conspiracy the defendants committed wire and mail fraud in communications directed to the Overseas Private Investment Corporation and to the government and court system of the Dominican Republic. The Court denied reconsideration of its granting of summary judgment finding that the plaintiffs lacked standing to assert claims under RICO and the Florida Communications Act holding that the plaintiffs lacked standing to assert claims based on misrepresentations to third parties. *Id.* at 1171. Similarly, in *Allocco v. City of Coral Gables,* 221 F.Supp. 2d 1317, 1364 (S.D.Fla. 2002), *aff'd* 88 Fed. Appx. 380 (11th Cir. 2003), the Court held that where the plaintiffs could not identify any fraudulent actions or statements directed at the plaintiffs specifically, they could not state claims for violation of Florida RICO: "Under *Byrne*, the plaintiffs' RICO claims, which are based on mail and wire fraud, must fail because, if no misrepresentations were directed to the plaintiffs, they did not suffer any injury as a result of the defendants' actions, as the could not have 'reasonably relied' on communications they did not receive." (citations omitted).

17

The same result should apply here. Not only has Gray failed to allege that any of these communications were directed to him, he also does not allege that he received the communications either at the time they were issued or shortly after they were issued. Gray also fails to allege that he relied on any of the communications to third parties. Under these facts, Gray's claims made under RICO, Florida RICO and the Florida Communications Fraud Act must be dismissed for failure to state a claim.

## Conclusion

Wherefore, for the reasons set forth above, Defendant The SCO Group, Inc. respectfully requests this Court to dismiss all claims against it or, in the alternative, requests this Court enter an Order staying this action until resolution of the TTAB litigation styled *X/Open Company Limited v. Wayne R. Gray,* and for such further relief as this Court deems appropriate.

Respectfully submitted this January 31, 2007.

BOIES, SCHILLER & FLEXNER, LLP


s/ Karen C. Dyer
Karen C. Dyer
Florida Bar No.: 716324
George R. Coe
Florida Bar No. 298440
225 South Orange Avenue, Suite 905
Orlando, Florida 32801
Telephone: (407) 425-7118
Email: kdyer@bsfllp.com
Attorneys for Defendant The SCO Group, Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2007, I electronically filed the foregoing, SCO Group, Inc.'s Motion To Dismiss And Memorandum Of Law In Support (Dispositive Motion) with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following David L. Partlow, David L. Partlow, P.A., PO Box 82963, Tampa, FL 33682-2963; William Cooper Guerrant, Jr., Hill, Ward & Henderson, PA, PO Box 2231, Tampa, FL 33601-2231; Evan A. Raynes and Mark Sommers, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 901 New York Avenue, NW, Washington, DC 20001-4413; Frederick H.L. McClure and E. Colin Thompson, DLA Piper US, LLP, 101 E. Kennedy Blvd., Suite 2000, Tampa, FL 33602-5148; John P. Mullen and Heather M. Sneddon, Anderson & Karrenberg, 700 Chase Tower, 50 West Broadway, Salt Lake City, UT 84101.

s/ George R. Coe
George R. Coe