IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE R. GRAY,

        Plaintiff,

vs.

NOVELL, INC., and
THE SCO GROUP, INC., and
X/OPEN COMPANY LIMITED,

        Defendants.

CASE NO.: 8:06-cv-01950-T-30TGW

## WAYNE R. GRAY'S MEMORANDUM IN OPPOSITION TO THE SCO GROUP, INC.'S MOTION TO DISMISS

Plaintiff Wayne R. Gray ("Gray") by and through counsel respectfully submits this memorandum in opposition to Defendant The SCO Group, Inc.'s ("SCO") motion to dismiss.

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See *Hoffend v. Villa,* 261 F.3d 1148, 1150 (11th Cir. 2001) (citation omitted), *cert. denied,* 535 U.S. 1112 (2002). For the purposes of a motion to dismiss, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Rendon v. Valleycrest Prods.,* 294 F.3d 1279, 1282 (11th Cir. 2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)), *reh'g denied,* 54 Fed. Appx. 493 (11th Cir. 2002). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds

Gray v. Novell, Inc. et al        Doc. 30

that it fails to state a claim upon which relief can be granted. *Beck v. Deloitte & Touche*, 144 F.3d 732,736 (11th Cir. 1998) (citation omitted), *reh'g denied,* 189 F.3d 487 (11th Cir. 1999). Because Gray has pled facts that entitle him to relief under all counts, SCO's motion to dismiss should be denied in its entirety.

Gray's Complaint alleges eleven (11) counts and pleads each with specificity, setting forth a detailed statement of allegations that Defendants Novell, Inc. ("Novell") and X/Open Company, Ltd., ("X/Open") from about 1993, and Novell, X/Open and SCO[1] from about 1996, pursued a long-standing pattern of fraudulent, illegal and unethical conduct designed to enrich themselves at the expense of competitors, business partners and consumers, and maliciously targeted and injured Gray and his iNUX business.

SCO, in an attempt to obscure its motion's lack of merit, mischaracterizes Gray's allegations as providing insufficient facts or as insufficiently specific; it disregards the causal connection between Defendants' fraudulent acts upon the United States Patent and Trademark Office ("PTO") and Gray's injury; it incorrectly argues that only criminal acts directed at Gray are RICO predicate acts; it ignores X/Open's sham PTO opposition[2] to Gray's iNUX mark registration that gave Gray a legitimate commercial interest; it disregards the concealment of material evidence to conceal fraud in *X/Open v. Gray*; it misrepresents the injury pleading standards as that required at the summary judgment stage; it mischaracterizes the details and source of Gray's iNUX business and litigation injuries; it incorrectly argues U.S. Executive Branch administrative proceedings are subject to the

---

[1] SCO or its predecessor The Santa Cruz Operation, Inc.("Santa Cruz"). "Santa Cruz/SCO" refers to one or both.
[2] Trademark Trial and Appeal Board ("TTAB") proceeding styled *X/Open Company Limited v. Wayne R. Gray,* opposition No. 91122524 filed April 11, 2001, herein the "*X/Open v. Gray*" opposition (to Gray's iNUX mark).

Florida law governing litigation privilege "judicial immunity"; it incorrectly argues that only trademarks procured by "original" registration are subject to 15 U.S.C. § 1120; and it incorrectly states that the TTAB in said *X/Open v Gray* opposition proceeding has authority over Gray's present claims.

Gray identifies agreements and acts by and between two or more Defendants in furtherance of their scheme occurring in and between 1993 and 2004 that have been—and continue to be—concealed from him for almost three (3) years in spite of his discovery requests in *X/Open v Gray*.[3] Gray invoked Rule 11(b)(3), Fed.R.Civ.P., since additional evidence of criminal acts by each Defendant (Novell, X/Open, Santa Cruz/SCO) is reasonably anticipated after further investigation and discovery. (Complaint at ¶ 169.)

### Argument

Opinions cited by SCO in its motion relate mostly to summary or final judgment;[4] the heightened pleading requirements therein are not relevant to its motion, and only four (4) opinions[5] cited it in its motion to dismiss relate to pleading requirements at this stage;

> "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to

---

[3] Gray also reasonably anticipates additional evidence of Defendants' criminal acts occurring in and after 2005.
[4] See *Joint Stock Society v. UDV North America, Inc.* 53 F.Supp. 2d 692,712 (D. Del. 1999), *aff'd* 266 F.3d 164,179-185 (3d Cir. 2001) at 8 and 9, and *Havana Club Holdings, S.A. v. Galleon, S.A.*. 62 F.Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd* 203 F.3d 116 (2nd Cir. 2000), *cert. denied* 531 U.S. 918 (2000) at 8. These relate to heightened pleading requirements, and are irrelevant here as plaintiffs there presented no evidence they entered, or were reasonably prepared to enter, the U.S. market, and thus the effects were purely speculative. Should the Court convert SCO's motion into one for summary judgment requiring factual evidence not presented at this pleading stage, Gray respectively requests time for discovery be allowed for an evidentiary response.
[5] *Aureflam Corp. v. Pho Hoa Phat I, Inc.,* 375 F.Supp. 2d 950, 954 (N.D. Cal. 2005) quoting *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.* 989 F.2d 985 (8th Cir. 1993), *cert. denied* 510 U.S. 928 (1993) and relating to parties as competitors (unfair competition) and trademark procurement fraud, at 8 and 9; *Hampshire Paper Corp., v. Highland Supply Corp.* 2002 WL 31114120 (D.N.H. 2002) relating to parties as competitors (unfair competition) and non-infringement declarations, at 9; and *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell P.A. v United States Fire Ins. Co.,* 639 So.2d 606, 608 (Fla.1994) relates to litigation privilege at 13.

3

support the claim.'"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (*quoting Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). SCO attempts to mischaracterize or refute Gray's allegations[6] through irrelevant arguments[7], as his allegations at this preliminary stage are legally sufficient. SCO may not use a Rule 12(b) motion to dismiss to challenge Gray's factual assertions, and its arguments fail to meet Rule 12(b)(6) requirements because SCO does not take Gray's allegations as true and relies upon assertions of fact outside the Complaint. Therefore SCO's motion to dismiss should be denied.

## I. Gray Has Appropriately Alleged His Claims

### A. The Complaint Satisfies All Particularity Pleading Requirements.

SCO incorrectly states Gray has not plead the "who, what, why and where" requirement[8] of Defendants' criminal acts even as they continue to conceal fraud. He has sufficiently alleged the enterprise, scheme and targeted acts, as the purpose of the

---

[6] SCO's motion arguments are inappropriate, relying upon new evidence at 8 ("Novell was in 1998 the holder of certain UNIX trademarks that were registered in 1986") and in FN12 ("Gray...does not have competing software"), contradicting Gray (Complaint at ¶¶ 56, 73, 166.); SCO relies upon evidence outside the complaint.

[7] SCO's motion refers to "nonsensical" allegations in FN6 at 4; it disregards TTAB Manual of Procedure ("TBMP") § 602.02(b) allowing the Board to enter an uncontested judgment against X/Open after mark cancellation if it allowed Unix marks cancellation without Gray's consent absent just cause, and it is reasonable and sensical to believe that Gray's letters (Complaint at ¶¶ 148-152) thwarted Defendants' plan to voluntarily allow cancellation the UNIX mark registrations, permitting X/Open to falsely plead "just cause" thereafter.

[8] It is important not to construe the fraud pleading requirements in a vacuum. Focusing exclusively on the "particularity" language" is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'" *Seville*, 742 F.2d at 791, *quoting Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir. 1983) and 5 C. Wright & A. Miller, *Federal Practice and Procedure*. Sec. 1298, at 407 (1969). Rule 9(b) must be read in conjunction with Rule 8(a), which requires that a plaintiff plead only a short, plain statement of the grounds upon which he is entitled to relief. *Brooks*, 116 F.3d at 1371. Rule 9(b) is satisfied if defendants are given enough information to allow them to frame a responsive pleading and the Court is assured that an adequate basis exists for the charges made. *Rich-Taubman Associates v. Stamford Restaurant Operating Co., Inc.*, 587 F. Supp. 875, 880 (S.D.N.Y. 1984). Details of certain agreements between the Defendants wherein they confirm the scheme have been and are being concealed without reasonable explanation. (Complaint at ¶¶ 110-145, 160-163.) *See United States v. Magellan Health*

particularity pleading requirement that "circumstances constituting fraud ... be stated with particularity" is to insure that defendants are alerted to the precise misconduct with which they are charged and protected against spurious charges of fraudulent behavior.[9]

It appears that SCO seeks to transform Rule 9(b) into a rigid pleading trap in which any omission or mistake in pleading by Gray will permit SCO to escape the consequences of fraudulent activity. The Eleventh Circuit recognized, however, that the Federal Rules were designed to reject such an approach; the particularity directives of Rule 9(b) must be harmonized with the broader policy of notice pleading. *See. e.g., Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985). That some allegations (but not the alleged predicate acts) are based upon information and belief is appropriate where, as here, the Complaint sets forth the facts upon which the belief is based. *See Zatkin v. Primuth,* 551 F. Supp. 39, 42 (S.D. Cal. 1982); *Oleck v. Fischer,* 401 F. Supp. 651, 655 (S.D.N.Y. 1975); 5 C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 1298, at 416 (1969).

Gray's Complaint pleads with sufficient particularity all allegations, including, among others, the corrupt Novell-X/Open enterprise agreements in 1993 and 1994 wherein they schemed to conceal the UNIX marks lawful registrant and/or owner through willfully deceitful and false statements (Complaint at ¶¶ 2-4, 25, 27-48, 159-161 and 164); Santa Cruz's financial incentive to join the corrupt enterprise and Defendants' coordinated timing

---

*Services, Inc.,* 101 F. Supp.2d 1365, 1368 (M.D. Fla. 2000) (stating that Rule 9(b)'s pleading requirements are relaxed when information is in the exclusive hands of the opposing party).
[9] *See Brooks v. Blue Cross & Blue Shield.* 116 F.3d 1364, 1371 (11th Cir. 1997), *quoting Seville Indus. Machinery Corp. Southmost Machinery Corp..* 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179 (1985). The complainant is not required to set forth every possible detail supporting his allegation, and he is not required to plead evidence. *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976 (1975). *Seville, supra,* at 791 ("[Allegations of 'date, place

(noticeably in early 1997) of their acts in furtherance of the scheme (Complaint at ¶¶ 50, 56-69, 156, 165); SCO's and X/Open's recently coordinated acts in furtherance of the scheme (Complaint at ¶¶ 92-94 and 154-156) [10]; Defendants' acts specifically targeting Gray and his iNUX software business as a competitive threat to them, injuring him and his iNUX business.[11] (Complaint at ¶¶ 75-90, 97-99 and 166.)

### B. Gray Has 15 U.S.C. §§ 1120 and 1125(a) Standing.

SCO is mistaken when it argues that Gray does not have standing because his iNUX business did not exist at the time of the UNIX marks 1986 registration, as a cause of action extends to a fraudulent "subsequent transfer thereof"[12]. Not one of its cited opinions supports its argument that a trademark registration procured by fraudulent assignment, as is the 1999 PTO recordation (Complaint at ¶¶ 72-74) of the purported 1998 Assignment ("Recordation"), is not subject to Section 38 of the Lanham Act, 15 U.S.C. § 1120. SCO's citation of *Aureflam* (relying upon *Gilbert*)[13] is misplaced. An original trademark registration fraud was at issue

---

or time' fulfill [the purposes of Rule 9(b)], but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").
[10] The UNIXWARE marks assignment was *allegedly* executed February 12, 2004, but this purported assignment was not recorded until well after the PTO had canceled the two marks. (Complaint at ¶ 154.)
[11] It is reasonable to infer that Defendants initiated the *X/Open v Gray* TTAB action because, among other things, Gray's iNUX business was a competitive threat to their Linux business interest in and after 1999, and to believe these sophisticated Defendants had no problem believing Gray and his new, small, and vulnerable iNUX business would not be able to simultaneously fund the iNUX software business and litigation cost associated with their fraudulent TTAB opposition, and confiscation of his business assets was an integral part of their long-running scheme. (Complaint at ¶¶ 8-10, 85-89, 165-166, 172, 189, 194, 200, 205, 211, 218.) Gray realized after July 2005 the TTAB does not have authority over his fraud claims against Novell and SCO and reasonably believed that joining them in *X/Open v Gray* and seeking further discovery cooperation was futile.
[12] SCO Motion to Dismiss at 8.
[13] SCO cites *Sunrich Food Group, Inc. v. Pacific Foods of Oregon, Inc.*, 233 F.Supp. 2d 1273, 1277-78 (D.Ore. 2002) quoting *Star-Kist Foods, Inc. v. P. J. Rhodes, & Co.*, 735 F.2d 346, 347, 348 (9th Cir. 1984), at 8; *Sunrich* and *Star-Kist* relate to the heightened pleading requirements in a summary judgment motion. In *Star-Kist* the Court affirmed Star-Kist's standing to seek cancellation of a mark originally registered in 1951 and acquired by Rhodes through assignment in 1981, even as Star-Kist did not begin using the mark at issue until 1980, did not apply for mark registration until 1982, and its cancellation action related to allegations of a <u>prior fraudulent assignment</u> by a predecessor to Rhodes, apparently not the original registrant. Gray has properly alleged

there, whereas Gray has alleged facts supporting that he and Defendants are competitors[14] and a subsequent fraudulent assignment is the issue here. Santa Cruz/SCO and Novell participated in X/Open's fraudulent 1999 UNIX mark registrations procurement[15] that caused the sham *X/Open v Gray* opposition targeting and injuring Gray (Complaint at ¶¶ 8-10, 72-89, 165-166, 198-200 and 203-205) in violation of 15 U.S.C. § 1120, which states:

> Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.

As participants in the violation, liability extends to Novell, X/Open and SCO. Gray, as a § 1120 plaintiff, has standing and may recover damages sustained in consequence of Defendants' UNIX marks registrations procurement fraud[16] by knowing and willful materially false declarations in the Assignment and its fraudulent 1999 Recordation. (Complaint at ¶¶ 72-74.)

Gray alleges violations of the Lanham Act by Defendants' false representations that X/Open was the UNIX marks lawful owner from about 1993 to in and after November 1998, claiming this constitutes "unfair competition by false designation of origin." (Complaint at ¶¶ 72-89, 91, 135, 152, 170(#s1-13, 21-25 and 29-30) and 207-212) Section 43(a) of the

---

commercial interest.

[14] See FN11 above.

[15] The UNIX mark "procurement" fraud at issue occurred in June 1999, not the 1986 registrations as SCO represents incorrectly; Gray's iNUX business existed prior to the 1999 fraudulent UNIX marks Assignment Recordation, and but for that fraudulent Recordation, the PTO would not recognize X/Open as the marks' registrant and would not have permitted its TTAB UNIX mark actions, including *X/Open v Gray*. (Complaint at ¶¶ 14, 72-74 and 78-86.)

[16] SCO's motion at 11 cites *West Indian Sea Island Cotton Ass'n, Inc. v. Threadtex, Inc.*, 761 F.Supp. 1041 (S.D.N.Y. 1991), a summary judgment opinion wherein the registered mark did not contain alleged false words "Sea Island Cotton". Novell's false claim of UNIX marks ownership in the Assignment fraudulently recorded at the PTO in 1999 is material to registration, and the willful cooperation and participation of Santa Cruz in said act caused direct injury to Gray. Complaint Count Three remedies include *inter alia* UNIX mark cancellation.

7

Lanham Act, 15 U.S.C. § 1125(a)(l)(A), provides in relevant part:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Defendants have falsely implied or stated to the public, and the public has incorrectly believed, since about 1993 that X/Open is the UNIX marks lawful owner and/or registrant. (Complaint at ¶¶ 29-47, 59-71, 155-156). "The essential element in sustaining a claim under the Lanham Act is that the alleged infringement creates a likelihood of confusion on the part of consumers as to the source of the goods." *Whitney Info. Network, Inc. v Xcentric Ventures, LLC*, No. 2:04-CV-47FTM33, 2005 WL 1677256, at *4 (M.D. Fla. July 14, 2005) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982)).

In *Omega, S.A. v. Giftland,* Co., No. 03-CIV-5808, 2005 WL 1925791 (D.N.J. Aug. 11, 2005), the court emphasized that, with respect to trademark violations, "participation in activities merely related to the infringing acts is not enough.... [P]ersonal liability extends only to those persons who actively participate as a moving force in the decision to engage in the infringing acts or otherwise cause the infringement as a whole to occur." *Omega*, 2005 WL 1925791, at *3 (citing *Chanel, Inc. v. Italian Activewear of Fl., Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1981)).

Gray has standing as a § 1125(a)(1)(A) plaintiff, alleging X/Open's UNIX marks' false designation of origin to the PTO, to certain third parties, and to Gray occurred in and after 1999 for the purpose of enabling and concealing fraudulent acts targeting him. These

acts could not and would not have occurred without Novell's and Santa Cruz/SCO's active cooperation and participation. SCO's reliance upon *Hampshire* is misplaced, as that motion to dismiss was granted because the plaintiff sought a declaratory judgment of trademark non-infringement, declaring that it "feared" an infringement suit[17] by defendant when no suit had been threatened[18].

Cancellation of registration is proper "when (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing." *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed.Cir. 1984). *See also Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1026 (C.C.P.A. 1982). Gray has properly plead with sufficient facts that X/Open fraudulently "procured" the UNIX marks registrations by false assignment with the willful participation of Novell and Santa Cruz/SCO, and he "possesses standing to challenge the continued presence on the register of the subject registration", *id.* at 1026. "We regard the desire for a registration with its attendant statutory advantages as a legitimate commercial interest", *id.* at 1029. Because Gray applied for PTO registration of his iNUX mark, and X/Open is maliciously opposing its registration, he has demonstrated a real commercial interest and standing.

---

[17] Plaintiff Hampshire offered no evidence a suit was eminent thus no actual controversy existed. The First Circuit requires a plaintiff seeking a declaratory judgment in a trademark case to show that it "could reasonably have anticipated a claim against it" in order to establish the existence of subject matter jurisdiction. *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 79 (1st Cir. 1996). Gray's iNUX mark application is actually being opposed; see FN2 above. As for Hampshire's unfair competition § 1125(a)(l)(B) allegation, SCO (in its motion in FN12 at 9) mischaracterizes the *Hampshire* opinion stating "unfair competition claims were barred where the plaintiff had not yet begun to compete with the Defendant", whereas the opinion actually states standing does not exist because "defendants have not threatened" Hampshire.

[18] "Because the pot covers it alleges it intends to manufacture do not infringe and because the defendants have not threatened or otherwise inhibited Hampshire's commercial activity as to noninfringing products, Hampshire has not stated an injury cognizable under any of its unfair competition claims." *Hampshire*, 2002 WL 31114120 (D.N.H. 2002). Here, however, Defendants' threats and financially oppressive TTAB opposition action *X/Open*

To establish standing under Section 43(a), 15 U.S.C. § 1125(a)(1), a plaintiff must:

> demonstrate a "reasonable interest to be protected" against the advertiser's false or misleading claims, and a "reasonable" basis" for believing-that this interest is likely to be damaged by the false or misleading advertising. The "reasonable basis" prong embodies a requirement that the plaintiff show both likely injury and a causal connection to the false advertising.

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1111 (2d Cir.1997) (internal citations omitted))[19].

Here, Gray has alleged with sufficient facts at this proceeding stage that Defendants' acts against the PTO have enabled and supported their direct acts targeting Gray, including, among others, the *X/Open v Gray* TTAB opposition, and evidence of his constitutional and prudential standing.[20] Gray sufficiently pleads prudential standing, and the factors include: 1) Injury type (Complaint at ¶¶ 200, 205 and 211); 2) Directness of injury (Complaint at ¶¶ 8-10, 72-89 and 165-166); 3) Speculative-ness of damage claims[21] (Complaint at ¶¶ 8-10, 72-

---

*v Gray* are direct causes of Gray's injury. (Complaint at ¶¶ 10, 85-86, 165, 189, 194, 200, 205, 211, 226, 232, 238, 242.)

[19] This standard requires more than a "mere subjective belief of injury, but does not require plaintiff to prove that it has suffered actual monetary loss. *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189 (2d Cir.1980). It is well-settled that such competition need not be direct; (Indirect competitors may avail themselves of the protection of § 43(a); the competition need not be direct) *Id.* at 190. Gray has plead facts of commercial injury; proof of actual damages is only relevant, not requisite, to establish standing. "Although a Section 43 (a) plaintiff need not be a direct competitor, it is apparent that, at a minimum, standing to bring a section 43 claim requires the potential for a commercial **or** competitive injury." *Berni v. International Gourmet Restaurants of America, Inc.*, 838 F.2d 642, 648 (2d Cir.1988). (emphasis added). Trademark law "requires use" to maintain mark validity and Defendants' false advertising and false designation of origin in their communications and documents were necessary to perpetuate fraud against the PTO, third parties and Gray, and therefore a causal connection to Gray's injury.

[20] SCO cites *Hallmark Cards, Inc. v. Lehman*, 959 F.Supp. 539,544-45 (D.D.C. 1997) in FN12 at 9 and *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F.Supp. 1138 (S.D.Tex. 1982) at 11, two opinions relating to heightened standing pleading requirements of a PTO final decision and summary judgment stage respectively. Gray has alleged a causal connection between the fraudulent 1999 PTO Recordation of the purported Assignment and his injury (the PTO would not have allowed X/Open standing in several UNIX mark actions, including *X/Open v Gray*, to proceed without the fraudulent Recordation falsely establishing X/Open as the UNIX marks registrant), established constitutional standing and believes he meets requirements for prudential standing at this pleading stage.

[21] The opinions SCO cites do not suggest that, in order to have Lanham Act standing to assert claims of false advertising and false designation of origin, a plaintiff must demonstrate a high level of commercial activity.

89 and 165-166); 4) Proximity of Gray to injury (Complaint at ¶¶ 10, 85-89, and 166); and 5) Risk of duplicative damages[22] (Complaint at ¶¶ 75, 85-89 and 166).

## II. Florida Litigation Privilege Does Not Apply To Administrative Proceedings.

SCO's reliance on *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell P.A. v. United States Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994) is misplaced, as its argument that false and/or fraudulent statements in a prior TTAB proceeding are not admissible as evidence in a later judicial proceeding is incorrect. *Levin* relates only to litigation privilege in a "judicial proceeding". The TTAB opposition, a U.S. Government Executive Branch administrative action,[23] is not a "judicial proceeding" and is governed by rules that specifically authorize the use of false or fraudulent representations and fraudulent documents made or used in its proceedings to be used as evidence and a cause of action in a subsequent judicial civil or criminal proceeding.

The TTAB rules are clear that a party committing fraud in an official proceeding is subject to the criminal penalties of 18 U.S.C. § 1001, penalties that only the Courts may impose in a subsequent judicial proceeding. TBMP § 106.02 entitled "Signature of Submissions" in part states:

> "37 CFR § 2.119(e) Every paper filed in an inter partes proceeding, and every request for an extension of time to file an opposition, must be signed by the party filing it, or by the party's attorney or other authorized representative, ...." and "*37 CFR § 10.18(b) By presenting to the Office (whether by signing, filing, submitting, or later advocating) any paper, the party presenting such*

---

[22] Gray, as the target of Defendants' scheme in and after about 1999 stands in a better position to "vindicate the law as private attorneys general." *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 269-70 & n.20 (1992).
[23] TBMP § 102.01 entitled "Jurisdiction of Board" states in part "The <u>Trademark Trial and Appeal Board is an administrative tribunal</u> of the United States Patent and Trademark Office within the Office of General Counsel. <u>The Board is empowered to determine only the right to register. The Board is not authorized to determine the right to use, nor may it decide broader questions of infringement or unfair competition.</u>" (emphasis added)

*paper, whether a practitioner or non-practitioner, is certifying that-*

(1) All statements made therein of the party's own knowledge are true, all statements made therein on information and belief are believed to be true, and all statements made therein are made with the knowledge that <u>whoever</u>, in any matter within the jurisdiction of the Patent and Trademark Office, knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact, or <u>makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be subject to the penalties set forth under 18 U.S.C. 1001,</u> ….. (emphasis added)

SCO cites *Green Leaf Nursery v. E.I. Dupont De Nemours and Co.*, 341 F.3d 1292 (11th Cir. 2003); *cert. denied* 541 U.S. 1037 (2004) at 6 and 13 and *Florida Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 336 F.Supp.2d 1239, 1262 - 64 (S.D.Fla. 2004); *aff'd* 470 F.3d 1036 (11th Cir. 2006) at 6 and 15. These two opinions are judicial proceedings, not administrative proceedings, thus if Florida's litigation privilege applies there, it is not relevant here.

The Southern District of Florida Court recently confirmed the Florida litigation privilege does to apply to administrative proceedings, stating "Counts III, IV, V, VI, VII and VIII are all based on conduct that took place either during litigation … or during an official proceeding of the Florida Department of Agriculture and Consumer Services …. Thus, as explained below, these claims, <u>except to the extent that they arise out of the official proceeding brought by the Department of Agriculture and Consumer Services</u>, are barred by the absolute immunity Florida grants to conduct that occurred during a judicial proceeding.", *Florida Evergreen*, 336 F.Supp.2d 1239, 1268 (S.D.Fla. 2004). (emphasis added)

The TTAB rules anticipate the limited authority of its proceedings, and a party to a TTAB proceeding must look to the Court's authority in a civil action to decide issues arising

in the TTAB beyond its authority. Prior litigation absolute immunity referred to as "judicial immunity" contradicts TTAB TBMP rules and does not apply here, and Defendants' false and fraudulent representations and declarations, and use of fraudulent documents in TTAB administrative proceedings, among others, *X/Open v Gray*, are admissible in this Court.

### III.  Gray Alleges RICO Acts, Pattern, Reliance, Proximate Cause and Injury.

SCO mischaracterizes the RICO pleading requirements. X/Open proceeded to initiate six sham UNIX trademark actions (Complaint at ¶¶ 75-84) at the TTAB prior to opposing Grays' iNUX mark registration after the PTO recorded in 1999 the false 1998 UNIX mark Assignment between Novell and X/Open. (Complaint at ¶¶ 72-74). Gray and his legal advisors had no reason not to rely[24] upon Defendants' false representations of X/Open's lawful UNIX marks ownership prior to July 2005, as the PTO and defendants in the six prior TTAB proceedings[25] relied, and the PTO apparently continues to rely upon the fraudulent 1999 Recordation.

Not all enterprise members' acts establishing racketeering activity pattern are required to target Gray, as any member[26] that commits *one* act[27] of racketeering targeted at and injuring Gray, is liable for *all* damages sustained by him, and although Defendants'

---

[24] *Pelletier v. Zweifel*, 921 F.2d 1465, 1498-99 (11th Cir.1991). To prove a crime, the government must show the defendant intended to create a scheme "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 1498-99 (citing *U.S. v. Bruce*, 488 F.2d 1224, 1229 (5th Cir.1973)).
[25] The six TTAB actions initiated by X/Open were not adjudicated upon the merits and it intended its false UNIX mark ownership representations and PTO reliance in each action to validate the legitimacy of and enable their act targeting Gray, causing him and his counsel to rely upon their UNIX marks ownership claims therein.
[26] *United States v. Cauble*, 706 F.2d 1322, 1332-33 (5th Cir. 1983)(defendant conducts or participates in the conduct of an enterprise if his or her position in the enterprise facilitated his or her commission of the racketeering acts and the predicate acts had some effect on the enterprise), cert. denied, 465 U.S. 1005 (1984). The Eleventh Circuit adopted a less restrictive test than *Cauble*. *United States v. Carter*, 721 F.2d 1514, 1525-27 and n.16 (11th Cir.), cert. denied, 469 U.S. 819 (1984).

13

committed several acts targeting Gray, his factual allegations of other acts support the RICO "pattern of racketeering activity." The enterprise would not and could not have conducted its affairs (Complaint at ¶¶ 58-69 and 76-86) in and after about 1996 without the cooperation and participation of Santa Cruz/SCO[28] (as the UNIX marks lawful owner in and after December 1995); every alleged predicate act targeting Gray and others was committed or caused to be committed, directly or indirectly, by SCO[29] (Complaint at ¶¶ 90, 170-171 and 173-174.), and Gray relied upon said acts.[30] An 18 U.S.C. Section 1962(c) violation requires that a defendant participate in the conduct of an enterprise's affairs, and it provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, <u>directly or indirectly</u>, in the conduct of such enterprise's affairs through a <u>pattern of racketeering activity</u> or collection of unlawful debt. (emphasis added)

The circuit courts have made it clear that a defendant need only intentionally perform acts that are related to, and foster, the operation or management of the enterprise to be liable for a substantive RICO violation. Santa Cruz/SCO's false statements in communications and "press releases" targeting third-parties are alleged as representative of its overt acts in furtherance of the conspiracy in order to present a full picture of the scope of the conspiracy,

---

[27] RICO provides that "[a] person injured in his business or property by reason of <u>a</u> violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c) (emphasis added); *see Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275-86 L.Ed. 2d 346 (1985).

[28] SCO refers to its statements in its pleadings in cases unrelated to Gray as "not necessarily inconsistent" with other public statements, yet almost three years after Gray's request, it (and Novell and X/Open) has not fully responded to the simple request "What is the UNIX mark chain-of-title?", and Gray's attempts to compel SCO's responses prior to and after discovering the enterprise and scheme were delayed and/or resisted due to the *X/Open v Gray* two year suspension and SCO's false confidentiality claims. (Complaint at ¶¶ 101-103, 131, 140, 146-151 and 162.)

[29] SCO's motion at 6 and 17 cites *Nicor Int'l Corp. v. ElPaso Corp.*, 318 F.Supp. 2d 1160 (S.D.Fla. 2004), a summary judgment opinion not relevant here as *Nicor* plaintiffs produced only one incident of racketeering activity directed to a third party and no evidence of causal connection, whereas Gray has properly alleged SCO's acts targeted at and injuring him. (Complaint at ¶¶ 167-174.)

and need not target Gray. Many of the alleged overt acts[31] could be alleged as Defendants' predicate acts. Gray sufficiently alleges Defendants' acts of mail and wire fraud (Complaint at ¶¶ 167-172) and obstruction of justice (Complaint at ¶¶ 105, 111-145, 152-158 and 160-163) targeted at and injuring him, and SCO committed all acts of mail fraud[32], and obstruction of justice as it directly and/or indirectly committed all predicate acts. One who aids and abets[33] the commission of a federal crime is treated as if he committed the crime as a principal and can be charged under RICO if the crimes are listed under Section 1961(1)(B).

Whether Gray's alleged reliance upon the Novell, X/Open and SCO misrepresentations (see FN30 below) was reasonable (SCO's motion at 14 and 16) is a question of fact to be decided by the jury. *Federal Sav. and Loan Ins. Corp. v. Haralson*, 813 F.2d 370, 375-76 (11th Cir. 1987); *Venn v. St. Paul Fire and Marine Ins. Co.*, 173 B.R. 759,769 (N.D. Fla. 1994), *aff'd,* 99 F.3d 1058 (11th Cir. 1996). No one, however, has ever construed RICO's proximate cause requirement to demand proof of reliance to the exclusion

---

[30] Complaint at ¶¶ 85-88, 113, 172, 189, 194, 200, 205, 211-212, 217-218, 223-224, 232, 238 and 242.
[31] Gray alleges more than 2 predicate acts targeting him committed by each Defendant as direct causes of his injury. (Complaint at ¶¶ 167-174.) Novell's, X/Open's and SCO's acts at Complaint at ¶¶ 31-39, 41-46, 60-71, 93-94 and 155 are racketeering acts alleged herein in support of the required RICO "pattern of racketeering activity". Pattern establishment "requires the showing of a relationship between the predicates and of the threat of continuing activity." *H. J. Inc. v. Northwestern Bell*, 492 U.S. at 239, 109 S. Ct. 2893 (internal citation and quotation marks omitted). "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S. Ct. 2893 (internal quotation marks omitted).
[32] The Complaint at ¶¶ 170 list 32 acts that are each detailed further within the Complaint, for example Nos. 15 and 16 at ¶ 170 are also at Complaint at ¶¶ 58 and 112, and 114-115 respectively.
[33] *See United States v. Shifman*, 124 F.3d 31, 36 (1st Cir. 1997)("aiding and abetting one of the activities listed in Section 1961(1) as racketeering activities makes one punishable as a principal and amounts to engaging in that racketeering activity"), cert. denied, 118 S. Ct. 1053 (1998); *United States v. Pungitore*, 910 F.2d 1084, 1132-34 (3d Cir. 1990) (explaining principle of aiding and abetting and applying it to the facts of a RICO predicate offense), cert. denied, 500 U.S. 915 (1991); *United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1133-34 (E.D.N.Y. 1992); *United States v. Rastelli*, 870 F.2d 822, 831-33 (2d Cir.), cert. denied, 493 U.S. 982 (1989). RICO claims involve criminal behavior and 18 U.S.C. § 2 applies here as Plaintiff stands as a private attorney general. By including a private right of action in RICO, Congress intended to bring "the pressure of "private attorneys general" on a serious national problem for which

of all other evidence of direct damages.[34]

As an alternative to reliance, many courts have held that mail and wire fraud are also the proximate cause of injury when the plaintiff is the target of the fraud, even if it did not rely on the fraud itself, however, Gray did rely.[35] Defendants' criminal acts targeting Gray caused his injury and their fraudulent acts upon the PTO were necessary prerequisites to his injury,[36] as X/Open's standing in *X/Open v Gray* was and is based upon, *inter alia*, its fraudulent 1999 PTO Recordation of the false 1998 Assignment. This fraud upon the PTO and Defendants' false representations of X/Open's UNIX mark ownership using the mail and wires prior to and after the Recordation could not have occurred and would not now exist without Santa Cruz/SCO's willful cooperation and participation.[37] (Complaint ¶¶ 72-76, 111-

---

public prosecutorial resources [were] deemed inadequate." *Agency Holding Corp.* v. *Malley Duff & Assocs.*, 483 U.S. 143, 151 (1987).

[34] In *Sikes v. Teleline, Inc.*, 281 F.3d 1350 (11th Cir. 2002), the court merely overruled a district court's order that a presumption of reliance applied to each individual member of a class who purportedly relied on the defendants' alleged misrepresentations. *Id.* at 1361-65. The court held that it was the plaintiff class burden to prove reliance with regard to each individual class member who sought damages. *Id.*

[35] See *Procter & Gamble Co., v Amway Corp.*, 242 F.3d at 564-65 (5th Cir. 2001). For example, "a plaintiff company may not need to show reliance when a competitor lured the plaintiffs customers away by a fraud directed at the plaintiff's customers." *Id.*; see also *Cook Drilling Corp. v. Halco America, Inc.*, 2002 WL 84532, *7 (E.D.Pa. Jan. 22, 2002) (same); *PortionPac Chemical Corp. v. Sanitech Systems, Inc.*, 210 F.Supp.2d 1302,1309 (M.D. Fla. 2002) (by failing to allege that it was the target of the scheme to defraud *or* that it relied on any misrepresentations, plaintiff failed to plead proximate cause); *Falise v. American Tobacco Co.*, 94 F.Supp.2d 316, 334 (E.D.N.Y. 2000) (a plaintiff may allege that his injuries were indirectly but proximately caused by a fraudulent scheme directed at third parties, i.e., the third parties' reliance on the underlying misrepresentations) (citing *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1311 (2d Cir. 1990)); *VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F. Supp.2d 1253,1260 (D. Kan. 1998) (to plead proximate cause, plaintiff "must plead only that it was an intended target of the alleged scheme") (citing *In re EDC, Inc.*, 930 F.2d 1275,1279 (7th Cir. 1991)).

[36] A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) (internal quotation omitted). Here, the fraudulent 1999 Assignment Recordation was a necessary act to X/Open filing *X/Open v Gray*.

[37] Each participant in a scheme to defraud is responsible for his partners use of the mails in furtherance of that scheme. *United States v. Hildebrand*, 152 F.3d 756,761 (8th Cir. 1998) (citing *Pinkerton v. United States*, 328 U.S. 640,647 (1946)). The mail and wire fraud statutes impose liability on any person who "causes" the mails or wires to be used in furtherance of a scheme to defraud. 18 U.S.C. §§ 1341, 1343. The Supreme Court long ago dispatched with any notion that only the person who actually mailed or wired the communication can be held liable under the mail or wire fraud statutes "To constitute a violation of [the mail and wire fraud statutes]..., it is not necessary to show that [a defendant] actually mailed or [wired]... anything themselves; it is sufficient if they

145, 152-158, 161-163 and 171; and at ¶¶ 199-200 and 204-205, as Lanham Act violations of 18 U.S.C. § 1001).

Gray's injury is undeniably a result of the objectively baseless sham TTAB opposition *X/Open v Gray*. SCO[38] misrepresents the facts alleged in Gray's Complaint, arguing that Gray could not have relied on Defendants' representations or statements because of "mistrust" and accusations of fraud, and thus no standing is conferred to their representations or statements. SCO is incorrect, as Gray was not aware of Defendant's fraudulent acts until in and after July 2005 when he discovered evidence revealing their scheme and corrupt enterprise.[39] The PTO even now, apparently due to its limited resources, is relying upon Defendants' fraudulent 1999 Recordation, renewing the UNIX marks registrations in July 2006 without requiring establishment of ownership[40]. (Complaint at ¶¶ 146-152.)

Gray has alleged RICO injury, and under 18 U.S.C. § 1964(c) a plaintiff may sue and shall recover treble damages and reasonable attorneys' fees if it was "injured in [its] business or property by reason of a violation of section 1962 of this chapter." As the Supreme Court has interpreted this statute, the plaintiff's injury must have been proximately caused by a

---

caused it to be done." *Pereira v. United States*, 347 U.S. 1, 8-9 (1954); *United States v. Woodward*, 149 F.3d 46, 57 (1st Cir. 1998) ("[identical standards apply in determining the 'scheme to defraud' element under the mail and wire fraud statutes"), *cert. denied*, 525 U.S. 1138 (1999).

[38] SCO cites *Allocco v. City of Coral Gables*, 221 F.Supp. 2d 1317, 1364 (S.D.Fla. 2002), *aff'd* 88 Fed. Appx. 380 (11th Cir. 2003) at 17, an opinion relating to summary judgment stage heightened standing pleading requirements and thus irrelevant to the pleading requirements at this stage. Therein most plaintiffs failed to identify even one document directed to them using the mails or wires, or specifically state defendants violated mail or wire fraud laws.

[39] See *"Green Leaf"*, 341 F.3d 1292 (11th Cir. 2003), noting that the plaintiff was on notice of Dupont's fraud prior to its reliance, whereas Gray was unaware of Defendants' fraud prior to July 2005. (Complaint at ¶ 146.)

[40] United States Trademark Law Rules Of Practice & Federal Statutes, 37 C.F.R. § 3.73(b)(1), states in part "In order to request or take action in a patent or trademark matter, the assignee must establish its ownership of the patent or trademark property of paragraph (a) of this section to the satisfaction of the Director."; Defendants' predicate acts after July 2005 are evidence of continuing racketeering activity, not necessarily of reliance. (Complaint at ¶ 170.)

RICO violation.[41] All Defendants' acts have injured Gray and his pleadings properly allege at this stage his business and litigation cost injury. (Complaint at ¶¶ 10, 85-86, 165, 189, 194, 200, 205, 211, 226, 232, 238, 242.) The Third Circuit has held attorneys' fees that a plaintiff is forced to expend constitute injury to its business or property within the meaning of RICO. *See, e.g., Malley-Duff & Assocs., Inc. v. Crown Life Ins. Co.,* 792 F.2d 341, 355 (3d Cir. 1986) ("We hold that Malley-Duff's allegations of 'great expenses, delays and inconvenience... in its prosecution of the First Lawsuit' were a sufficient pleading of injury to business or property to give Malley-Duff RICO standing."). In addition, delay, added expenses, and inconvenience to a business's functions will constitute RICO injury.[42]

By reason of all Defendants' racketeering acts targeting Gray, they have injured him, his business and property. Pursuant to RICO and fraud statutes SCO is liable for his injury.

## IV. SCO Misrepresents The Authority of The TTAB Administrative Board.

SCO misinterprets the TTAB's authority in its request that this Court enter a stay of this action until the TTAB resolves *X/Open v Gray*, as it is an administrative board with limited resources[43] and authority[44]. Gray cannot raise, and the TTAB does not have authority to rule

---

[41] *See Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 269-72 & n.20 (1992) ("our use of the term 'direct' should merely be understood as a reference to the proximate-cause enquiry").

[42] *See, e.g.. Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.,* 174 F.R.D. 572, 582 (D. N.J. 1997) ("Further, business property is injured, within the meaning of § 1964(c), if the § 1962 misconduct of defendant causes delay, added expenses and inconvenience to the business's functions.") (citing *Malley-Duff*).

[43] See *In re Loew's Theatres, Inc.*, 769 F.2d 764, 768, 226 USPQ 865, 868 (Fed. Cir. 1985) ("...practicalities of the limited resources available to the PTO are routinely taken into account in reviewing its administrative action."); and Complaint at ¶¶ 136 and 149-152.

[44] See FN23 above; and *See Goya Foods Inc. v. Tropicana Products Inc.,* 846 F.2d 848, 6 USPQ2d 1950, 1954 (2d Cir. 1988) (doctrine of primary jurisdiction might be applicable if a district court action involved only the issue of registrability, but would not be applicable where court action concerns infringement where the interest in prompt adjudication far outweighs the value of having the views of the PTO); *American Bakeries Co. v. Pan-O-Gold Baking Co.*, 650 F. Supp. 563, 2 USPQ2d 1208 (D.Minn. 1986) (primary jurisdiction should not be invoked where, *inter alia*, a stay of the district court action is more likely to prolong the dispute than lead to its economical disposition and where the district court action includes claims which cannot be raised before the Board).

upon, any of the 11 counts in this instant action, except possibly Counts 3 and 4. It is only authorized to determine the right to register. Although there are common issues in this action and *X/Open v Gray*, the decisions of this Court may be binding upon the TTAB, whereas a TTAB decision is not binding upon this Court. TBMP § 510.02(a) entitled "Suspension", states in part:

> Whenever it comes to the attention of the Board that a party or parties to a case pending before it are involved in a civil action which may have a bearing on the Board case, proceedings before the Board may be suspended until final determination of the civil action.
>
> Most commonly, a request to suspend pending the outcome of another proceeding seeks suspension because of a civil action pending between the parties in a Federal district court. <u>To the extent that a civil action in a Federal district court involves issues in common with those in a proceeding before the Board, the decision of the Federal district court is often binding upon the Board, while the decision of the Board is not binding upon the court</u>. (emphasis added)

Thus this Court has primary jurisdictional authority over Gray's claims and in the interest of justice and judicial economy the TTAB proceeding styled *X/Open Company, Limited v Wayne R. Gray* should remain stayed pending this Court's adjudication of this action.

### Conclusion

Even if the Court determines that improvements should be made to Gray's Complaint before SCO is required to answer, dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Beck,* 144 F.3d 732,736 (11th Cir. 1998). The Eleventh Circuit's "strict adherence to this rule has led [it] to hold that a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted."

*Friedlander,* 755 F.2d at 813; *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597-99 (5th Cir. 1981). Where a pleading meets that standard, the proper avenue for eliciting evidentiary detail is discovery. *See. e.g.. Bazal v. Belford Trucking Co.. Inc.,* 442 F. Supp. 1089, 1101-02 (S.D. Fla. 1977).

Wherefore, for the reasons set forth above, Plaintiff Wayne R. Gray respectfully requests this Court deny The SCO Group, Inc.'s motion to dismiss in its entirety.

Respectfully submitted,

David L. Partlow, FBN 239682
David L. Partlow, P.A.
P.O. Box 82963
Tampa, FL 33682-2963
(813) 287-8337; FAX (813) 287-8234
dlppa@mindspring.com
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 5, 2007, I electronically filed the above document with the Clerk using the CM/ECF system, which will send electronic notice to: Karen C. Dyer and George R. Coe of Boies, Schiller et al., 225 S. Orange Ave., Suite 905, Orlando, FL 32801; William Cooper Guerrant, Jr. of Hill, Ward & Henderson, P.A., P.O. Box 2231, Tampa, FL 33601-2231; Evan A. Raynes and Mark Sommers of Finnegan, Henderson et al., 901 New York Avenue, N.W., Washington, D.C. 20001-4413; Frederick H.L. McClure and E. Colin Thompson of DLA Piper US, 101 E. Kennedy Blvd., Suite 2000, Tampa, FL 33602-5148; and John P. Mullen and Heather M. Sneddon of Anderson & Karenberg, 700 Chase Tower, 50 West Broadway, Salt Lake City, UT 84101-2035.

David L. Partlow