IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WAYNE R. GRAY,<br><br>    Plaintiff,<br><br>vs.<br><br>NOVELL, INC., and<br>THE SCO GROUP, INC., and<br>X/OPEN COMPANY LIMITED,<br><br>    Defendants. | CASE NO.:  8:06-cv-01950-T-30TGW |

**PLAINTIFF'S MOTION AND COMBINED MEMORANDUM IN SUPPORT OF
DECLASSIFYING THE 1996 NOVELL-X/OPEN-SANTA CRUZ
"CONFIRMATION AGREEMENT" AND ITS TRANSMITTAL MEMO**

Plaintiff Wayne R. Gray (herein "Gray") by and through counsel respectfully requests that the Court order the unsealing and declassification of a document known or referred to as the "Confirmation Agreement"[1] dated and purportedly executed in or prior to September 1996, wherein Defendant Novell, Inc. (herein "Novell"), Santa Cruz Operation, Inc. (herein "Santa Cruz"—a predecessor in interest of Defendant The SCO Group, Inc.) and Defendant X/Open Company Limited (herein "X/Open") are parties, from "Highly Confidential" (meaning Attorney's Eyes Only) to "not confidential."

Counsel for Gray believes that the Confirmation Agreement is a benign and stale document purportedly over ten years old and is not deserving of any confidentiality

Gray v. Novell, Inc. et al  Doc. 38

---

[1] Novell-Santa Cruz-X/Open 1996 Confirmation Agreement with cover letter, submitted by Gray to Defendants in Initial Disclosure as separate confidential documents labeled GRAY 006469 - GRAY 006472.  A concurrent motion to file it under seal is being submitted by Plaintiff.

designation, yet Defendants continue their concealment of this document through improper classification without justification for three years even as they represent it is dispositive of and contradicts Gray's UNIX mark chain of title claims in the trademark opposition styled *X/Open Company Limited v. Wayne R. Gray,* (herein *"X/Open v. Gray"*) before the Trademark Trial and Appeal Board (herein the "TTAB") of the United States Patent and Trademark Office (herein the "PTO"), a precursor to this proceeding.

Gray is an active participant in this proceeding, performing most of the fact research and preparing drafts of almost all of his documents and pleadings. He believes the Confirmation Agreement to be backdated and to contain representations by Defendants suggesting (1) it is tacit agreement of The SCO Group, Inc.'s (herein "SCO's") predecessor in interest (Santa Cruz) in joining the Novell-X/Open criminal enterprise and scheme and (2) the possible existence of a UNIX trademark assignment between Novell and X/Open predating Novell's December 6, 1995 transfer of the UNIX marks to Santa Cruz. If this agreement remains confidential, it will prejudice and irreversibly harm discovery and fact investigation and Gray's ability to effectively participate in this proceeding. Justice demands that the Court enter an order removing all confidentiality designation, permitting Gray to view the Confirmation Agreement and to openly use it in filings.

## BACKGROUND

X/Open and Gray are parties to the trademark opposition *X/Open v. Gray* filed on April 11, 2001 and still pending before the TTAB as Opposition No. 91122524. Gray moved to amend his counterclaim therein to include fraud over 3 years ago because the available documentation clearly shows that Novell transferred the valuable UNIX trademark

Registrations No. 1,392,203 and No. 1,390,593 (herein the "UNIX marks") to Santa Cruz in a UNIX Business Asset Purchase Agreement dated September 19, 1995 (herein the "APA"), since the APA at Schedule 1.1(a)[2] entitled "Assets" identifies the assets transferring to Santa Cruz pursuant to the APA, and Schedule 1.1(a) in § V. entitled "Intellectual Property" expressly identifies the trademarks UNIX and UNIXWARE. The APA closed on December 6, 1995, transferring the UNIX business, assets and trademarks to Santa Cruz.[3]

The PTO UNIX marks official assignment records are incorrect as Novell was not the lawful owner of the UNIX marks or business attached to said marks when it purportedly assigned the marks and goodwill to X/Open in a false 1998 Assignment Deed[4] recorded at the PTO on June 22, 1999. It is this fraudulent assignment recordation upon which the PTO relies in permitting X/Open's UNIX mark actions before it, including *X/Open v. Gray*.

Gray, in *X/Open v. Gray*, propounded discovery requests to X/Open on about May 4, 2004, and on about May 13, 2004 served subpoenas duces tecum on third parties SCO and Novell. SCO offered Gray the 1996 Confirmation Agreement, a document Defendants[5] essentially represent as dispositive of Gray's claim that the UNIX marks transferred from

---

[2] The APA at Schedule 1.1(a) entitled "Assets", § V. entitled "Intellectual Property" at 3, available in *SCO v. Novell* as Docket No. 260-4 at SCO1158952 and as Docket No. 281-2b at 059, also herein as GRAY 002707 - GRAY 002710, attached hereto as Exhibit 1.
[3] The APA "Bill of Sale" dated December 6, 1995 stating the "Assets" transfer to Santa Cruz, available in *SCO v. Novell* as Docket No. 260-6 at SCO1185881, also herein as GRAY 003036, hereto as Exhibit 2.
[4] UNIX mark Assignment Deed dated November 13, 1998, recorded at the PTO about June 22, 1999 at Reel: 001920 Frames: 0796-0797, also herein as GRAY 000003 - GRAY 000004, attached hereto as Exhibit 3; Novell falsely represents therein it is the UNIX marks Assignor, it is the UNIX marks lawfully owner and it is transferring the business attached to the marks to X/Open even though the UNIX marks and business of the original registrant, American Telephone and Telegraph Company, had previously transferred to Santa Cruz pursuant to the 1995 APA.
[5] Novell indicated that the Confirmation Agreement would settle Gray's UNIX marks ownership claims in its May 21, 2004 response to Grays' Subpoena duces tucem document request at 2, also herein as GRAY 006389 - GRAY 006402, attached hereto as Exhibit 4; X/Open represented to Gray and the TTAB that the Confirmation Agreement is dispositive of Gray's UNIX marks ownership claims in its December 30, 2004 combined

Novell to Santa Cruz pursuant to the APA in December 1995. Gray agreed to Defendants' designation of this one document only as "Confidential-Attorneys' Eyes Only" and the Confirmation Agreement was faxed by SCO to Gray's counsel on May 19, 2004.[6] The Confirmation Agreement, purportedly executed[7] in about September 1996, by its title and by the claims made by Defendants "in the open" would appear to refer back to some earlier trademark assignment promise made by Novell to X/Open.

X/Open, in an improper protective order motion dated and filed before the TTAB May 20, 2004 in *X/Open v. Gray*, represented to the PTO and Gray that the UNIX marks transferred from Novell to it in <u>1994</u>, stating the following:[8]

> No. 7. While the <u>May 10, 1994 agreement transferring the UNIX mark from Novell to X/Open is within the scope of discovery</u>, many of the subparts of this interrogatory are not, e.g., those concerning the relationship between Novell and X/Open. (emphasis added).

Gray discovered that Novell confirmed its UNIX marks transfer to Santa Cruz pursuant to the 1995 APA in the civil suit styled *The SCO Group, Inc. v. Novell, Inc.*, Case

---

opposition to Gray's motions to compel discovery at 4, as *X/Open v. Gray* Docket No. 57, also herein as GRAY 000458 - GRAY 000502, attached hereto as Exhibit 5.
[6] The parties have not agreed to a confidentiality order here or in the TTAB opposition proceeding, and no confidentiality order has been entered in *X/Open v Gray*; Gray's position in his two motions to compel discovery pending at the TTAB since February 2005 is that X/Open has waived all confidentiality due to prior acts and thus Gray cannot, as he has informed Novell and X/Open in that proceeding, enter into a confidentiality order without undermining his position therein. It is noteworthy that even had Gray entered into their suggested confidentiality order, it would not have entitled him to view the Confirmation Agreement, a document Defendants continue to designate as "Highly Confidential" (meaning for attorney's eyes only).
[7] Counsel for Gray more recently discovered that the signer of the Confirmation Agreement on behalf of Santa Cruz was not a Santa Cruz executive corporate officer subject to the provisions of Section 16(b) of the Securities Exchange Act of 1934 until after 1996, and therefore probably could not have lawfully authorized abandonment of Santa Cruz's lawful ownership of the valuable UNIX marks at that time, suggesting that if Santa Cruz, a public company, did in fact attempt to abandon its UNIX marks ownership, the Confirmation Agreement's true execution date was after 1996 and thus the document is likely backdated.
[8] X/Open protective order motion brief dated May 20, 2004 at 9, as Docket No. 47 in *X/Open v. Gray*; The TTAB mostly denied X/Open's protective order motion on July 22, 2004. X/Open has resisted allowing Gray to view the purported May 10, 1994 "relicensing" agreement allegedly transferring the UNIX mark from Novell to it.

No. 2:04cv00139, U.S. District of Utah filed January 20, 2004, (herein "*SCO v. Novell*") in a May 11, 2004 Motion Hearing[9] wherein counsel for Novell stated the following:

> We're still in Schedule 1.1(A). And if you go down to Roman V, there's a heading there for intellectual properties. So we're still in the included assets. What intellectual property is being conveyed to SCO in this agreement? And the answer is a couple trademarks. No copyrights are shown. No patents are shown. Just a couple trademarks. (emphasis added)

Considering Novell's conflicting position relating to the UNIX marks assignment, X/Open's representation of a UNIX marks assignment in May 1994 and that the Confirmation Agreement's actual execution date is questionable, Gray's counsel requested Defendants merely allow Gray to view the document. SCO consented to Gray viewing the Confirmation Agreement on November 3, 2004.[10] X/Open represented that if Novell and SCO agreed to authorize Gray to view the document, it would also agree, stating:[11]

> X/Open does not have the right to authorize your client to see this document for the simple reason that it contains information confidential to others. (emphasis added).

One can only interpret this statement as X/Open's approval, conditioned upon the consent of Novell and SCO.

Novell gave its permission on February 15, 2005[12] for Gray to view the Confirmation Agreement. Gray's counsel informed X/Open on February 16, 2005 that SCO and Novell had consented to Gray viewing the Confirmation Agreement, and that he intended to do so

---

[9] Motion Hearing transcript dated June 24, 2004 at 29 and 30, also herein as GRAY 002987 - GRAY 003032, attached hereto in relevant part as Exhibit 6; counsel for Novell herein was its counsel in *SCO v. Novell* and was present at that hearing.
[10] SCO's letter to Gray's counsel dated November 3, 2004, also herein as GRAY 004673, attached hereto as Exhibit 7.
[11] X/Open's letter to Gray's counsel dated December 10, 2004 at 3, also herein as GRAY 000491 - GRAY 000493, attached hereto as Exhibit 8.

5

shortly. X/Open abruptly rescinded its conditional approval for Gray to view the Confirmation Agreement on February 18, 2005[13] and scheduled an emergency TTAB telephonic conference for about February 22, 2005 to argue he should not be allowed to view the Confirmation Agreement. Novell rescinded its permission, and then again gave its permission on February 23, 2005.[14]

At the TTAB telephonic conference closing, X/Open and Gray were instructed to file sealed five-page briefs arguing their positions relating to Gray viewing the Confirmation Agreement, and X/Open claimed that it would (and it is believed did) attach a sealed copy of the 1996 Confirmation Agreement to its brief filed on about February 24, 2005.

The TTAB suspended *X/Open v. Gray* on February 24, 2005 to consider Gray's two motions to compel discovery and the Confirmation Agreement issue.

Novell and X/Open, in their answer here to Gray's Complaint ¶ 48 at 14-15, admit Novell was the UNIX and UNIXWARE trademarks owner and registrant in September 1995, and thus Novell held the UNIX marks at that time. The only public position by Defendants concerning Novell assigning the UNIX marks that Gray has discovered is X/Open's[15] web pages and press releases falsely representing Novell transferred the marks to it in 1994.

By its title, the "Confirmation" Agreement must confirm some mark assignment prior to the 1995 APA. However, SCO confirms the APA transferred the UNIX marks from

---

[12] See Gray's letter to Novell dated February 17, 2005 at 2, also herein as GRAY 005789 - GRAY 005790, attached hereto as Exhibit 9.
[13] X/Open's letter to Gray dated February 18, 2005 responding to Gray's letter dated February 16, 2005, both included, also herein as GRAY 000503 - GRAY 000504, attached hereto as Exhibit 10.
[14] Gray's letter and Novell's response thereto, both included and dated February 23, 2005, also herein as GRAY 002619 - GRAY 002620, attached hereto as Exhibit 11; Novell changed its position several times, believed to have been at X/Open's request, as to permitting Gray to view the Confirmation Agreement.
[15] See Complaint, ¶ 155 at 49.

Novell to Santa Cruz in a declaration in its PTO correspondence entitled "Response to Office Action"[16] dated August 3, 2005 filed in its "Unix System Laboratories" trademark application Serial No. 78/438,912 filed June 21, 2004 at the PTO in the statement:

> In 1995, The Santa Cruz Operation, Inc. purchased all of the UNIX assets from Novell. As part of the transaction, Novell assigned the UNIX and UNIXWARE trademarks to The Santa Cruz Operation.

Novell repeatedly has confirmed it transferred the UNIX trademarks to Santa Cruz pursuant to the APA in the civil suit *SCO v. Novell* in its recent memorandum[17] dated April 20, 2007 in support of its summary judgment motion, stating:

> 2. The APA defined the "Assets" to be transferred by reference to Schedule 1.1(a), which listed assets included in the transfer; and Schedule 1.1(b), which listed assets excluded from the transfer. In this regard, Section 1.1(a) of the APA stated:
>
>> *Seller will sell*, convey, transfer, assign, and deliver to Buyer and Buyer will purchase and acquire from Seller on the Closing Date (as defined in Section 1.7), all of Seller's right, title and interest in and to *the assets* and properties of Seller relating to the Business (collectively the "Assets") *identified on Schedule 1.1(a) hereto. Notwithstanding the foregoing, the Assets to be so purchased shall not include those assets (the "Excluded Assets") set forth on Schedule 1.1(b).*
>
> (*Id.*, Section 1.1(a) (emphasis added).)
>
> 3. The first paragraph of the Schedule 1.1(a) list of included assets referred to "[a]ll rights and ownership of UNIX and UnixWare,

---

[16] SCO document entitled "Response to Office Action" dated August 3, 2005 at 4, also herein as GRAY 004669 - GRAY 004672, attached hereto as Exhibit 12.
[17] "Memorandum In Support Of Novell's Motion For Summary Judgment on SCO'S First Claim For Slander of Title and Third Claim For Specific Performance" dated April 20, 2007 at 4-5, *SCO v. Novell*, as Docket No. 276, attached hereto as Exhibit 13; note that counsel for Novell there is its counsel here.

7

including but not limited to all versions of UNIX and UnixWare...."

(Brakebill Decl., Ex. 3, Schedule 1.1(a), Section I.) This general reference was followed by more detailed, itemized lists of specific categories of assets. The "Intellectual Property" category stated:

> V. Intellectual Property— Trademarks UNIX and UnixWare as and to the extent held by Seller (excluding any compensation Seller receives with respect of the license granted to X/Open regarding the UNIX trademark).

(*Id.*, Section V.) Thus, <u>the only "Intellectual Property" identified in the list of assets to be transferred were the UNIX and UnixWare trademarks.</u> Neither the "Intellectual Property" category, nor any other part of Schedule 1.1(a) identified copyrights in UNIX and UnixWare (or in any other product) as an asset to be transferred. (*Id.*)

    4.   Similarly, the Schedule 1.1(b) list of "Excluded Assets" expressly excluded the following "Intellectual Property" from the sale:

> V. Intellectual Property
>     A. *All copyrights* and trademarks, except for the trademarks UNIX and UnixWare.
>
>     B. All Patents

(Brakebill Decl., Ex. 4, Schedule 1.1(b), Section V (emphasis added).) Thus, <u>the intellectual property listed as included assets under Schedule 1.1(a) was consistent with the intellectual property excluded by Schedule 1.1(b): only the UNIX and UnixWare trademarks were included, and all patents, copyrights, and trademarks were excluded except for the UNIX and UnixWare trademarks.</u> (emphasis added).

8

In previous discussions between Gray and Defendants (primarily X/Open) regarding merely allowing him to view the document (less than is now being requested), X/Open finally agreed, provided Gray entered into a protective agreement and order lasting "*in perpetuity*."[18] The proposed protective order's highly restrictive terms regarding use of the Confirmation Agreement include, among others, no use allowed in any other forum or any other pending and future litigation,[19] and entering into a secrecy agreement. After careful consideration and additional legal research, and several emails between the parties, Counsel for Gray informed the Defendants on May 11, 2007[20] that entering into such a highly restrictive protective order merely to allow Gray to view a believed benign 10-year-old agreement that may relate to fraud is unacceptable, and Gray will not agree to a confidential, let alone "Highly Confidential" designation of a document this old without a particularized showing as to what is confidential and what competitive harm to whom is at issue.

## ARGUMENT

Defendants know or should know that if the Confirmation Agreement represents that Novell assigned the UNIX marks to X/Open prior to the 1995 APA, that representation is false, and Counsel for X/Open in particular (the same as counsel for X/Open here) has had a duty since at least May 2004 to verify the truthfulness of any such representation therein,[21] especially as X/Open represents to the TTAB and Gray in *X/Open v. Gray* that the UNIX

---

[18] X/Open's response email to Gray dated April 10, 2007, attached hereto as Exhibit 14.
[19] Currently for example, Gray is a party in two TTAB opposition proceedings on the marks iNUX (involving UNIX) and UNIXWARE, and he very likely would desire at some point to use and openly file the Confirmation Agreement there, if it were not a confidential document.
[20] Gray's email to Defendants dated May 11, 2007, attached hereto as Exhibit 15; Gray believes that he cannot agree to improper classification of, and thus continuing concealment of the 1996 Confirmation Agreement, as this could result in his unknowing facilitation of Defendants' fraudulent scheme.

marks transferred to X/Open in 1994 and the Confirmation Agreement is dispositive of Gray's allegations.[22] Said agreement is improperly classified as "Confidential-Attorneys' Eyes Only" for the purpose of concealing its false representations and to obstruct discovery, first in the TTAB action and now here.

From its title and especially the statements by Novell and X/Open, it is obvious that the Confirmation Agreement is material and relevant to the present trademark claims, and from the efforts by Novell and X/Open especially to suppress it, the Confirmation Agreement may bear on the fraud claims as well. Concealment of said agreement unjustly obstructs discovery of the facts relating to this case.[23] The undersigned counsel for Gray submits that upon examination, it will be seen that the Confirmation Agreement is a necessary document in this case, and that there is absolutely no legitimate reason for it to be confidential in any way. Plaintiff needs the present classification lifted earlier rather than later in this action, in order to enable him to identify proposed deponents and conform to timeliness requirements of likely motions relating thereto.[24]

---

[21] Counsel for X/Open knows or should know that false representations to the TTAB and filing false documents before the TTAB, or willful facilitation of said actions, are fraudulent acts upon the PTO.

[22] See FN8 above; the only Novell-X/Open UNIX marks assignment of record is dated November 1998, not before 1995; also see FN5 above and Exhibit 5.

[23] Novell owned the UNIX marks and business attached thereto in September 1995 (See Novell's Answer to Gray's Complaint, ¶ 48 at 8, as Docket No. 25 herein), only a valid UNIX mark assignment between Novell and X/Open dated prior to the APA may have any legal effect upon the APA's lawful UNIX marks transfer to Santa Cruz, and Defendants by signature represent such a document exist only in the Confirmation Agreement.

[24] Gray filed a "Letter of Inquiry" dated April 14, 2005 at the TTAB, as Docket No. 69 in *X/Open v. Gray*, attached hereto as Exhibit 16; X/Open opposed Gray's inquiry letter, acknowledging at least two *ex parte* communications with the TTAB in its "Motion and Brief to Strike" dated May 4, 2006 at 2-3, as Docket No. 70 therein, attached hereto as Exhibit 17. Unless Gray has knowledge of the Confirmation Agreement representations he cannot determine if inquiry into to the substance of these *ex parte* communications by Counsel for X/Open, and possible others, is relevant to his Complaint allegations here. Thus Defendants' concealment of the Confirmation Agreement from Gray continues their unjust obstruction of his discovery here; Gray opposed X/Open's motion as baseless and improper in his "Opposition to Opposer's Motion to Strike" dated May 24, 2006, as Docket No. 71 therein, attached hereto as Exhibit 18. As with all actions in *X/Open v. Gray* since February 2005, the TTAB has not ruled on this motion.

Fed. R. Civ. P. 26(c)(7) permits the Court to order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." A trade secret constitutes "information, including a formula, pattern, compilation, program, device, method technique or process" that takes independent economic value from not being generally known to persons who can obtain economic value from its use. If the Confirmation Agreement is confidential, the Defendants must prove that.

**A. The Burden Of Confidentiality Is On The Defendants.**

The representations in the 1996 Confirmation Agreement are relevant to Gray's claims, are not privileged, and allowing Gray to freely use it in discovery, investigation, and filing without restriction presents no undue burden to Defendants. Gray has a presumptive entitlement freely to utilize all discoverable information (including the document at issue here) unless Defendants can make a highly particularized showing under the "good cause" standard of Rule 26(c) to warrant preserving the secrecy of sealed discovery material.

To establish that the document at issue should remain confidential under Rule26(c)(7), Defendants must satisfy two requirements. First, they must show that the designated document contains "a trade secret or other confidential research, development or commercial information." Second, even if they satisfy that first hurdle, they still must show that "good cause" of substantial, identifiable harm to its competitive position exists; "As with most evidentiary and discovery privileges recognized by law, there is no absolute privilege for trade secrets and similar confidential information." *Federal Open Market Comm. v. Merrill*, 443 U.S. 340, 362 (1979) (internal quotation marks omitted). "To demonstrate good

cause under this provision, the party seeking the protective order must show that the information sought is a trade secret or other confidential information, and that the harm caused by its disclosure outweighs the need of the party seeking the disclosure." *Chembio Diagnostic Systems, Inc. v. Saliva Diagnostic Systems, Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006). "For good cause to exist the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 2002 WL 972125 at *3 (9th Cir. May 13, 2002). It is the belief of counsel for Gray that Defendants cannot satisfy either prong of its burden of proof.

The factual showing must address separately each portion of the document that the Defendants contend warrants protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. Courts, "should not simply take representations of interested counsel on faith." *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 663 (8th Cir. 1983). Courts must require "more than a conclusory allegation" that trade secrets or confidential information are involved, *see In the Matter of the Search of Up North Plastics*, 940 F. Supp. 229, 233 (D. Minn. 1996); there must be "particular and specific demonstration[s] of fact." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). *See In re Iowa Freedom of Info. Council*, 724 F.2d at 663-64; *Hammock v. Hoffmann-LaRoche*, 142 N.J. 356, 381-82 (1995) (allegations of harm must be substantiated by "specific examples or articulated reasoning").

Before designating any specific information "Confidential" or "Confidential - Attorneys' Eyes Only," the designating party's counsel must make a good faith determination that the information warrants such protection under Rule 26(c) of the Federal Rules of Civil

Procedure. A heightened level of protection is appropriate only for the most highly sensitive documents; it is warranted only if "the potential injury is substantial and cannot be prevented through the use of any device less restrictive of a party's access to his lawyer." *Doe v. Dist. of Columbia,* 697 F.2d 1115, 1120 (D.C. Cir. 1983). Thus, the court expects the parties to use this designation sparingly. See, e.g., *THK America v. NSK Co., Ltd.*, 157 F.R.D. 637 (N.D. Ill. 1993) (revoking party's right to use "attorneys' eyes only" designation as sanction for bad faith overuse of that designation).

**B. The Burden of Showing Harm Is On The Defendants.**

The 1996 Confirmation Agreement is not entitled to confidentiality protection unless Defendants meet their burden of showing harm. Defendants have not and can not now meet the burden of showing harm to any specific business relationship, or any <u>current</u> business or marketing strategy. Confidential commercial information is material that: (1) contains sensitive business information, (2) is normally kept confidential, and (3) is of a nature such that public disclosure would cause competitive harm. *See Federal Open Market Committee v. Merrill,* 443 U.S. 361-63 (1979) *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157, 167 (3rd Cir. 1993).

The only form of competitive harm that can be protected is harm to business relationships with specific third parties identified in the documents at issue, or harm that would result from instructing competitors on a party's <u>current</u> business and marketing strategies. Id. Embarrassment or harm to a party's reputation is not a sufficient justification for protecting material from disclosure. *Welsh v. San Francisco,* 887 F. Supp. 193, 1297 (N.D. Cal. 1995) *United States v. California Medical Review, Inc.* 133 F.R.D. 143, 148 (N.D.

Cal. 1990). Likewise, a party cannot protect information regarding its <u>unlawful</u> practices. In any event, the requisite showings must be made with specific facts, not mere conclusory allegations of confidentiality and/or business harm. *United States v. Exxon Corp.,* 94 F.R.D. 250, 251 (D.D.C. 1981).

**C. The Document Is Very Old And Not Deserving Of Any "Confidentiality" Status.**

Gray's position here is that documents over three years old are not entitled to confidentiality protection unless it contains trade secrets and valid competitive harm is shown. The 1996 Confirmation Agreement is purportedly over ten years old and very stale. Courts have recognized that "age diminishes the confidentiality" of documents containing commercial information. *(Id.)* As the court held in *In re Agent Orange Product Liability Litigation* (104 F.R.D. 559, 577 (EDNY 1985)):

> An important factor in determining whether disclosure will cause competitive harm is whether the information that the party seeks to protect **is current or stale.** For example, in *United States v. International Business Machines,* 67 F.R.D. at 48-49, the court held that information three to fifteen years old was stale and not entitled to protection. *See also Rosenblatt v. Northwest Airlines, Inc.,* 54 F.R.D. 21, 23 (S.D.N.Y. 1971) (the need for a court's protection diminished because information was one year old); *Hecht v. Pro-Football. Inc.,* 46 F.R.D. 605, 606-07 (D.D.C. 1969) (financial information up to three years old entitled to confidentiality and court's protection); *United States v. Lever Brothers Co.,* 193 F. Supp. 254 (S.D.N.Y. 1961), *cert. denied,* 371 U.S. 932, 83 S. Ct. 310, 9 L.Ed.2d 272 (1962) (court held that information three to eight years old should not be protected).

In light of the age of the Confirmation Agreement and representations at issue, Defendant's burden to conduct a particularized "page-by-page" analysis is far heavier than it would otherwise be and any commercial information confidentiality argument must fall far short of its burden.

Plaintiff has conferred with counsel for the Defendants with respect to this motion:

SCO does not object to the terms proposed by Plaintiff, but Novell and X/Open have not completely responded, and therefore the undersigned counsel for Plaintiff cannot make a complete M.D. Fla. R. 3.01(g) certification to the Court. A more complete certification will be made if said Defendants respond prior to the filing of their responsive briefs.

## CONCLUSION

Wherefore, for the reasons set forth above in accordance with Fed. R. Civ. P. 26 and the cited cases, Gray respectively submits that justice requires an order removing all confidential designation of the Confirmation Agreement, permitting him to use it in discovery, investigation, and filing, at the time and place of his choosing, without restriction. In the alternative, should the Court rule that the Confirmation Agreement is deserving of some confidentiality, it is suggested that the Court order said Agreement reclassified as "Confidential," and permit him to immediately view the Confirmation Agreement.

Respectfully submitted,

*/s/ David L. Partlow*
David L. Partlow, FBN 239682
David L. Partlow, P.A.
P.O. Box 82963
Tampa, FL 33682-2963
(813) 287-8337; FAX (813) 287-8234
dlppa@mindspring.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 17, 2007, I electronically filed the above document with the Clerk using the CM/ECF system, which will send electronic notice to: Karen C. Dyer and George R. Coe of Boies, Schiller et al., 225 S. Orange Ave., Suite 905, Orlando, FL 32801; William Cooper Guerrant, Jr. of Hill, Ward & Henderson, P.A., P.O.

Box 2231, Tampa, FL 33601-2231; Evan A. Raynes and Mark Sommers of Finnegan, Henderson et al., 901 New York Avenue, N.W., Washington, D.C. 20001-4413; Frederick H.L. McClure and E. Colin Thompson of DLA Piper US, 101 E. Kennedy Blvd., Suite 2000, Tampa, FL 33602-5148; and Thomas R. Karrenberg, John P. Mullen and Heather M. Sneddon of Anderson & Karrenberg, 700 Chase Tower, 50 West Broadway, Salt Lake City, UT 84101-2035.

*/s/ David L. Partlow*
David L. Partlow