IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| WAYNE R. GRAY, )<br>)<br>　　　　Plaintiff, )<br>)<br>v. )<br>)<br>NOVELL, INC., )<br>THE SCO GROUP, INC., and )<br>X/OPEN COMPANY LIMITED, )<br>)<br>　　　　Defendants. )<br>) | Case No.: 8:06-cv-01950-JSM-TGW |

## X/OPEN'S OPPOSITION TO PLAINTIFF'S MOTION TO DECLASSIFY THE 1996 SCO-NOVELL-X/OPEN CONFIRMATION AGREEMENT

Defendant X/Open Company Limited opposes Plaintiff Wayne R. Gray's motion to declassify the 1996 SCO-Novell-X/Open Confirmation Agreement for the following reasons.

### I.  Introduction and Summary of Argument

The 1996 SCO-Novell-X/Open Confirmation Agreement contains confidential commercial information and, therefore, should not be declassified. The Confirmation Agreement is a contract between The Santa Cruz Operation, Inc. (Defendant The SCO Group, Inc.'s predecessor in interest), Novell, and X/Open concerning, in part, X/Open's ownership of the UNIX trademark—a central issue in this litigation. Among the other issues addressed by the Confirmation Agreement are details about an earlier confidential agreement between Novell and X/Open relating to X/Open's ownership of the UNIX mark, Novell's entitlement to royalty payments, and Novell's and SCO's shareholder and membership status in X/Open.[1] That information was confidential when the Confirmation Agreement was signed in 1996 and it is no

---

[1] X/Open, trading as The Open Group, is an international consortium of computer companies, such as Novell, The SCO Group, Hewlett-Packard, IBM, Apple Inc., and many others.

less so to X/Open today. The Confirmation Agreement bears the legend "SCO-Novell-X/Open Proprietary Not for Disclosure to Third Parties," memorializing the signatories' intent to keep the details of the agreement confidential.

Gray contends he had no alternative but to file his motion. Yet, the filing of the motion was unnecessary. Gray sought access to the Confirmation Agreement for purposes of framing discovery in this case. X/Open agreed to that access, provided the Confirmation Agreement was used only for purposes of this litigation and subject to its continued treatment as confidential under terms of an to-be-agreed-upon protective order.

X/Open respectfully requests this Court to deny Gray's motion and enter a protective order prohibiting the parties from using confidential information except for the purposes of this litigation.

## II.  Facts

Gray's motion is replete with factual error, including about what he "believes" the Confirmation Agreement to say (allegations made notwithstanding Gray's own counsel's possession of that document on an "attorney's eyes only" basis). Further, most of the factual allegations in Gray's motion are irrelevant, as Gray appears foremost to use his motion to advance his position on the merits of the case as opposed to whether the Confirmation Agreement is entitled to confidential treatment. The following are the facts relevant to Gray's motion.

### A.  What is the Confirmation Agreement?

The Confirmation Agreement is the document that confirms the chain of title to the UNIX mark and its ownership by X/Open.

Gray contends in his motion (and in this suit) that X/Open does not own the UNIX mark, but instead, that the UNIX mark is owned by SCO. Gray's Motion to Declassify Confirmation Agreement at 2-3. Gray's position that SCO, not X/Open, owns the UNIX brand rests on his

reading of the 1995 Novell-SCO Asset Purchase Agreement—a document that falls outside the ownership chain of title.[2]

According to Gray, the Asset Purchase Agreement transferred the UNIX mark from Novell to SCO and the defendants thereafter collectively engaged in a conspiracy to cover up the true ownership of the UNIX brand.  Gray's alleged factual allegations notwithstanding, the Asset Purchase Agreement did no such thing, as the transfer of the UNIX mark under that agreement was conditional, being limited by the phrase "as and to the extent held by seller."  This phrase refers to an earlier 1994 Novell-X/Open trademark license agreement.[3]  All this is made clear by the Confirmation Agreement (the document Gray seeks to declassify), as it *confirms* that the 1994 license required Novell to assign the UNIX mark to X/Open, with all three signatories acknowledging that X/Open in fact owns the mark.

### B. Confidential Commercial Information is Contained in the Confirmation Agreement

The Confirmation Agreement contains confidential commercial information.  It contains information about the confidential 1994 Novell-X/Open trademark license agreement; it confirms

---

[2] The following is the chain of title, as recorded in the U.S. Patent and Trademark Office:
- On May 15, 1990, American Telephone and Telegraph Company ("AT&T"), which procured Registration No. 1,392,203 and Registration No. 1,390,593 for the UNIX mark (the "UNIX registrations"), assigned the UNIX mark and registrations to UNIX System Laboratories, Inc. (assignment recorded in the PTO on May 18, 1990).
- On April 29, 1994, UNIX System Laboratories, Inc. merged into Novell, Inc. (merger recorded in the PTO on July 27, 1994).
- On November 13, 1998, Novell, Inc. assigned the UNIX mark and registrations to X/Open  (recorded in the PTO on June 22, 1999).

[3] In the 1994 Novell-X/Open agreement, Novell transferred control of the UNIX mark to X/Open, giving X/Open responsibility for sublicensing the mark to third parties whose products meet certain quality-control standards, and agreed to assign the mark to X/Open.  The agreement also contains numerous provisions concerning those quality-control standards, royalty payments, and other issues.  Given its confidential nature, the 1994 Novell-X/Open license agreement is not attached as an exhibit.  However, a copy will be made available for *in camera* inspection or once a suitable protective order is entered if the Court desires.

X/Open's ownership of the UNIX mark; it contains confidential information about Novell's entitlement to royalty payments under the 1994 agreement. It also contains information unrelated to the UNIX brand's ownership, such as Novell's and SCO's shareholder and membership status in X/Open. In sum, the Confirmation Agreement comprises the obligations and rights of the signatories on a wide range of commercial issues, including issues beyond X/Open's ownership of the UNIX mark. Given the sensitive commercial nature of that information, the parties (not surprisingly) specifically included the legend "SCO-Novell-X/Open Proprietary Not for Disclosure to Third Parties" on each and every page of the Confirmation Agreement.

        **C.**      **The Parties' Negotiations on Gray's Access to the Confirmation Agreement**

Gray claims that the Defendants have improperly classified the Confirmation Agreement "for the purpose of concealing its false representations and to obstruct discovery." Gray's Motion to Declassify Confirmation Agreement at 10. That is simply untrue. Gray well knows the Defendants are not trying to prevent him from seeing the Confirmation Agreement. Gray's counsel has long had the Confirmation Agreement, which was produced years ago on an "attorney eyes only" basis during now-suspended Patent and Trademark Office proceedings between X/Open and Gray. On April 9, 2007, access to the agreement was sought by Gray himself (as opposed to Gray's counsel) to prepare responses to X/Open's discovery requests and, on the next day, X/Open indicated that Gray could see the agreement, provided he did not use it for purposes other than this litigation (including after the conclusion of the litigation). Novell agreed on April 10, 2007, and the SCO Group agreed on April 20, 2007.

In an about face, Gray indicated on May 11, 2007 (and after responding to X/Open's discovery requests on May 2, 2007) that it was now Gray's position that there should be no restrictions whatsoever upon the use of the 1996 Confirmation Agreement.

On the same day, May 11, 2007, Novell asked Gray whether he was rejecting restrictions on the use of the Confirmation Agreement because he wanted to publish the agreement on the Internet or use it for publicity purposes. On May 12, 2007, Gray indicated that this was not the case. X/Open then asked Gray whether he was rejecting restrictions on the use of the agreement so that he could use it in other proceedings, such as the suspended Patent and Trademark Office proceedings. Gray responded: "As to use in any other forum, we decline to provide our legal strategy to you." Gray then made clear that he seeks to use the Confirmation Agreement in other proceedings, as set forth in his pending motion.

SCO has since advised Gray that it will not oppose his motion because it does not believe the issue merits motion practice, but that Gray should not construe this as SCO's taking the position that other parties do not have the right to request reasonable confidentiality provisions for this document.[4]

## III. Argument

### A. Gray's Motion Should Be Denied Because the Confirmation Agreement Contains Confidential Commercial Information

Under the Federal Rules of Civil Procedure, "for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order that certain information is entitled to confidential treatment if it constitutes "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c).

---

[4] The parties' correspondence concerning the declassification of the Confirmation Agreement is contained in Exhibits 1-11 of the Declaration of Evan A. Raynes in Support of X/Open's Opposition to Gray's Motion to Declassify the 1996 SCO-Novell-X/Open Confirmation Agreement. The SCO Group's consent to X/Open's proposal was conditioned on the additional requirement that, upon the entry of a standing protective order, the protective order would govern the use of the agreement.

So long as good cause is shown and the information in question is limited to pretrial civil discovery, it "is not subjected to heightened scrutiny" and a protective order will issue. *In re Alexander Grant & Co. Litigation,* 820 F.2d 352, 355 (11th Cir. 1987). "Good cause" is a "well established legal phrase" that "generally signifies a sound basis or legitimate need to take judicial action." *Id.* at 356.

In addition to a showing of good cause, the Eleventh Circuit conducts a balancing test, weighing, on the one hand, a party's interest in having unrestricted access to the information at issue and, on the other, the adverse party's interest in limiting access to that same information and keeping it confidential. *McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89, 91 (11th Cir. 1989) (district court properly granted protective order preventing dissemination of discovery material concerning confidential commercial and financial information); *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir. 1985) (affirming district court's grant of a protective order because the movant's interest in keeping the information confidential outweighed the discovery interests of the other party); *Alexander Grant,* 820 F.2d at 356 (affirming stipulated protective order prohibiting parties from disseminating confidential information to nonlitigants and holding that "an 'umbrella' protective order . . . should be used to protect documents designated in good faith by the producing party as confidential").

The Confirmation Agreement contains confidential commercial information. As a reading of the Confirmation Agreement will show, a wide range of sensitive commercial issues deserving of confidential protection exist. These include information concerning the confidential 1994 Novell-X/Open trademark license, Novell's entitlement to royalty payments, Novell's and SCO's shareholder and membership status in X/Open, and conditions relating to the assignment of X/Open's UNIX mark, among others.

Gray urges declassification of the Confirmation Agreement because it is a "stale document purportedly over 10 years old." Gray's Motion to Declassify Confirmation Agreement at 1. Yet, the information contained in the agreement has not lost its confidential nature simply through the passage of time. The information in question was confidential in 1996 and remains confidential to X/Open today because the information is still relevant to X/Open's business relationships with the other signatories.

Further, great weight should be accorded the original intent of the signatories. The legend "SCO-Novell-X/Open Proprietary Not for Disclosure to Third Parties" appears on each and every page of the agreement. That intent existed long prior to this dispute and the Defendants' labeling it "confidential" cannot be credibly argued by Gray as having been done to chill his discovery some 20 years later. Thus, the intended confidentiality of the Confirmation Agreement should be given full effect. *See, e.g,. Grove Fresh Distribs., Inc. v. John Labatt Ltd.,* 888 F. Supp. 1427, 1440-41 (N.D. Ill. 1995), *aff'd*, 134 F.3d 374 (7th Cir. 1998) ("[T]he dissemination of agreements *intended* by the parties to be confidential carries a 'significant potential for abuse' which could 'implicate privacy interests of litigants and third parties.'") (internal citations omitted) (emphasis added).

In addition, disclosure of the Confirmation Agreement could damage X/Open's current and future relations with its licensees. X/Open is the "caretaker" of the UNIX mark for the computer industry, licensing the mark not only to SCO, but to many other companies who entrust confidential information concerning their UNIX-brand products to X/Open. As such, X/Open owes a duty of confidentially to *all* of its licensees, and disclosure of third-party confidential information in this case would give X/Open's licensees pause for concern that their own confidential information risks public disclosure.

For his part, Gray has not shown a real or legitimate interest in having unrestricted access to the Confirmation Agreement. Whatever interest Gray can muster, it does not outweigh X/Open's interest in restricting use of this confidential document for purposes other than this litigation. Rather, Gray's only "interest" in declassifying the Confirmation Agreement appears to be his desire to use it in other proceedings and for purposes other than this litigation. That desire is improper, meriting no weight.

The spate of cases that Gray cites for the proposition that the Confirmation Agreement is undeserving of confidential treatment does not support his motion. In each cited case, the party asserting the confidentiality interest sought to prevent *access* to the information in question. Here, X/Open does not seek to prevent *access* to the Confirmation Agreement. X/Open has offered Gray the information he seeks, subject to restrictions on the *use* of the information, not *access* to the information. Further, many of Gray's cases are factually inapposite,[5] and some uphold the protective order at issue.[6] As such, Gray's cases do not stand for the proposition for which they are cited.

**B.     Gray's Motion Should Be Denied Because It is Unjustified and Improper**

Gray claims that, because he is "an active participant in these proceedings, performing most of the fact research and preparing drafts of almost all of his documents and pleadings," keeping the Confirmation Agreement confidential "will prejudice and irreversibly harm discovery

---

[5] For instance, *In re Up North Plastics,* 940 F. Supp. 229, 232 (D. Minn. 1996) involves the narrow question of whether a person whose property has been seized pursuant to a search warrant has a Fourth Amendment constitutional right to examine the affidavit upon which the warrant was issued, and both *Doe v. District of Columbia*, 697 F.2d 1115 (D.C. Cir. 1983) and *THK Am., Inc. v. NSK Co.*, 157 F.R.D. 637 (N.D. Ill. 1993) deal with the right of attorneys to share confidential information with their clients.

[6] *See, e.g., In re Iowa Freedom of Information Council,* 724 F.2d 658, 664 (8th Cir. 1983) (where the petitioner media organizations applied for a writ of mandamus challenging the district court's closure of a contempt hearing involving trade secrets, the Eighth Circuit upheld the district court's decision to protect certain trade secrets from disclosure and denied the petition).

and fact investigation and Gray's ability to effectively participate in this proceeding." Gray's Motion to Declassify Confirmation Agreement at 2. This claim likewise lacks merit.

After Gray requested access to the Confirmation Agreement in order to prepare his discovery responses, X/Open agreed that Gray could see the agreement, provided that he use it only for the purposes of this litigation. X/Open's proposal gave Gray everything he purportedly sought, namely, access to the Confirmation Agreement for the purpose of preparing his discovery response.

Instead of accepting X/Open's proposal (and avoiding the need to involve this Court), Gray responded that only complete declassification would satisfy him and that he wanted to be able to file the Confirmation Agreement in any other forum he sees fit, including future forums. Thus, Gray's true motives for seeking declassification of the Confirmation Agreement obviously reach far beyond this litigation.

## IV. Conclusion

Gray's motion should be denied and the Confirmation Agreement should remain "attorney's eyes only" in the absence of an order prohibiting its use for purposes other than this litigation. To prevent piecemeal treatment of confidential documents (and additional unnecessary motion practice), X/Open further respectfully requests that the Court order the parties to enter into a standing protective order governing the treatment of confidential information.

Respectfully submitted,

Dated: June 4, 2007

s/ Evan A. Raynes
Mark Sommers, Esq.
Evan A. Raynes, Esq.
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Telephone: 202-408-4000
Facsimile: 202-408-4400

E-mail:  mark.sommers@finnegan.com
E-mail:  evan.raynes@finnegan.com

- and-

William C. Guerrant, Jr.
Florida Bar No. 516058
HILL, WARD & HENDERSON, P.A.
Suite 3700 – Bank of America Building
101 East Kennedy Boulevard
Post Office Box 2231
Tampa, Florida 33601
Telephone:  813-221-3900
Facsimile:  813-221-2900
E-mail:  wguerrant@hwhlaw.com

Attorneys for Defendant X/Open Company Limited

## CERTIFICATE OF SERVICE

I certify that on June 4, 2007, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

David L. Partlow, dlppa@mindspring.com;

William C. Guerrant, Jr., wguerrant@hwhlaw.com;

Karen C. Dyer, kdyer@bsfllp.com;

Fredrick H. L. McClure, fredrick.mcclure@dlapiper.com;

George R. Coe, gcoe@bsfllp.com;

E. Colin Thompson, colin.thompson@dlapiper.com;

Heather M. Sneddon, hsneddon@aklawfirm.com;

John P. Mullen, jmullen@aklawfirm.com; and

Thomas R. Karrenberg, tkarrenberg@akalawfirm.com.

s/ Evan A. Raynes