UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE R. GRAY

    Plaintiff,

v.

NOVELL, INC., and
THE SCO GROUP, INC., and
X/OPEN COMPANY LIMITED,

    Defendants.

Case No.: 8:06-cv-01950-JSM-TGW

### THE SCO GROUP, INC'S RESPONSE TO PLAINTIFF'S MOTION AND COMBINED MEMORANDUM IN SUPPORT OF DECLASSIFYING THE 1996 NOVELL-X/OPEN-SANTA CRUZ "CONFIRMATION AGREEMENT' AND ITS TRANSMITTAL MEMO

The SCO Group, Inc. ("SCO"), pursuant to Rule 3.01(b) of the Local Rules for the United Stated District Court for the Middle District of Florida, respectfully submits this response to Plaintiff's Motion and Combined Memorandum in Support of Declassifying the 1996 Novell-X/Open-Santa Cruz "Confirmation Agreement" and Its Transmittal Memo. ("Motion")

### PRELIMINARY STATEMENT

Through this Motion Plaintiff seeks to "declassify" the 1996 Confirmation Agreement between Novell, Inc. ("Novell"), X/Open Company Limited (X/Open) and the SCO Group, Inc. ("SCO") (the "1996 Confirmation Agreement"). Without taking a position as to whether other parties may have an interest in maintaining the confidentiality of the 1996 Confirmation Agreement, and solely to avoid what SCO views as unnecessary motion practice before this Court, SCO, in the conferral leading up

to the instant Motion, advised counsel for Plaintiff that it would not object to the relief he requested. As explained by and through his counsel, the relief Plaintiff requested was that the 1996 Confirmation Agreement would be used "initially and primarily" in this litigation and the document would not be published except for in the unlikely event that "someone were to attack" "either [Plaintiff's] personal reputation or that of iNUX" "on the internet." *See* Exhibits 1 and 2. Despite SCO's agreement not to object, Plaintiff nevertheless filed the instant Motion. Plaintiff's Motion mis-states the relevant history of the negotiations preceding this Motion and also misrepresents the merits of this case.

In addition to its concern that Plaintiff improperly seek to argue the merits of his case in this discovery motion, SCO also is concerned that this may be the first of repeated applications to the Court that seek rulings on issues going to the merits of this case under the guise of ultimately unnecessary discovery disputes. Thus, SCO provides this limited response to make clear it objects to Plaintiff's improper arguments regarding the merits of this case and to point out that the instant dispute raises a broader issue – the need for a Confidentiality Order in this case in general. Indeed, SCO believes the instant dispute is most properly resolved in the context of the broader confidentiality issue so as to avoid serial applications to this Court regarding each individual document or production.

As with Plaintiffs' Complaint, Plaintiff's Motion continues to predicate arguments regarding the merits of this case on his distorted view of certain litigation proceedings before the Trademark Trial and Appeal Board ("TTAB"). Plaintiff's beliefs regarding the merits of its action before the TTAB – aside from being misguided -- are irrelevant both to the specific issue before the Court regarding the confidentiality of the 1996 Confirmation Agreement and to this case in general. There are no orders or findings

from the TTAB proceeding that support Plaintiff's allegations in his Motion. Indeed, not only do no such Orders or findings exist, but Plaintiff has prevented the TTAB from resolving the outstanding issues presented in that litigation by moving to stay the TTAB action in favor of the instant case. *See* Exhibit 3, Applicant's Combined Motion and Brief to Suspend Proceedings (attached without Exhibit A thereto which is a copy of the Complaint in this action, *see id.* at p. 2).

In addition to the lack of any support in the TTAB proceeding for Plaintiff's arguments, Plaintiff also misstates here the relevant discussions and agreements between the Plaintiff and SCO, which have occurred in this case and in the TTAB litigation, regarding the 1996 Confirmation Agreement. Specifically, although Plaintiff argues that as part of the TTAB proceeding SCO gave its permission for Plaintiff, Wayne Gray, to review the 1996 Confirmation Agreement, Plaintiff omits any reference to the terms of the permission granted by SCO in that proceeding. SCO granted permission for the Plaintiff to review the document "provided that (a) <u>only</u> your client, Wayne Gray, has access to the document on a confidential basis, and (b) both Novell and X/Open also consent to this disclosure." *See* Exhibit 7 to Plaintiff's Motion (emphasis in original). This agreement was premised on the representation of Plaintiff's counsel that in the TTAB proceeding Gray would not have a problem "agreeing to limit its use to purposes strictly within this litigation." *See* October 14, 2004 correspondence of Plaintiff's counsel attached as Exhibit 4 at p. 1. Notably, as soon as the instant suit was filed, Gray and his counsel promptly disregarded the representation that use of the 1996 Confirmation Agreement would be limited to the TTAB proceeding by seeking to use that document in this case. The potential the improper disclosure of confidential

3

materials from another litigation being misused here, *or vice versa,* merely serves to highlight the need for an overarching confidentiality agreement in the instant case.

Plaintiff devotes the majority of its Motion to arguing the merits of either the TTAB proceeding or this litigation. Not only is this discussion of the merits irrelevant to his Motion, it is, more importantly, flawed and inaccurate in several respects. Plaintiff uses only portions of documents, selectively quotes information out of context, and seeks to have the Court make findings on issues that are far removed from the issue of whether the 1996 Confirmation Agreement should be "declassified," and unnecessary to any determination regarding the trademark dispute that is the subject of this action.

Most notably, Plaintiff incorporates as an exhibit to its Motion a redacted copy of Novell's Memorandum in Support of Novell's Motion For Summary Judgment on SCO's First Claim for Slander of Title and Third Claim for Specific Performance in case no. 2:04CV00139 pending before the District Court for the Central District of Utah (the "Utah Litigation"). The dispute in the Utah litigation is between Novell and SCO (indeed Grey is not even a party) and the issue in the brief is whether certain <u>copyrights</u> were transferred to SCO. The instant case does not involve copyrights; Plaintiff has not alleged that his dispute with X/Open or any other party here, or in the TTAB proceeding, involved any issues related to any copyrights, nor has he alleged any right to an "INUX" or "UNIX" or UNIX-related copyright with which a Defendant has allegedly impeded or interfered. Indeed, even if there were grounds for this Court to examine the issue of any copyright dispute between SCO and Novell – which there is not – this Court should await resolution of that dispute in the Utah Litigation. In no event should this Court make any

4

determination of issues outside the scope of this litigation on the basis of one party's redacted memorandum brief in a separate action.

## ARGUMENT

I. Plaintiff's Arguments Reveal The Complaint's Lack Of Merit Against SCO

As addressed above, the portion of Plaintiff's Motion devoted to argument of the merits of this case is not relevant to Plaintiff's requested relief. Even if that discussion were relevant, however, Plaintiff relies for its position on documents and statements that are incomplete, taken out of context, or misleading. Moreover, Plaintiff's argument reveals that Plaintiff's basis for alleging in the Complaint that SCO "evidently joined the Novell-X/Open corrupt enterprise" (Complaint at paragraph 58) is wholly without factual or legal basis.[1] Specifically, in its Motion at p. 4, footnote 7, Plaintiff alleges that the person who signed the Confirmation Agreement on behalf of Santa Cruz:

> was not a Santa Cruz executive corporate officer subject to Section 16(b) of the Securities Exchange Act of 1934 until after 1996, and therefore probably could not have lawfully authorized abandonment of Santa Cruz's lawful ownership of the valuable UNIX marks at that time, suggesting that if Santa Cruz, a public company, did in fact attempt to abandon its UNIX marks ownership, the Confirmation Agreement's true execution date was after 1996 and thus the document is likely backdated. (emphasis added).

This statement of unsupportable factual guesswork and specious legal reasoning is the foundation on which this entire case against SCO alleging, *inter alia,* fraud, conspiracy and RICO violations, is based. This statement also establishes that there is absolutely no merit to Plaintiff's Complaint against SCO.

---

[1] SCO filed its Motion to Dismiss on January 31, 2007. That motion remains pending but did not address this additional ground for dismissal because Plaintiff had not previously specified the factual basis for its allegations against SCO.

First, Section 16 of the Securities Exchange Act of 1934 deals with the disclosures of certain beneficial owners, directors and officers when stock is registered, acquired or there is change of ownership. *See* 15 U.S.C. §78p. Section 16(b) provides for the recovery of certain "short-swing" profits of certain beneficial owners, directors and officers by a corporation or on its behalf.[2] 15 U.S.C. §78p(b) As the Supreme Court held, the purpose subsection b "was designed to prevent a corporate director or officer or 'the beneficial owner of more than 10 per centum' of a corporation from profiteering through short-swing securities transactions on the basis of inside information." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 234 (1976). Nothing in Section 16 or 16(b) addresses the issue of the authority of a corporate officer to enter into legal agreements on behalf of the corporation by which they were employed. Nor is there any caselaw support for the proposition that only officers or directors who are subject to 16(b) are authorized to execute agreements on behalf of the company. Indeed, it is telling that even Plaintiff cannot wholeheartedly make this unsupportable allegation, choosing instead to assert that the signatory "probably" could not have lawfully signed the document, thus "suggesting" the document is "likely" backdated.

Moreover, even if Section 16 bore any relationship to the corporate authority needed to validly execute legal agreements – and it does not – this would not be sufficient to save Plaintiff's claims against SCO. Even under this hypothetical argument, there is no suggestion that the agreement was backdated, or that SCO joined the allegedly corrupt enterprise, other than the pure conjecture of the Plaintiff. This is an insufficient basis on

---

[2] Even if this statute were somehow implicated in this case, 15 U.S.C. §78p(b) does not provide a private right of action to shareholders (*see id.*) and could not provide any basis for a non-shareholder such as Plaintiff to sue SCO under its provisions.

which to base the Complaint's allegations against SCO. In sum, Plaintiff's statements in its Motion and Memorandum establish that its bases for filing suit against SCO are groundless and provide an additional reason to those set forth in SCO's Motion to Dismiss the Complaint filed on January 31, 2007 for dismissal of the claims against SCO on the merits.

II. Plaintiff's Arguments Demonstrate Why A Confidentiality Order Is Necessary In This Case

In his argument, Plaintiff purports to recite why he did not reach an agreement regarding the confidentiality of documents with Novell and X/Open in the TTAB proceeding. Plaintiff's arguments employ circular reasoning and demonstrate why this Court should enter a Confidentiality Order in this case now to prevent serial applications to the Court in the future regarding confidentiality disputes. Parsed to its essence, Plaintiff asserts, sight unseen, that Defendants' documents demonstrate fraud on their face, or, if they do not patently demonstrate fraud, Plaintiff conjectures they were likely "backdated" or are malevolent for some equally implausible reason.[3] In short, regardless of how innocuous a document is, Plaintiff is prepared to claim it was part of the alleged conspiracy.

Plaintiff's argument also implies that because he has alleged fraud, Defendants are stripped of any and all confidentiality protections. This argument cannot stand. Based on the razor thin allegations of the Complaint, Plaintiff seeks to create his own

---

[3] Plaintiff omits any reference from the Motion that his counsel has had a copy of the 1996 Confirmation Agreement for several years and that his counsel could have long ago informed the Plaintiff that the 1996 Confirmation Agreement does not constitute evidence of fraud. This fact is also incompatible with Plaintiff's assertion that to the extent anyone opposes Plaintiff's discovery they are obstructing Plaintiff's lawsuit and participating in the fraud.

personal archive of each Defendants' business and strategy documents to be used for whatever purposes Plaintiff sees fit, including apparently serial litigations against these Defendants.[4]

Contrary to Plaintiff's position that Defendants' ongoing, confidential business affairs are public and Plaintiff can create his own library of Defendants' strategic documents, confidentiality provisions have long served the useful purpose of protecting both parties' trade secrets as well as confidential research, development or commercial information. *See* F.R.C.P. 26(c)(7). Indeed, the authors of Federal Practice and Procedure noted that by 1981, Courts had already recognized that comprehensive Confidentiality Orders are a well established standard:

> Protective orders are also often obtained by agreement, particularly regarding confidential information and in litigation likely to involve a large volume of documents. Frequently, these take the form of "umbrella" protective orders that authorize any person producing information to designate that which is confidential as protected under the order. One distinguished judge noted in 1981 that he was "unaware of any case in the past half-dozen years of even a modicum of complexity where an umbrella protective order . . . has not been agreed to by the parties and approved by the Court." Protective orders have been used so frequently that a degree of standardization is appearing. The Manual for Complex Litigation (Second) recognizes this reality, and the standardized forms include one attached the Manual.

8 FPP § 2035, quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 889 (D. Pa. 1981) (ellipsis in original).

Nor is there any merit to the suggestion that Plaintiff's allegations of fraud, *ipso facto*, preclude the entry of a confidentiality order. For example, in *In re Alexander*

---

[4] Plaintiff's counsel has already made plain that this is but the second in a planned series of litigations against the Defendants in stating that his intended use of the 1996 Confirmation Agreement includes that: "In the future we expect there may be other courts and/or tribunals where we would wish to file it." Exhibit 1 at p. 2.

*Grant & Co. Litig,* 820 F.2d 352 (11th Cir. 1987), the Eleventh Circuit affirmed the entry of an umbrella protective order in a case that involved claims of fraud, securities fraud and RICO violations. In *Alexander*, the Court found that an umbrella protective order which retained the burden of proof of justifying the need for the protective order, on the movant but which shifted the burden of raising the confidentiality with respect to individual documents to the other party, would "encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure." *Id.* 820 F.2d at 356.[5] The Court also found that this would reduce the burden on the Court of repeated applications regarding the confidentiality of particular documents and increase the speed and efficiency of the litigation: "Judicial review will then be limited to those materials relevant to the legal issues raised. History has confirmed the tremendous saving of time effected by such an approach." *Id.*

The very same rationale that led the Court in *Alexander* to approve the confidentiality order, requires the entry of a similar confidentiality order in this case. Although SCO would suggest that much of the complexity is unnecessary to Plaintiff's alleged causes of action, Plaintiff seeks to create a complex web of allegations that give him *carte blanche* to delve into the business affairs of SCO and others including SCO's business strategy, commercial documents, and past and present litigation with third parties. As established by Plaintiff's version of the TTAB litigation, and as appears likely here, not only will discovery issues be disputed, but Plaintiff will deem any discovery dispute either "improper" and/or will assert that it is part of the alleged

---

[5] *See also Ronque v. Ford Motor Co.*, 1992 WL 415427, at *2 (M.D.Fla. 1992) finding that: "An 'umbrella' protective order is necessary because a document-by-document review of discovery materials in such a case is not feasible if the case is to proceed in an orderly, timely manner."

9

conspiracy. A blanket confidentiality order at this time will prevent or, at least minimize, serial applications to this Court by providing for judicial intervention only when the parties are unable to reach agreement.

## CONCLUSION

Wherefore, SCO respectfully requests that this Court entering an Order requiring the parties to submit either an agreed blanket Confidentiality Order for approval by this Court, or if the parties are unable to reach agreement, for the parties to submit proposed Confidentiality Orders to the Court within fifteen (15) days of the Court's Order.

Dated: June 4, 2007                                Respectfully submitted,

                                                   _s/ Karen Dyer_____
                                                   Karen C. Dyer
                                                   Florida Bar No. 716324
                                                   George R. Coe
                                                   Florida Bar No. 298440
                                                   Boies, Schiller & Flexner LLP
                                                   255 South Orange Avenue, Suite 905
                                                   Orlando, FL 32801
                                                   Telephone: (407) 425-7118
                                                   Facsimile: (407) 425-7047

                                                   Stuart H. Singer
                                                   401 E. Las Olas Blvd.
                                                   Suite 1200
                                                   Ft. Lauderdale, FL 33301
                                                   (954) 356-0011
                                                   (954) 356-0022

                                                   *Attorneys for Defendant*
                                                   *The SCO Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any party not registered to file electronically.

                                                    _s/ George R. Coe_\
                                                    George R. Coe