**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| WAYNE R. GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  8:06-cv-01950-T-33TGW |
| | ) | |
| NOVELL, INC., | ) | |
| THE SCO GROUP, INC., and | ) | |
| X/OPEN COMPANY LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**X/OPEN'S MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

I.     Introduction ................................................................................................1

II.    Statement of Facts .....................................................................................3

     A.     Gray's and His Counsel's Conduct in the Trademark Trial and Appeal Board Opposition ................................................................3

     B.     Gray's and His Counsel's Conduct in This Lawsuit................................5

III.    Argument ................................................................................................11

     A.     X/Open is Entitled to Its Attorneys' Fees Under the Lanham Act ......11

     B.     X/Open Is Entitled to Its Attorneys' Fees Under the Florida RICO Act and the Florida Civil Remedies for Criminal Practices Act ...................14

     C.     X/Open is Entitled to Its Attorneys' Fees Under 28 U.S.C. § 1927 .....15

            1.     The Conduct of Gray's Counsel Was Unreasonable and Vexatious ...............................................................................16

            2.     Gray's Counsel Needlessly Multiplied the Proceedings............17

            3.     The Misconduct of Gray's Counsel and X/Open's Attorney's Fees are Related ...............................................................17

     D.     X/Open's Estimate of Its Attorney's Fees ............................................18

     E.     X/Open is Entitled to Reimbursement of Its Taxable Costs .................18

IV.    Conclusion ..............................................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Honda Motor Co. v. Motorcycle Information Network*,
    2008 WL 906739 (M.D. Fla. Apr. 2, 2008) ....................................................... 15-17

*Arabian America Oil Co. v. Scarfone*,
    713 F. Supp. 1420 (M.D. Fla. 1989) .............................................................14, 16

*Avirgan v. Hull*,
    932 F.2d 1572 (11th Cir. 1991) ...................................................................... 15-16

*Brandt v. Schal Associates*,
    960 F.2d 640 (7th Cir. 1992) ...............................................................................18

*Hartman v. Hallmark Cards, Inc.*,
    833 F.2d 117 (8th Cir. 1982) ...............................................................................12

*Lipscher v. LRP Publications, Inc.*,
    266 F.3d 1305 (11th Cir. 2001) ...........................................................................11

*Noxell Corp. v. Firehouse Number 1 Bar-B-Que Restaurant*,
    771 F.2d 521 (D.C. Cir. 1985) .............................................................................12

*Roadway Express, Inc. v. Piper*,
    447 U.S. 752 (1990).............................................................................................15

*Scotch Whisky Association v. Majestic Distilling Co.*,
    958 F.2d 594 (4th Cir. 1992) ...............................................................................11

*Smartt v. First Union National Bank*,
    245 F. Supp. 2d 1229 (M.D. Fla. 2003).................................................................15

*Tire Kingdom, Inc. v. Morgan Tire & Automobile, Inc.*,
    253 F.3d 1332 (11th Cir. 2001) ...........................................................................11

*Vital Pharmaceuticals, Inc. v. American Body Building Products*,
    510 F. Supp. 2d 1043 (S.D. Fla. 2007) .................................................................12

**FLORIDA CASES**

*Foreman v. E.F. Hutton & Co.*,
    568 So.2d 531 (Fla. Dist. Ct. App. 1990) ...................................................................14

*Smith v. Viragen, Inc.*,
    902 So.2d 187 (Fla. Dist. Ct. App. 2005) ...................................................................14

**FEDERAL STATUTES AND RULES**

15 U.S.C. § 1117(a), Lanham Act § 35(a) ....................................................... 1-2, 11, 13

28 U.S.C. § 1920 .........................................................................................................1, 18

28 U.S.C. § 1927 ............................................................................................ 1, 2, 15-16, 18

Fed. R. Civ. P. 54(d) ...................................................................................................1, 18

**STATE STATUTES**

Fla. Stat. § 772.104(3)...........................................................................................1-2, 14-15, 18

Fla. Stat. § 895.05(7)............................................................................................1-2, 14-15, 18

As the prevailing party in this litigation, X/Open moves this Court for reimbursement of its attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a); the Florida RICO Act, Fla. Stat. § 895.05(7); the Florida Civil Remedies for Criminal Practices Act ("FCRCPA") (the statute that provides for attorneys' fees for lawsuits brought under the Florida Communications Fraud Act), Fla. Stat. § 772.104(3); 28 U.S.C. § 1927; and Fed. R. Civ. P. 54(d)(2).  X/Open also moves this Court for reimbursement of its taxable costs under the Florida RICO Act, Fla. Stat. § 895.05(7); the FCRCPA, Fla. Stat. § 772.104(3); 28 U.S.C. § 1920; and Fed. R. Civ. P. 54(d)(1).[1]

I.      **Introduction**

Gray's reckless and vexatious lawsuit against X/Open should not have been filed. Well prior to this lawsuit, Gray had the 1996 Confirmation Agreement between X/Open and its co-defendants.  This was all the evidence needed for Gray to fully appreciate this lawsuit's lack of basis in fact and law.  As this Court held in granting summary judgment, the *clear and unambiguous* language of the Confirmation Agreement establishes that, contrary to Gray's allegations, X/Open lawfully owns the UNIX trademark and did not engage in any "conspiracy" to conceal the true owner of the mark.

Yet Gray turned a blind eye to the case-dispositive Confirmation Agreement (as well as other corroborating evidence), opting instead to plead that the agreement was fraudulently manufactured by the defendants to deceive him regarding the UNIX mark's true ownership. Ignoring fact and resting on far-fetched conjecture, Gray forged ahead with this frivolous

---

[1] X/Open's costs are detailed in the Bill of Costs submitted to the Clerk of the Court simultaneously with this motion.

lawsuit, eventually claiming over $100M in damages in a misguided attempt to raise the stakes of the related U.S. Patent and Trademark Office proceeding or extort a handsome monetary payoff.

Legal safeguards exist to prevent lawsuits like Gray's from ever coming to bar.  As officers of the court, Gray's counsel had the responsibility to weigh the merits of Gray's claims in light of the Confirmation Agreement.  They also had the responsibility to counsel Gray on the proper use of discovery and the inappropriateness of fishing for evidence of his unsupported theories.

These safeguards failed because, while on paper Gray was represented by counsel, Gray essentially served as his own counsel.  In pleadings, Gray labelled himself as his own "litigation expert."  Gray's counsel served as a surrogate sign-off for Gray's voluminous and needless pleadings, discovery requests, and motions.  For all intents and purposes, Gray was practicing law, with loose (or no) oversight from his attorneys.

As a result, not only was Gray's lawsuit "without substantial fact or legal support" under the Florida RICO Act and the FCRCPA, but an "exceptional" case under the Lanham Act.  Further, in allowing or at least sanctioning this lawsuit and Gray's voluminous filings, Gray's counsel unreasonably and vexatiously multiplied these proceedings under 28 U.S.C. § 1927.

As a result of Gray's and his counsel's misconduct, X/Open has been unnecessarily and unfairly burdened with substantial expenditures in lost management time and hundreds of thousand of dollars in attorneys' fees and costs.  As such, reimbursement of attorneys' fees and costs is appropriate.

II.     **Statement of Facts**

      A.     **Gray's and His Counsel's Conduct in the Trademark Trial and Appeal Board Opposition**

In April 2001, X/Open opposed Gray's application to register the conflicting trademark INUX in an administrative proceeding before the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office.  (Dkt. 121, Ex. 77.)

In that proceeding, as in this lawsuit, Gray alleged that X/Open did not own the UNIX mark because Novell transferred the mark to SCO in the 1995 Novell-SCO Asset Purchase Agreement and, as such, Novell's subsequent assignment of the UNIX mark to X/Open in 1998 was invalid.

Gray asserted this allegation despite counsel David Partlow's (Gray's first attorney's) access to the case-dispositive 1996 Novell-SCO-X/Open Confirmation Agreement.  As this Court noted in its summary judgment decision, the Confirmation Agreement established that, regardless of how one reads it, Novell did not transfer the UNIX mark to SCO in the APA and validly assigned the mark to X/Open.  (Dkt. 162:  Feb. 20, 2009 Order at 26-27.)

This document notwithstanding, Gray refused to withdraw his counterclaim and then multiplied the size, issues, and costs of the TTAB proceeding by turning it into a discovery and procedural behemoth.

After taking over 15 months to answer X/Open's notice of opposition, Gray and his counsel filed a string of meritless motions, including:

      (1)     A motion to reopen discovery filed after Gray missed the deadline to serve discovery requests, which the TTAB denied (Declaration of Evan A. Raynes

3

in Support of X/Open's Motion for Attorneys' Fees and Costs ("Raynes

Decl."), Ex. 1);

(2)    Two motions to amend Gray's answer and counterclaim alleging that SCO

owned the UNIX mark, which Gray maintained despite X/Open directing

Gray to SCO's public acknowledgements of X/Open's ownership (Raynes

Decl., Ex. 2-3);

(3)    A motion to compel answers to Gray's voluminous discovery requests, all of

which Gray claimed were related to the trademark ownership issue, but many

of which had nothing to do with that issue (Raynes Decl., Ex. 4);

(4)    Two briefs in support of Gray's motion to compel, both of which were filed

after the motion in violation of the TTAB's rules and exceeded the page limit

(Raynes Decl., Ex. 5-6); and

(5)    A "Letter of Inquiry" arguing that Gray had "reason to believe" X/Open

intended to abandon its UNIX registrations to avoid an adverse ruling in the

opposition, which Gray filed in violation of the TTAB's order barring the

submission of additional papers pending the resolution of Gray's motion to

compel (Raynes Decl., Ex. 7).

All told, Gray filed approximately 1,400 pages of motions, declarations, and exhibits

on these and other issues.  These motions were meritless and excessively voluminous.

X/Open spent significant time and money opposing them.

Further, while discovery of X/Open's ownership of the UNIX mark could have been

addressed in a few requests, Gray served over 140 pages of discovery requests, 125 pages of

exhibits, 167 requests for admissions, 49 document requests, and 26 interrogatories (over 75 with subparts).[2]  Again, X/Open spent significant time and money answering them.

Gray's counsel then threatened to disclose the Confirmation Agreement to Gray in the absence of a standing protective order governing the treatment of confidential information (earlier drafts of which Gray refused to sign).  X/Open was forced to seek an emergency protective order to safeguard its confidential information (as well as the confidential information of UNIX licensee SCO and Open Group member Novell).

As Gray's pleadings admit, litigant Gray was the driving force behind this vexatious and harassing strategy, with Gray's counsel David Partlow apparently merely signing Gray's filings.  As represented in Gray's brief on the confidentiality of the Confirmation Agreement:

> Mr. Gray is a very active participant in this case.  Although he is an engineer . . . and not admitted to the bar of any state, he is far more familiar with the applicable law than any other litigant observed in the last 22 years of [Gray's counsel's] IP litigation; he has done the vast majority of the legal research, independent investigation, and discovery (both promulgated and responding) in this case, and has provided the initial drafts of most filed documents.

(Raynes Decl., Ex. 8.)

**B.**    **Gray's and His Counsel's Conduct in This Lawsuit**

Having full discovery on the ownership issue from five years of TTAB litigation, Gray filed this lawsuit in October 2006.  The Confirmation Agreement notwithstanding, Gray based his complaint on the same allegations made in his opposition, including SCO's

---

[2] Gray also served third-party subpoenas on Novell and SCO seeking much the same discovery sought from X/Open.

ownership of the UNIX mark and the "fraudulent" assignment of the mark to X/Open.  Gray

also claimed that, because X/Open did not own the UNIX mark when it filed the TTAB

opposition, it lacked standing to bring that action.  (Dkt 146 at 1-3.)  Finally, Gray's

complaint expanded his accusations to include a quasi-criminal "conspiracy" and a "corrupt

enterprise" between X/Open, Novell, and SCO to conceal the true owner of the UNIX mark

from Gray and the relevant public.  (See, e.g., Compl. at ¶ 8.)

        According to Gray, the purpose of the X/Open-Novell-SCO conspiracy was to

dominate the UNIX software market:

> Novell and X/Open schemed in and after October 1993 to
> conceal Novell's true intentions of retaining ownership of the
> valuable UNIX marks and developing a proprietary and closed
> version of UNIX that would integrate its proprietary NetWare
> networking technologies with the intent of securing for
> themselves certain UNIX software competitive advantages and
> UNIX market domination, while slowing or even reversing
> Microsoft's increasing computer operating system and office
> productivity software market share growth, thereby furthering
> Novell's goal of increasing its dominate [sic] networking
> products market share position over Microsoft.  (Comp. at
> ¶ 29.)

        Gray and his counsel also alleged that the Defendants' purpose in initiating the

"objectively baseless sham trademark opposition" against Gray was to "appropriate his

iNUX mark and domain names for their use, to defraud Gray and to destroy his INUX

business property and professional reputation, thus ensuring future association of the iNUX

mark and domain names with products and/or services originating only from one or more of

the Defendants."  (Compl. at ¶ 166.)

        All of these conspiracy theories were alleged on "information and belief," founded

on, at best, supposition and innuendo, without any concrete supporting fact or evidence.  This

lack of evidence notwithstanding, Gray's 83-page complaint alleged two federal RICO claims, two Florida state RICO claims, two Florida Telecommunications Fraud Act claims, three Lanham Act claims (two fraud-on-the-PTO counts and one "false designation of origin" count), and two common-law fraud claims.  (Id. at ¶¶ 184-246.)

Gray's complaint further alleged millions of dollars in damages.[3]  Fingering X/Open's TTAB opposition as the sole cause of his INUX business' ruin, Gray's complaint alleged approximately $4.5 million in damages and, during discovery, bumped that figure to $100+ million—again, all without any real supporting fact or evidence.

As in the TTAB opposition, Gray doggedly pursued his ownership fraud "theory," despite all the prior discovery and evidence that clearly and unambiguously pointed to the contrary.  That evidence included, as Gray and his counsel well knew, SCO's acknowledgement of X/Open's ownership of the UNIX mark, SCO's acknowledgment of X/Open's ownership of the UNIX registrations in its motion to dismiss (Dkt. 27 at 12 n. 18) and, most importantly, the case-dispositive 1996 Confirmation Agreement, which this Court held contained "clear and unambiguous language" establishing that "the subsequent 1998 Deed of Assignment validly passed ownership of the UNIX trademark to X/Open."  (Dkt. 162:  Feb. 20, 2009 Order at 27 (emphasis added.).)

Unable to logically explain away the plain language of the Confirmation Agreement, Gray claimed the Confirmation Agreement and the Novell-X/Open assignment were ginned-up to hide the Defendants' *conspiracy*.  Gray pled this without any basis in fact and, on summary judgment, offered "absolutely no evidence to support his allegation that Defendants

---

[3] Damages are not available in TTAB proceedings.

fraudulently created these documents after the fact and back-dated them," only "[m]ere suspicions and unsupported theories." (Id. at 28-29.)

Accordingly, this Court held that X/Open was the lawful owner of the UNIX mark. (Id. at 27, 31, 33.)  This conclusion was obvious, as both Gray and his counsel knew or should have known as part of any minimal due diligence (especially Gray's counsel who reviewed the Confirmation Agreement *years* before this litigation).

Given X/Open's ownership of the UNIX mark, this Court:

(1)     Dismissed Gray's fraud on the PTO claims under the Lanham Act because the assignment of the UNIX mark to X/Open and the recordation of the assignment in the PTO was "lawful and valid."  (Id. at 31.)

(2)     Dismissed Gray's "false designation of origin" claim on the ground that Gray's allegations regarding X/Open's ownership of the UNIX mark did not support a cause of action for unfair competition with Gray's INUX business. (Id. at 32-33.)

(3)     Dismissed Gray's Florida RICO and Florida Communications Fraud Act claims (as well as federal RICO claims) because "the Court does not find evidence of any fraudulent concealment of [X/Open's] ownership," either before or after Novell's assignment of the UNIX mark to X/Open in 1998. (Id. at 33.)

(4)     Found that, "because Gray has not shown that he suffered any injury as a result of any of Defendants' alleged conduct . . . he therefore lacks standing to assert his RICO and Florida Communications Fraud Act claims."  (Id. at 34.)

(5)     Found that, because X/Open owned the UNIX mark, it was well within its

rights to oppose Gray's INUX mark in the TTAB.  (Id. at 32.)

In addition to prosecuting this litigation without any real factual support or evidence,

Gray turned to the same vexatious litigation strategy previously used with some success in

the TTAB opposition.[4]  As in the TTAB opposition, Gray delayed and multiplied this case by

filing meritless discovery and procedural motions, including:

(1)     A motion to declassify the 1996 Confirmation Agreement on the ground that

Gray needed unrestricted access to this document to prosecute his case (which

the Court denied) (Dkt. 38);

(2)     A motion to review the audio tape of the transcript of the hearing on Gray's

motion to declassify the Confirmation Agreement (Dkt. 57);

(3)     A motion to enter a protective order that lacked an "attorney's eyes only"

classification and required the defendants to create logs of their confidential

documents (which the Court denied opting, instead, to enter X/Open's and

Novell's proposed protective order) (Dkt. 65); and

(4)     A *pro se* motion to extend the case schedule by eight months and substitute

former counsel David Partlow for new counsel Thomas Steele on the ground

that Gray was unaware Mr. Partlow had failed to conduct *sufficient* discovery,

despite his intimate involvement in every aspect of the litigation and decision

to focus on frivolous confidentiality issues for much of the litigation (Dkt. 81).

---

[4] The TTAB has limited power to control vexatious litigation, having no power to award
attorneys' fees or costs.

Every motion could have been avoided had Gray simply entered into a standing protective order early in the litigation (as Defendants proposed).  Gray's needless filings required X/Open to spend significant time and money.

As in the TTAB opposition, Gray's litigation tactics also caused X/Open to spend substantial time and money in answering largely irrelevant discovery requests.  In addition to the hundreds of discovery requests Gray served in the TTAB opposition, Gray fished for information to support his far-fetched conspiracy, corrupt enterprise, and fraud claims with another 162 requests for admissions, 77 document requests, and 20 interrogatories.

Finally, as in the TTAB opposition, the excess number of declarations and exhibits attached to Gray's filings caused X/Open to expend substantial resources.  In all, Gray filed 2,300 pages of pleadings, motions, and exhibits in this litigation, including over 1,600 pages of summary judgment briefs and exhibits alone.  Reviewing and responding to these papers took substantial time and money.

As Gray's pleadings revealed, Gray was able to implement this vexatious litigation strategy through his counsel's surrogate signatures for Gray's filings.  As Gray's counsel represented to this Court, "Gray is an active participant in this proceeding, performing most of the fact research and preparing drafts of almost all of his documents and pleadings."  (Dkt. 38 at 2.)  Similarly, as Gray's counsel represented to this Court, Gray is "acting as [his own] trial preparation expert" and "litigation expert" in this case.  (Dkt. 65 at 2, 4, 8.)

III.    **Argument**

Gray's suit lacked any factual or legal merit, and was unreasonable, vexatious, and prompted by unbridled vengeance.  As such, an award of X/Open's attorneys' fees is warranted under the statutes discussed below.

A.      **X/Open is Entitled to Its Attorneys' Fees Under the Lanham Act**

Section 35 of the Lanham Act provides that "[t]he Court in exceptional cases may award reasonable attorneys' fees to the prevailing party."  15 U.S.C. § 1117(a).  This standard applies to prevailing defendants as well as prevailing plaintiffs.  Lipscher v. LRP Publications, Inc., 266 F.3d 1305, 1319 n. 10 (11th Cir. 2001) ("[T]he legislative history to the Lanham Act makes it clear that attorney's fees are also available to prevailing defendants in 'exceptional' cases."); S. Rep. No. 94-1400, 93rd Cong., 2d Sess. (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136-37 (noting the appropriateness of awarding attorneys' fees to prevailing defendants in exceptional circumstances because such awards, among other things, "would give defendants a remedy against unfounded suits.").[5]

To determine whether a case is "exceptional," the Eleventh Circuit looks to (1) the suit's objective legal merits and (2) the plaintiff's motivation in bringing the case.  Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335-36 (11th Cir. 2001) (finding case "exceptional" under Section 35 and awarding attorneys' fees to defendant where plaintiff failed to present "a scintilla of evidence" supporting elements of its Lanham Act claim and where the evidence showed plaintiff brought the lawsuit to gain leverage over

_____

[5] As Fourth Circuit has stated, "[a] prevailing defendant who has been wrongfully charged of [a Lanham Act violation] has only one source of restitution, recovery of attorneys' fees." Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 600 (4th Cir. 1992).

a competitor).  As to the plaintiff's motivation in filing the suit, courts generally hold that "*something less than bad faith*" is required.  <u>Vital Pharms., Inc. v. American Body Building Prods.</u>, 510 F. Supp. 2d 1043, 1045 (S.D. Fla. 2007) (citing <u>Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant</u>, 771 F.2d 521, 526 (D.C. Cir. 1985); <u>Hartman v. Hallmark Cards, Inc.</u>, 833 F.2d 117, 123 (8th Cir. 1982)).

As this Court held in its summary judgment decision, Gray's claims lacked any merit given the "*clear and unambiguous*" language of the Confirmation Agreement, which confirmed X/Open's ownership of the UNIX mark.  This clear and unambiguous language aside, Gray opted to argue that the agreement was a sham.  However, there was "*absolutely no evidence*" to support Gray's "suspicions" and "unsupported theories" on this point, as this Court held.  (Dkt. 162:  Feb. 20, 2009 Order at 28-29.)

Moreover, Gray's counsel knew (or should have known) this lawsuit lacked any factual or legal support long before it was initiated.  Instead, Gray's counsel abdicated his professional responsibilities and duties to litigant Gray.  Gray's former counsel David Partlow had access to the case-dispositive Confirmation Agreement in the TTAB opposition long before this lawsuit was filed.  He was obviously in a position to counsel Gray that his conspiracy theory lacked any factual or legal merit.  Gray's current counsel Thomas Steele likewise had access to the Confirmation Agreement from the outset of his representation and was similarly in a position to advise Gray of its significance.  Nonetheless, both of Gray's counsel allowed this lawsuit to proceed.  And both signed Gray's complaint, his motions, and/or his discovery requests.  In doing so, both either ceded control of this litigation to an

overzealous party plaintiff, or failed to undertake the proper legal due diligence required of members of the bar.

Further, Gray's claims were brought for improper purposes.  While Gray's allegations in this lawsuit are more "conspiracy"-based than in the TTAB opposition, his underlying claims concerning SCO's ownership of the UNIX mark were the same.  Thus, the motive behind Gray removing his dispute against X/Open from the TTAB to federal court was obviously to raise the stakes by adding X/Open licensees Novell and SCO as defendant "conspirators."

Gray's raise-the-stakes motivation was also evident from his ever-growing damage claims.  A reasoned damage claim would have been based on some estimate of Gray's alleged lost sales.  Gray never provided such evidence.  The handful of documents Gray produced to substantiate his damage claim showed that Gray *never* conducted any significant commercial activity under the INUX mark, and *never* commercially launched any product under the INUX mark.  Yet, Gray first claimed $4.5 million in damages, and later when settlement was obviously not forthcoming, upped that amount to a staggering $100+ million.  These claims were made without factual substantiation, even though they were either pled or verified by Gray and submitted under Gray's counsel's signature.

Given the frivolous nature of Gray's claims, Gray's counsel's prior knowledge of (or blindness to) their lack of merit, and the improper motives for filing this lawsuit, X/Open is entitled to reimbursement of its attorneys' fees under 15 U.S.C. § 1117(a).

**B.     X/Open Is Entitled to Its Attorneys' Fees Under the Florida RICO Act and the Florida Civil Remedies for Criminal Practices Act**

Under both the Florida RICO Act and the FCRCPA, litigants "shall be entitled to recover reasonable attorney's fees and costs . . . upon a finding that the claimant raised a claim that was without substantial fact or legal support."  Fla. Stat. §§ 895.05(7), 772.104(3).

Unlike the "exceptional case" standard under the Lanham Act, the attorneys' fee analysis under Florida RICO law focuses solely on the *objective* merits of the lawsuit.  Smith v. Viragen, Inc., 902 So.2d 187, 191 (Fla. Dist. Ct. App. 2005) (affirming award of attorneys' fees to defendant under Florida RICO law where plaintiff's complaint consisted of "one hundred-thirteen (113) paragraphs [of] repetition, conjecture, conclusions, and confusion" and "there was no record evidence to support any count of the complaint"); Foreman v. E.F. Hutton & Co., 568 So.2d 531, 532 (Fla. Dist. Ct. App. 1990) (affirming award of attorneys' fees to prevailing defendant and emphasizing that Section 772.104(3) operates disjunctively so as to make such awards appropriate whenever plaintiffs bring claims having an insufficient legal basis *or* lacking an evidentiary foundation).

As this Court held, Gray's Florida RICO and Florida Communications Fraud Act claims lacked any factual or legal support.  Despite 83 pages and 246 paragraphs of allegations in Gray's complaint, this Court found no evidence supporting Gray's conspiracy theory regarding SCO's ownership of the UNIX mark.  To the contrary, the case-dispositive Confirmation Agreement, as well as other evidence of record, flatly contradicted Gray's silver-screen allegations.  Further, one of the central elements of a civil RICO action is that the plaintiff must prove the defendant's actions directly or indirectly caused *injury* to the plaintiff's business or property.  Arabian Am. Oil Co. v. Scarfone, 713 F. Supp. 1420, 1421

14

(M.D. Fla. 1989).  Again, this Court found no evidence that X/Open's conduct caused Gray

to lose any "significant financial and other investments" in his INUX business.  Truth is,

Gray and his counsel never had a legitimate, objective factual basis to make these claims.

Accordingly, an award of X/Open's attorneys' fees is appropriate under Fla. Stat.

§§ 895.05(7) and Fla. Stat. 772.104(3).

### C.    X/Open is Entitled to Its Attorneys' Fees Under 28 U.S.C. § 1927

Under 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any

case unreasonably and vexatiously may be required by the court to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28

U.S.C. § 1927; Avirgan, 932 F.2d at 1582 (11th Cir. 1991).

The purpose of Section 1927 is to limit the abuse of court processes and discourage

dilatory litigation practices, and to sanction attorneys who engage in improper conduct.

Roadway Express, Inc. v. Piper, 447 U.S. 752, 762-63 (1990); Avirgan v. Hull, 932 F.2d

1572, 1582 (11th Cir. 1991); Smartt v. First Union National Bank, 245 F. Supp. 2d 1229,

1235 (M.D. Fla. 2003) ("Section 1927's purpose is to deter frivolous litigation and abusive

practices by litigants and to ensure that those who create unnecessary costs bear them.")

(citations omitted).

For a court to award attorney's fees under Section 1927, (1) the attorney must engage

in "unreasonable and vexatious" conduct, (2) such conduct must "multiply the proceedings,"

and (3) the dollar amount of the sanction must bear a financial nexus to the excess

proceedings (i.e., the sanction may not exceed the costs, expenses, and attorneys' fees

reasonably incurred because of the objectionable conduct).  American Honda Motor Co. v.

Motorcycle Information Network, 2008 WL 906739, at *11 (M.D. Fla. Apr. 2, 2008).

Further, a court may impose sanctions under Section 1927 even if the attorney acted *without* a specific bad-faith intent.  Id.

> **1.      The Conduct of Gray's Counsel Was Unreasonable and Vexatious**

The Eleventh Circuit has recognized that counsel's conduct is "unreasonable and vexatious" under Section 1927 when an attorney fails to abandon claims that discovery shows have no merit.  Avirgan, 932 F.2d at 1582 ("[F]iling a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence.  When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest.") (citations omitted).

The conduct of Gray's counsel (both attorneys David Partlow and Thomas Steele) was unreasonable and vexatious because they failed to control their client Gray from filing his complaint and from continuing to prosecute this lawsuit despite the case-dispositive Confirmation Agreement, which was provided long before this litigation was initiated. Instead, they acted as surrogate sign-offs for Gray's complaint, motions, and other papers.  In so doing, X/Open spent significant time and money in defending this litigation.

Additionally, it is clear Gray's counsel failed to conduct a pre-suit investigation into Gray's damage claims.  Even a cursory investigation would have revealed that Gray's INUX business never got off the ground.  As such, Gray could have suffered no damages.  Gray's attorney was obligated to counsel Gray that "injury" must stem from expected, unrealized sales to support his RICO claims.[6]  See Arabian Am. Oil Co. at 1421.

---

[6] See X/Open's Motion for Summary Judgment at 18-24.

### 2.     Gray's Counsel Needlessly Multiplied the Proceedings

In the Middle District of Florida, multiplication of proceedings may include abuse of discovery tactics, reassertion of meritless claims, and any other conduct resulting in the lengthening of trial proceedings.  <u>American Honda</u>, 2008 WL 906739, at *14-15 (where attorney continued litigating a claim even after discovery showed that the claim lacked any factual basis, the court held that the attorney's conduct was unreasonable and vexatious and unnecessarily multiplied the proceedings).

Here, Gray's counsel needlessly multiplied the proceedings in various ways.  As he did before the TTAB opposition, Gray's counsel (1) brought and maintained this litigation knowing of the case-dispositive Confirmation Agreement, (2) served hundreds of over-reaching and duplicative discovery requests, and (3) repeatedly filed meritless discovery motions (or acquiesced in Gray doing so).  As such, Gray's counsel delayed the resolution of this litigation and caused X/Open to spend substantial resources defending the lawsuit.

### 3.     The Misconduct of Gray's Counsel and X/Open's Attorneys' Fees are Related

Finally, X/Open's request for attorneys' fees bears the required nexus to the excess proceedings because *all* of these proceedings were unnecessary.  Given that Gray's counsel was familiar with the Confirmation Agreement from the TTAB opposition and given that Gray's counsel should have had access to any documents supporting Gray's alleged $100M+ injury claims, this lawsuit should not have been filed and X/Open should not have been

required to defend it.  As such, all of X/Open's attorney's fees were reasonably incurred because of the conduct of Gray's counsel.[7]

Accordingly, X/Open is entitled to its attorneys' fees under 28 U.S.C. § 1927.

### D.       X/Open's Estimate of Its Attorney's Fees

Pursuant to Fed. R. Civ. P. 54(d)(2)(B)(iii), X/Open estimates that its attorneys' fees in defending this litigation are approximately $956,000.

Pending the Court's decision on X/Open's motion, X/Open will provide the Court with a detailed breakdown of its attorneys' fees.

### E.       X/Open is Entitled to Reimbursement of Its Taxable Costs

The prevailing party is entitled to recover its costs under the Federal Rules of Civil Procedure.  X/Open is also entitled to recover its costs under the Florida RICO Act, Fla. Stat. § 895.05(7) and the FCRCPA, Fla. Stat. § 772.104(3).

X/Open's taxable costs under 28 U.S.C. § 1920 include "fees of the clerk" and "fees for . . . copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(1), (4).

X/Open has incurred $15,007.35 in such taxable costs.  Those costs are detailed and supported in the Bill of Costs that X/Open submitted to the Clerk of the Court simultaneously with this motion.

---

[7] Gray will undoubtedly argue that the amount of X/Open's attorney's fees is unreasonable. However, Gray set the stakes in this litigation, not X/Open.  As the Seventh Circuit aptly stated, "We have little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains because he was firing blanks."  Brandt v. Schal Associates, 960 F.2d 640, 648 (7th Cir. 1992).

**IV.     Conclusion**

For the reasons detailed above, X/Open respectfully requests that the Court grant X/Open's motion for attorney's fees and costs and hold both Gray and his counsel (former counsel David Partlow and current counsel Thomas Steele) jointly and severably responsible for payment of those fees and costs.

### <u>Local Rule 3.01(g) Certification</u>

On March 5, 2009, Gray's counsel indicated that he does not consent to the relief sought in X/Open's motion for attorneys' fees and costs.

Respectfully submitted,

Dated:  March 9, 2009

s/ Evan A. Raynes
Mark Sommers, Esq.
Evan A. Raynes, Esq.
FINNEGAN, HENDERSON, FARABOW,
     GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C.  20001-4413
Telephone:  202-408-4000
Facsimile:  202-408-4400
E-mail:  mark.sommers@finnegan.com
E-mail:  evan.raynes@finnegan.com

Attorneys for Defendant X/Open Company Limited

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 9, 2009, I electronically filed this document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Thomas T. Steele, <u>tsteele@steelelawgroup.com</u>;

William C. Guerrant, Jr., <u>wguerrant@hwhlaw.com</u>;

Karen C. Dyer, <u>kdyer@bsfllp.com</u>;

Fredrick H. L. McClure, <u>fredrick.mcclure@dlapiper.com</u>;

George R. Coe, <u>gcoe@bsfllp.com</u>;

E. Colin Thompson, <u>colin.thompson@dlapiper.com</u>;

Heather M. Sneddon, <u>hsneddon@aklawfirm.com</u>;

Thomas R. Karrenberg, <u>tkarrenberg@akalawfirm.com</u>;

Sarah M. Hammett, <u>shammett@steelelawgroup.com</u>; and

David L. Partlow, <u>dlppa@mindspring.com</u>.


s/ Evan A. Raynes