UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE R. GRAY,

        Plaintiff,

v.                                          CASE NO. 8:06-CV-1950-T-33TGW

NOVELL, INC., THE SCO
GROUP, INC., and
X/OPEN COMPANY LIMITED,

        Defendants.

_____

## REPORT AND RECOMMENDATION

        X/Open Company Limited ("X/Open") and the other defendants

prevailed in this lawsuit which alleged that they violated trademark and

racketeering laws and committed fraud in connection with ownership of the

federal trademark, UNIX. Defendant X/Open has filed a motion to recover

its attorneys' fees and costs incurred in defending this litigation (Doc. 164).

The motion was referred to me for a report and recommendation.

        X/Open has not demonstrated the exceptional circumstances

necessary for an award of attorneys' fees under the Lanham Act. It also has

not shown that plaintiff's counsel unreasonably and vexatiously multiplied

these proceedings to warrant an award of attorneys' fees personally against counsel pursuant to 28 U.S.C. 1927.

However, because the plaintiff's Florida Racketeer Influenced and Corrupt Organizations ("RICO") Act claims lack substantial factual support, X/Open is entitled to recover its attorneys' fees incurred in connection with these claims. Additionally, X/Open is entitled to its reasonable costs. Accordingly, I recommend that X/Open's Motion for Attorneys' Fees and Costs (Doc. 164) be granted to the extent that X/Open be awarded its reasonable attorneys' fees incurred in defending the Florida RICO claims, as well as its reasonable costs.[1]

I.

The facts of this case are set forth in the court's summary judgment Order (Doc. 161) and, therefore, they do not need to be repeated in detail here. In sum, this dispute arose after defendant X/Open opposed the plaintiff's use of, and his 1999 application to register with the Patent and

---

[1]This report and recommendation does not address the amount of the attorneys' fees and costs, which have not yet been fully briefed by the parties. In order to conserve the resources of the judiciary and the parties, it is appropriate to defer determination of these amounts pending resolution of the plaintiff's appeal.

Trademark Office ("PTO"), the trademark "iNUX" in connection with the plaintiff's computer software business.[2]

In April 2001, X/Open filed an administrative opposition to the plaintiff's trademark application with the Trademark Trial and Appeal Board ("TTAB"), alleging that the plaintiff's "iNUX" mark was confusingly similar to its valuable and famous "UNIX" trademark in the computer software industry. X/Open claimed ownership of the UNIX trademark based on a November 13, 1998, Deed of Assignment which purportedly assigned to X/Open "all [of defendant Novell, Inc.'s] property, right, title and interest in the [UNIX] mark[] with the business and goodwill attached to the said trade mark[]" (Doc. 86-9)("Deed of Assignment"). The Deed of Assignment was recorded with the PTO in June 1999 (id.).

However, the plaintiff alleges that he conducted an investigation which revealed that X/Open is not the legal owner of the UNIX trademark (see Doc. 161, p. 10). Specifically, he claims that Novell did not have rights in the UNIX trademark in 1998 and, therefore, the Deed of Assignment was

---

[2]The plaintiff commenced a computer software business in 1998, and the following year he began doing business as "iNUX" and introduced his first iNUX-brand product (see Doc. 1, p. 3; Doc. 161, pp. 8-9).

"legally meaningless" (see Doc. 146, p. 27). Thus, the plaintiff argued that Novell sold the UNIX and UnixWare trademarks, along with the business and good will attached to those marks, to the Santa Cruz Operation, Inc. ("SCO") in 1995 pursuant to an Asset Purchase Agreement ("APA") (Docs. 86-6; 86-7).[3] The APA gave SCO "right, title and interest in" the "[t]rademarks UNIX and UnixWare as and to the extent held by [Novell] (excluding any compensation [Novell] receives with respect of the license granted to X/Open regarding the trademark.") (id.). On December 6, 1995, a Bill of Sale was executed which consummated the transaction.

The plaintiff alleged further that the defendants engaged in a fraudulent scheme to conceal the true owner of the UNIX trademark so that Novell could develop confidentially a closed version of UNIX that would compete against Microsoft's software business (see Doc. 161, p. 10). In furtherance of this scheme, the plaintiff alleged that the defendants fraudulently created documents and falsely represented that X/Open was the owner of the UNIX trademark (see id., pp. 12-15).

---

[3]Defendant SCO Group and its predecessor in interest, The Santa Cruz Operation, Inc., will both be referred to as "SCO" in this report and recommendation, consistent with the summary judgment Order (Doc. 161, p. 4 n.4).

Consequently, the plaintiff filed this eleven-count lawsuit alleging that X/Open and the other defendants violated the Federal and Florida RICO Acts, 18 U.S.C. 1962 ( c), (d); Fla. Stat. §§895.03(3), (4); the Lanham Act, 15 U.S.C. 1120, 1125(a); and the Florida Communications Fraud Act ("FCFA"), §§817.034(4)(a), (b) (Doc. 1). The plaintiff also alleged claims of common law fraud and conspiracy to defraud (id.).[4] He sought millions of dollars in damages (id.).

The plaintiff, and defendants Novell and X/Open, filed cross motions for summary judgment (Docs. 85, 90, 146). X/Open argued in its motion for summary judgment that the plaintiff's claims, which were premised upon X/Open's lack of ownership of the UNIX trademark, fail because there is no genuine issue of material fact concerning whether it is the owner of the UNIX trademark (see Doc. 85, pp. 5-6). In this regard, X/Open argued that the UNIX trademark did not transfer to SCO under the APA because Novell had a prior obligation under a May 1994 Relicensing Agreement to transfer the UNIX trademark to X/Open (see id., pp. 7, 19).[5]

---

[4]The TTAB proceedings were suspended pending resolution of this case (see Doc. 161. p. 11).

[5]The May 1994 Relicensing Agreement provided X/Open with "an exclusive. perpetual. irrevocable license to use, and sub-license to third parties the use of" the UNIX

Further, the defendants argued that a 1996 Confirmation Agreement confirmed that Novell maintained ownership of the UNIX trademark for the purpose of assigning the trademark to X/Open (id., pp. 7, 20-21).

As pertinent here, the Confirmation Agreement stated that the 1995 APA conveyed the UNIX trademark to SCO "subject to rights and obligations established in a May 14, 1994 NOVELL-X/OPEN Trademark Relicensing Agreement"(Doc. 86-8). It further stated that, "notwithstanding any prior understandings to the contrary, NOVELL shall ... be considered the owner of legal title to the UNIX trademark" and that "assignment [of the UNIX trademark to X/Open] by NOVELL shall not be considered a breach of NOVELL's obligations under the APA" (id.).

X/Open additionally argued in its summary judgment motion that there was no evidentiary basis for the plaintiff's damage claim or fraud allegations (Doc. 85, p. 6). The plaintiff argued in his motion for summary judgment, among other things, that X/Open is not the lawful owner of the UNIX trademark because the Deed of Assignment which purportedly transferred rights in the trademark to X/Open was ineffectual (Doc. 146).

---

trademark, and it required Novell to assign the UNIX trademark to X/Open within three years (Doc. 86-5, pp. 7, 11).

United States District Judge Virginia M. Hernandez Covington found that X/Open was the lawful owner of the UNIX trademark, and granted summary judgment in favor of the defendants on all counts of the plaintiff's complaint (Doc. 161, pp. 27, 31-33). Thus, the district court held that "based on the clear and unambiguous language of the 1996 Confirmation Agreement ... the subsequent 1998 Deed of Assignment validly passed ownership of the UNIX trademark [from Novell] to X/Open as of November 13, 1998" (id., p. 27). The district court further found that the plaintiff's RICO and fraud claims lacked an evidentiary basis, and that the plaintiff lacked standing to bring the RICO and FCFA claims because he failed to show injury resulting from the defendants' alleged conduct (id., pp. 33-34). Judgment was entered accordingly (Doc. 162). The plaintiff has appealed this judgment (see Doc. 168). The appeal is presently pending before the Eleventh Circuit Court of Appeals.

Defendant X/Open has filed a Motion for Attorneys' Fees and Costs (Doc. 164). X/Open argues that the plaintiff's lawsuit "lacked any factual or legal merit, and was unreasonable, vexatious, and prompted by unbridled vengeance" (id., p. 15). The thrust of X/Open's fee motion is that

the 1996 Confirmation Agreement and 1998 Deed of Assignment establish that X/Open owns the UNIX trademark, and since plaintiff's counsel was aware of these documents prior to commencing litigation, this lawsuit was frivolous from the start. X/Open additionally argues that the plaintiff has not presented evidence of fraud, and there was no basis for the plaintiff's damage claim of millions of dollars.

X/Open seeks recovery of its attorneys' fees under the Lanham Act, 15 U.S.C. 1117(a); the Florida RICO Act, Fla. Stat. §895.05(7); the Florida Civil Remedies for Criminal Practices Act ("FCRCPA"), Fla. Stat. §772.104(3); and 28 U.S.C. 1927 (Doc. 164, p. 5). Costs are also requested in this motion (id.). The plaintiff filed memoranda in opposition to this motion (Docs. 178, 179). Oral argument was subsequently conducted on the motion (see Docs. 189, 191).

II.

X/Open argues first that it is entitled to attorneys' fees under Section 35 of the Lanham Act (Doc. 164, pp. 15-17), which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the

prevailing party." 15 U.S.C. 1117(a).[6] An exceptional case involves "acts which the courts have characterized as malicious, fraudulent, deliberate, and willful." Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 846-47 (11th Cir. 1983)(quoting S.Rep. No. 93-1400, 93rd Cong. 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 7132, 7136). Consequently, "the elements of bad faith or fraud must be present to support the grant of attorney's fees" under the Lanham Act. Burger King Corp. v. Mason, 710 F.2d 1480, 1495 n.11 (11th Cir. 1983), cert. denied, 465 U.S. 1102 (1984); see also Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1169 (11th Cir. 1982)(an award of attorneys' fees "should be made only in exceptional circumstances and on evidence of fraud or bad faith").[7]

Notably, this case involves a prevailing defendant. The Eleventh Circuit has said that the conduct that the court must assess in determining

---

[6]This standard applies to prevailing defendants as well as prevailing plaintiffs. Lipscher v. LRP Publications, Inc., 266 F.3d 1305, 1319 n. 10 (11th Cir. 2001).

[7]X/Open argues that "courts generally hold that something less than bad faith is required"for a fee award under the Lanham Act (Doc. 164, p. 12, quoting Vital Pharms, Inc. v. American Body Building Prods., LLC, 510 F. Supp.2d 1043, 1045 (S.D. Fla. 2007)). However, the Eleventh Circuit rejected this contention in Lipscher v. LRP Publications, Inc., supra, 266 F.3d at 1320, stating that "[w]e believe that under Safeway, the correct standard in the Eleventh Circuit is fraud or bad faith."

whether a case is exceptional depends upon which party prevails. <u>Welding Services, Inc.</u> v. <u>Forman</u>, 301 Fed. Appx. 862 (11th Cir. 2008)(unpub. dec.). When attorney's fees are claimed against a plaintiff, the court looks to the plaintiff's conduct in bringing the lawsuit and the manner in which it is prosecuted. <u>Id</u>. Thus, under the basic standard of "malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists," an award of attorney's fees to a prevailing defendant is justified when a plaintiff brought an obviously weak Lanham Act claim and the evidence shows that the plaintiff acted in bad faith and with an improper motive. <u>Id</u>. at 862-63.

Accordingly, in determining whether a case is exceptional warranting a fee award to a prevailing defendant, the Eleventh Circuit examines the objective merits of the claim and the plaintiff's subjective motivation. <u>See, e.g.</u>, <u>Tire Kingdom, Inc.</u> v. <u>Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332, 1336 (11th Cir. 2001)(exceptional case where the plaintiff failed to present sufficient evidence on four of the five Lanham Act elements, coupled with evidence of bad faith and improper motive); <u>Welding Services, Inc.</u> v. <u>Forman</u>, <u>supra</u>, 301 Fed. Appx. at 862-63 (exceptional case because it

was an "obviously weak Lanham Act claim and the evidence shows that the plaintiff acted in bad faith and with an improper motive"); Hughes Aircraft Co. v. Messerschmitt-Boelkow-Blohm GmbH, 625 F.2d 580, 584-85 (5th Cir. 1980), cert. denied, 449 U.S. 1082 (1981) (case not exceptional where plaintiff's contentions, although unsuccessful, were not so clearly meritless as to require a finding that they were made in bad faith). Moreover, "[e]ven if the court determines the case to be exceptional, the decision to award attorney fees is still within the court's discretion." Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., supra, 716 F.2d at 846-47.

X/Open has not shown that this is an exceptional case that warrants the imposition of attorneys' fees under the Lanham Act. First, the basis of the plaintiff's Lanham Act claims – that X/Open was not the lawful owner of the UNIX trademark – has not been shown to be groundless. Thus, albeit a losing argument, the plaintiff asserted a colorable contention that the 1998 Deed of Assignment, which purportedly transferred the UNIX trademark from Novell to X/Open, was ineffectual because Novell had previously sold its rights in that mark to SCO in 1995, and the 1996 Confirmation Agreement did not legally transfer the rights back to Novell.

Additionally, X/Open has failed to show that the plaintiff's lawsuit was fraudulent or motivated by bad faith.

A. As indicated, the dispositive issue on summary judgment regarding the Lanham Act claims was whether X/Open was the lawful owner of the UNIX trademark (see Doc. 161, pp. 23, 31-32; Doc. 191, p. 5).[8] In this connection, X/Open argues that the Confirmation Agreement "was all the evidence needed for [the plaintiff] to fully appreciate this lawsuit's lack of basis" (Doc. 164, p. 5; see also id., pp. 15-17).[9]

Specifically, X/Open argues that the Confirmation Agreement clearly stated that Novell had ownership rights in the UNIX trademark for the purpose of transferring the UNIX trademark and, therefore, X/Open indisputably acquired the UNIX trademark pursuant to the Deed of Assignment (see id., pp. 5, 16). X/Open contends that the frivolousness of the plaintiff's contention is underscored by the district court's finding that the

---

[8]At the hearing X/Open's counsel stated that the plaintiff's Lanham Act claims do not necessarily relate to the ownership itself due to the plaintiff's fraud allegations. However, at the hearing X/Open specified that, in its summary judgment motion, it "chose to attack [the plaintiff's] case on the founding fact that [the plaintiff] could not establish that X/Open did not own the trademark, and hence that's what the [district court's] decision was about" (Doc. 191, p. 5).

[9]The page numbers correspond to the page numbers assigned by the CM/ECF system, not the page numbers set forth on the bottom of the parties' memoranda.

-12-

1996 Confirmation Agreement was "clear and unambiguous" (id., pp. 5-6, 16).

In evaluating the merit of the plaintiff's challenge to the ownership of the UNIX trademark, it is necessary to examine the basis for the plaintiff's contention that Novell transferred its rights in the UNIX trademark to SCO pursuant to the 1995 APA. As pertinent here, the APA provided that Novell transferred to SCO "right, title and interest in" the "[t]rademarks UNIX and UnixWare as and to the extent held by [Novell] (excluding any compensation [Novell] receives with respect of the license granted to X/Open regarding the trademark.") (Doc. 86-6, pp. 10-11; Doc. 86-7, p. 30). Additionally, the APA listed as assets excluded from purchase "[a]ll copyrights and trademarks, except for the trademarks UNIX and UnixWare" (Doc. 86-7, p. 33).[10] Therefore, there is support in the language of the APA for the plaintiff's contention that the UNIX trademark was sold to SCO under the APA.

_____

[10]There were two amendments to the APA (see Doc. 161, pp. 5, 7). The district court stated that Amendment 1 did not alter any provisions of the APA relating to trademarks (id., p. 5). Further, it did not find that the second amendment modified the rights or obligations of the parties under the APA (id., pp. 24-25).

Additionally, the plaintiff cites to comments made by the Utah district court regarding assets that were transferred pursuant to the APA in the unrelated lawsuit of The SCO Group, Inc. v. Novell, Inc., 2007 WL 2327587 (D. Utah 2007), rev'd in part, 578 F.3d 1201 (10ᵗʰ Cir. 2009) ("The Utah case") (see Docs. 123, 125, 126, 146). In the Utah case, SCO alleged that Novell breached the 1995 APA by failing to convey the copyrights for UNIX-brand software. However, in analyzing this issue, the Utah district court commented several times that the UNIX trademark was transferred to SCO under the APA. Thus, the Utah court stated that "Schedule 1.1(a) provides that the ... intellectual property [SCO] was acquiring were the UNIX and UnixWare trademarks" and that "Schedule 1.1(b) clearly distinguished UNIX and UnixWare trademarks as assets being transferred." The SCO Group, Inc. v. Novell, Inc., supra, 2007 WL 2327587 at **27, 28; see also id. at **7, 29, 30.

Further, in discussing a press release that stated SCO "will acquire Novell's UnixWare business and UNIX intellectual property," the Utah court noted that "[i]t is undisputed that trademarks did transfer." Id. at *7. The Utah district court also mentioned in its decision minutes of a

September 1995 meeting of Novell's Board of Directors which documented the Board's resolution that, under the APA, "Novell will retain all of its patents, copyrights and trademarks (except for the trademarks UNIX and UnixWare)." Id.

Although, as discussed in the summary judgment Order (Doc. 161, pp. 29-30), these comments are dicta, they are nonetheless probative of whether the plaintiff's contention is frivolous. Thus, if a federal district court construes the APA as transferring the UNIX trademark to SCO, then it is arguably a reasonable position for a litigant to maintain. See American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc., 185 F.3d 606, 625 (6th Cir.1999)("[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate"). In other words, although this court discounted the comments by the Utah court as non-binding dicta, a litigant could reasonably have concluded otherwise and given the comments weight in deciding whether to sue.

X/Open argued that the UNIX trademark did not transfer under the APA because the APA's limiting language "as and to the extent held by

[Novell]" made the APA subject to the May 1994 Relicensing Agreement between Novell and X/Open which granted X/Open "an exclusive, perpetual, irrevocable license to use, and sub-license to third parties the use of" the UNIX trademark, and required Novell to assign the UNIX trademark to X/Open within three years (see Doc. 85, p. 19). Moreover, X/Open argued that this intention is confirmed in the 1996 Confirmation Agreement, which specified that the 1995 APA conveyed the UNIX trademark to SCO "subject to the rights and obligations established" in the May 1994 Relicensing Agreement (see id., pp. 20-21; Doc. 164, pp. 5, 7).

The plaintiff responded that the May 1994 Relicensing Agreement did not vest title in X/Open because it was merely a promise to transfer the marks in the future if certain conditions were met (Doc. 126, pp. 9-10; Doc. 146, pp. 6-7, 16; Doc. 179, pp. 8, 11-12). See Gaia Technologies, Inc. v. Reconversion Technologies Inc., 93 F.3d 774, 779 (Fed. Cir. 1996)(an agreement to assign is not an assignment and thus did not vest legal title); Li'l Red Barn, Inc. v. Red Barn System, Inc., 322 F. Supp. 98, 107 (N.D. Ind. 1970), aff'd, 1972 WL 18062, 174 U.S.P.Q. 193 (7th Cir. 1972)("a mere agreement for the future assignment of a trademark is not an assignment of

either the mark itself or the good will attached to it."). Consequently, the plaintiff argued that the May 1994 Relicensing Agreement did not preclude the transfer of the UNIX trademark to SCO under the APA. See id. Further, the plaintiff argued that the 1996 Confirmation Agreement failed to establish that the UNIX trademark did not transfer to SCO under the 1995 APA because it was a stand-alone agreement executed one year after the APA and, therefore. it was merely an ineffective attempt to undo the effects of the APA (see Doc. 126, pp. 10-11; Doc. 146, pp. 19-20; Doc. 179, pp. 13-14, 16).

Significantly, in the summary judgment Order, the district court stated that "the language of the APA was not specific regarding what limitations on transfer of the UNIX marks were intended by the phrase 'to the extent held by Seller'"(Doc. 161, p. 30). Consequently, the district court declined to decide this issue, stating that "it is not necessary to determine to what extent the rights in the UNIX marks transferred to SCO under the 1995 APA...." (see id.). The district court's statements underscore the difficulty of this issue, so that the plaintiff's contention that the UNIX trademark transferred to SCO pursuant to the 1995 APA was not unfounded.

X/Open argues that, regardless of whether the mark transferred under the APA, the "clear and unambiguous" Confirmation Agreement provided that Novell retained ownership of the UNIX trademark in order to transfer the mark to X/Open, thereby establishing as frivolous the plaintiff's contention that X/Open is not the owner of the UNIX trademark (see Doc. 164; see also Doc. 85). Thus, the Confirmation Agreement provides that, "notwithstanding any prior understandings to the contrary, NOVELL shall ... be considered the owner of legal title to the UNIX trademark" and that "assignment [of the UNIX trademark] by NOVELL [to X/Open] shall not be considered a breach of NOVELL's obligations under the APA" (Doc. 86-8, p. 2). Further, as indicated, the district court held that the 1996 Confirmation Agreement granted Novell the legal authority to transfer ownership of the UNIX trademark to X/Open in the Deed of Assignment (Doc. 161, pp. 25-26).

However, the plaintiff contends that it colorably argued that the Confirmation Agreement is legally meaningless because it did not comply with the Lanham Act requirements for trademark assignment (See Doc. 126, pp. 10-13; Doc. 146, pp. 17-18, 27; Doc. 179, pp. 12, 14).[11] In this regard, the

[11]Furthermore, it is noted that the court's statement that the language of the 1996 Confirmation Agreement was "clear and unambiguous" is a legal conclusion which guides

plaintiff emphasizes that an assignment must conform to the requirements of Section 90 of the Act, *i.e.*, it must be in writing, duly acknowledged, and have been assigned in connection with the good will of the business in which the mark was used (Doc. 179, pp. 7-8). See 15 U.S.C. 1060(a)(1)("A registered mark ... shall be assignable with the good will of the business in which the mark is used...."); Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999)("[A] trademark cannot be sold or assigned apart from the goodwill it symbolizes....[and t]he sale or assignment of a trademark without the goodwill that the mark represents is characterized as in gross and is invalid."); Mister Donut of America, Inc. v. Mr. Donut, Inc., 418 F.2d 838, 842 (9th Cir. 1969)(no rights in a trademark alone and no rights can be transferred apart from the business with which the mark has been associated); see, e.g., Doc. 86-9 (the Deed of Assignment assigned to X/Open "all [of Novell's] property, right, title and interest in the [UNIX] trademark[s] with the business and goodwill attached to" the UNIX trademark).

---

the court's construction of a contract, see United States v. King Features Entertainment, Inc., 843 F.2d 394, 398 (9th Cir. 1988) and, therefore, does not necessarily mean that a contrary interpretation is frivolous.

The plaintiff argues that in this case the APA and the Bill of Sale "operated to transfer the U.S. 'UNIX' Marks to [SCO], along with the good will and entire 'UNIX' business associated with those Marks, yet neither Novell nor X/Open can point to any documented transaction where [SCO] ... transferred those Marks, along with the business or good will associated with those Marks, back to Novell" (Doc. 179, p. 3; see also Docs. 126, 146). Specifically, the plaintiff contends that nowhere in the Confirmation Agreement does SCO agree to transfer the UNIX trademark back to Novell or mention a transfer of the good will and business associated with the trademark (Doc. 179, pp. 3, 13). Therefore, the plaintiff argued that, "after the execution and delivery of the ... Confirmation Agreement, [SCO] still owned the U.S. 'UNIX' Marks" and "Novell had nothing to transfer and X/open received nothing by way of that 'deed of assignment'" (Doc. 146. pp. 17-18 (internal quotations omitted); see also Doc. 179, pp. 7-9, 13-14).

X/Open does not refute the plaintiff's contention that, if the trademark passed to SCO under the APA, the Confirmation Agreement did not satisfy Lanham Act requirements to transfer the UNIX trademark back to Novell (see Doc. 164). This is fatal to X/Open's argument that the plaintiff

frivolously alleged that X/Open is not the owner of the UNIX trademark. Thus, because the plaintiff made a colorable argument that the UNIX trademark transferred from Novell to SCO pursuant to the APA, X/Open also had to establish as meritless the contention that the trademark was not legally transferred back to Novell. See American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc., supra, 185 F.3d at 625 ("[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate").

In sum, the plaintiff's claims of Lanham Act violations, although not meritorious, have not been shown to be groundless. The unclear language of the APA provided room for argument regarding whether the trademark was transferred to SCO, the Utah court's comments express the view that it was transferred, and X/Open failed to answer the plaintiff's argument that, if it had been transferred, it could not be transferred back by the Confirmation Agreement. The conclusion that the plaintiff had a colorable argument, while not defeating X/Open's claim for attorneys' fees, substantially undercuts it.

B. As indicated, the second factor in determining whether a Lanham Act claim is exceptional and warrants a fee award is the plaintiff's

-21-

subjective motivation. This inquiry focuses on whether the plaintiff's conduct was fraudulent or in bad faith. See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., supra, 675 F.2d at 1169.

There is no discernable allegation in the fee request that the plaintiff's conduct was fraudulent. There certainly was no such showing. Consequently, a fee award cannot be based upon fraudulent conduct.

Accordingly, a fee award can be supported only by a showing that the plaintiff acted in bad faith. Subjective bad faith is conduct undertaken with dishonesty of belief or purpose. See *Black's Law Dictionary* (6th ed.) (abridged), p. 94. The Eleventh Circuit also characterizes the requisite conduct as "malicious," "deliberate," or "willful." Lone Star Steakhouse & Saloon v. Longhorn Steaks, Inc., 106 F.3d 355, 363 (11th Cir. 1997); Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1205 (11th Cir. 2001).

There is no evidence that the plaintiff did not have a good faith belief in his Lanham Act claims. As discussed, the plaintiff identified with particularity the legal basis for his belief that the UNIX trademark chain of title was faulty and, although he did not prevail, X/Open has not shown that

-22-

this contention was baseless.[12]  Furthermore, the Utah district court's statements that the trademark transferred to SCO under the APA, and acceptance of his case by two intellectual property attorneys, further gave the plaintiff reason to believe that his Lanham Act claims were not groundless.

Moreover, there is substantial evidence that this lawsuit was motivated by the plaintiff's truly-held belief that the defendants had wronged him.  As the district court stated (Doc. 161, p. 15):

> It is Gray's belief that Defendants intentionally destroyed his iNUX business property and professional reputation to ensure that the iNUX mark and domain names would only be associated with ... the Defendants.

This belief, however misguided, is repeated throughout the plaintiff's affidavits, complaint, and memoranda (see, e.g., Doc. 1, ¶166; Doc. 123, pp. 14-15; Doc. 124, p. 3; Doc. 127, pp. 5, 6).

X/Open's counsel conceded at the hearing that it "can't understand" the reasons the plaintiff brought this litigation (Doc. 191, p. 17). X/Open speculates in its memorandum that the plaintiff was improperly

---

[12]The plaintiff's extraordinary participation in this action (see Doc. 38, p. 2)(the plaintiff "is an active participant in this proceeding, performing most of the fact research and preparing drafts of almost all of his documents and pleadings") also suggests that the plaintiff held a subjective good faith belief in his claims.

motivated to file this lawsuit in order to "extort a handsome monetary payoff" (Doc. 164, p. 6). In support of this contention, X/Open points to two circumstances: the filing of this lawsuit while the TTAB action was pending, and the plaintiff's exorbitant damage claim, which, during the litigation, reached one hundred million dollars (id., p. 17).

However, the filing of this lawsuit while the TTAB proceeding was pending is not persuasive evidence of an improper motive, as this lawsuit included additional parties and claims not before the TTAB, and it would have afforded relief that was not available in the TTAB action. Thus, this lawsuit was not merely duplicative of the TTAB proceeding.

Further, the plaintiff's grandiose damage claim does not establish that the underlying suit was brought in bad faith. As indicated, this is not a circumstance where there was no basis for the underlying dispute regarding trademark ownership. Further, X/Open has not presented legal authority that an exorbitant damage claim is, in itself, sufficient to establish bad faith in these circumstances. Moreover, the plaintiff's willingness during TTAB settlement negotiations to resolve the trademark opposition without any monetary settlement militates against a finding that extortion motivated the

filing of this lawsuit (see Doc. 127, pp. 5-6).[13] Thus, the circumstances, in totality, do not show that the plaintiff acted in bad faith, or that he was otherwise motivated by an improper intent. See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., supra.

In summary, X/Open has not established that this is an extraordinary case warranting a fee award under the Lanham Act because X/Open failed to establish that the plaintiff's Lanham Act claims were objectively baseless and that the plaintiff acted in subjective bad faith. I therefore recommend that X/Open's request for attorneys' fees under the Lanham Act be denied.

III.

X/Open also seeks to recover attorneys' fees incurred in defending against the plaintiff's allegations of racketeering and fraud in violation of the Florida RICO Act (Doc. 164, pp. 5, 18-19).[14] Recovery of

---

[13]During the TTAB proceedings, the plaintiff was willing to resolve X/Open's opposition to his trademark application by agreeing to phase out his use of his iNUX mark. The negotiations between the plaintiff and X/Open ultimately failed (see Doc. 127, pp. 5-6; Doc. 161, p. 10 & n.6). Although these settlement negotiations occurred under different circumstances, it is nonetheless probative of the plaintiff's subjective intent.

[14]X/Open does not argue that it is entitled to fees pursuant to the federal RICO statute, and case law does not support such an award. See Sullivan v. Hunt, 350 F.3d 664, 665-66 (7th Cir.2003)(provision of federal RICO allowing for award of costs and attorney

attorneys' fees under this statute is provided for in the FCRCPA.[15] See Fla. Stat. §772.104.

The FCRCPA provides that a defendant "shall be entitled to recover reasonable attorney's fees and costs ... upon a finding that the claimant raised a claim that was without substantial fact or legal support." Fla. Stat. §772.104(3).[16] Thus, the standard for awarding fees under the FCRCPA, which lacks a subjective component, is less stringent than under the Lanham Act.

The Eleventh Circuit discussed this standard in Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1330-31 (11th Cir. 1998)(internal citations omitted):

---

fees to prevailing plaintiffs does not provide remedy for defendants).

[15]X/Open seems to be seeking fees for defending claims based upon the FCFA. See Doc. 164, pp. 18-19. That is a criminal statute, however, and it does not contain any provision for civil remedies, much less for attorneys' fees incurred in connection with civil actions. See Fla. Stat. §817.034. Moreover, X/Open has not developed an argument that attorneys' fees are authorized for defending FCFA claims. Accordingly, it has failed to establish that it is entitled to attorneys' fees with respect to the FCFA claims, except to the extent that the time expended on the claims also involved the RICO claims.

[16]X/Open notes that the standard for attorneys' fees in the RICO statute is the same. See Fla. Stat. §895.05(7). That statute, however, appears to limit fees to actions brought by the State, its agencies, subdivisions and municipalities. Id. Accordingly, X/Open's remedy would be under the FCRCPA.

The Florida courts have explained that in awarding fees to a defendant under chapter 772.104, "it is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support." This standard is less stringent than the standard for awarding attorneys' fees under other Florida statutory provisions, such as chapter 57.105, which allows for an attorneys' fee award in any civil action that is found to have been brought frivolously or in bad faith....The intent of the Florida legislature in adopting this less stringent standard was "to discourage frivolous RICO claims or claims brought for the purpose of intimidation because the stigma and burden of defending such claims is so great." Accordingly, the Florida courts consistently have held that "defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor," and have explained that "a defendant may still be entitled to fees on the RICO count even if the plaintiff ultimately prevails on other counts."

The plaintiff's racketeering and fraud claims were based on the defendants' purported fraudulent scheme to conceal the true owner of the UNIX trademark from him and the public (see Doc. 1; Doc. 161, p. 33). In furtherance of this scheme, the plaintiff argued that the defendants falsely stated or implied in documents and computer web postings that X/Open owned the UNIX trademark, and that the defendants created false backdated

documents to support a fraudulent chain of title for the UNIX trademark

(Doc. 1). In particular, the plaintiff contended:

- The 1996 Confirmation Agreement was"backdated and was created and/or executed after 1996 for the purpose of concealing Novell's fraud upon the software industry, namely its continuing UNIX marks ownership after 1993 and its 1995 APA UNIX marks transfer to [SCO]" (id., p. 17).

- The November 13, 1998, Deed of Assignment was "a backdated document created and/or executed after 1998 for the purpose of criminally influencing the outcome of anticipated future official proceedings" (id., p. 23).

- The May 1994 Relicensing Agreement between Novell and X/Open was used to "falsely imply and/or state publicly that X/Open owned the UNIX marks in and after 1993" to conceal Novell's continuing ownership of those trademarks (id., p. 7).

As X/Open points out, the conspiracy theories were alleged on

"information and belief" without any concrete supporting facts (Doc. 164, p.

10). The district court agreed that there was no substantial evidence to

support the plaintiff's fraud and conspiracy theories. Thus, the district court

stated that it "finds no basis to conclude that Defendants engaged in a course

of fraudulent conduct designed to mislead the public as to the UNIX marks'

true owner" (Doc. 161, p. 34). Additionally, the district court specified that,

with regard to the defendants' conduct before November 1998, "the Court

does not find evidence of any fraudulent concealment of ... ownership" (id., p. 33). Moreover, with regard to specific alleged fraudulent documents, the district court held (id., pp. 28-29):

> [The plaintiff] offers absolutely no evidence to support his allegation that Defendants fraudulently created [the Confirmation Agreement and Deed of Assignment] after the fact and back-dated them in an effort to validate the 1999 recording of assignment with the PTO. Mere suspicions and unsupported theories are not enough to create a triable issue of fact.

Further, the district court stated that "[t]here is nothing fraudulent" about the defendants' representations to the public that "UNIX is a registered trademark in the United States and other countries, licensed exclusively through X/Open Company Ltd." because UNIX was a registered trademark and the May 1994 Relicensing Agreement between Novell and X/Open gave X/Open an exclusive right to sub-license the UNIX trademark (id., pp. 33-34, citing Doc. 1, ¶¶36-39, 41-46).

Thus, the district court apparently found that the plaintiff's allegations of a fraudulent conspiracy were baseless. In all events, it certainly indicated that they lacked substantial factual support. See Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc., supra, 162 F.3d at 1330,

("[I]t is not necessary that the court find a complete absence of a justiciable issue of either law [or] fact. The trial court must only find that the claim lacked substantial fact or legal support."); <u>see also</u> <u>Foreman</u> v. <u>E.F. Hutton & Co., Inc.</u>, 568 So.2d 531, 532 (Fla. App. 1990)(attorneys' fees are warranted when a Florida RICO claim "lack[s] an evidentiary foundation").

The plaintiff's opposition memorandum does not even acknowledge the district court's factual findings in this regard, but rather re-argues the contentions already rejected by the district court (Doc. 179, pp. 17-18). Consequently, the plaintiff has not even meaningfully attempted to refute the appropriateness of fees under the FCRCPA.

In sum, in granting summary judgment on the Florida RICO claims, the district court found that the plaintiff's claims lacked a substantial factual basis. This finding entitles X/Open to an award of reasonable attorneys' fees in defense of these claims. <u>See</u> Fla. Stat. §772.104(3); <u>Johnson Enterprises of Jacksonville, Inc.</u> v. <u>FPL Group, Inc.</u>, <u>supra</u>, 162 F.3d at 1331 ("the Florida courts consistently have held that defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with

prejudice...").[17] Of course, fees awarded under the FCRCPA are limited to work performed defending the Florida RICO claims, and the fee petition must be tailored accordingly.

## IV.

X/Open also seeks to assess attorneys' fees personally against plaintiff's attorneys, former counsel David Partlow, and present counsel Thomas Steele, pursuant to 28 U.S.C. 1927 (Doc. 164, pp. 20-22).[18] Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[17]The district court also found that the plaintiff lacked standing to bring the RICO claims "because Gray has not shown that he suffered any injury as a result of any of Defendants' alleged conduct, before or after the 1998 deed of assignment" (Doc. 161, pp. 34, 35). However, because the plaintiff asserted a good faith legal basis for his assertion that a racketeering injury was not necessary (see Doc. 179, p. 5; RLS Business Ventures, Inc. v. Second Chance Wholesale, Inc., 784 So.2d 1194, 1196 (Fla. App. 2001)). the district court's finding that the plaintiff lacked standing under the RICO Act is not recommended as a basis for an award of fees.

[18]It is noted that the defendants do not base a claim for attorneys' fees against plaintiff's counsel upon either Rule 11, F.R.Civ.P., or the court's inherent authority. Accordingly, those grounds for attorneys' fees will not be considered.

Accordingly, as X/Open acknowledges (Doc. 164, p. 19), it must establish (Peterson v. BMI Refractories, 124 F.3d 1386, 1396 (11th Cir. 1997)(internal citations omitted):

> First, [that] the attorney ... engage[d] in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct ... "multiplie[d] the proceedings." Finally, the dollar amount of the sanction must [be shown to] bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Further, this provision, being penal in nature, must be strictly construed. Id. at 1395.

By its terms, § 1927 only applies to conduct that is both unreasonable and vexatious. The element of unreasonableness indicates an objective standard for evaluating the challenged actions, and vexatiousness reflects a subjective component. As pertinent here, "vexatious" is defined as "lacking justification and intended to harass." *Webster's Third New International Dictionary (Unabridged)* (1981), p. 2548. Consequently, § 1927 only covers the actions of those "who willfully abuse judicial process by

conduct tantamount to bad faith." Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991), cert. denied, 502 U.S. 1048 (1992).

The thrust of X/Open's argument is that plaintiff's counsel abdicated control of the litigation to the plaintiff, who is not an attorney. X/Open argues that, as a result, these proceedings were unnecessarily multiplied by (1) the pursuit of frivolous claims which the Confirmation Agreement established were baseless and (2) voluminous discovery requests and meritless discovery motions which were made possible by counsel serving as a "surrogate sign-off" (Doc. 164, pp. 6, 20-21).[19] X/Open seeks an award of all of its attorneys' fees, arguing that the entire lawsuit is connected to the purported unreasonable and vexatious conduct of plaintiff's counsel (id., pp. 21-22).

X/Open's contentions fail to state a cognizable basis for imposing against plaintiff's counsel attorneys' fees pursuant to §1927. As discussed above, although the Confirmation Agreement was dispositive of this case, X/Open has not established that the Confirmation Agreement

---

[19]X/Open also argues that counsel failed to conduct a pre-suit investigation into the plaintiff's damage claims (Doc. 164, p. 20). This contention is not sufficiently developed in X/Open's §1927 argument. Further, this type of conduct would seem more suited for a Rule 11 motion than §1927.

-33-

rendered the plaintiff's trademark ownership claim, which is the basis of his lawsuit, frivolous.

Further, X/Open has failed to adequately develop its contention, as a matter of fact or law, that attorneys' fees should be personally assessed against plaintiff's counsel due to allegedly overreaching discovery requests and meritless discovery motions. In this regard, X/Open identified three discovery motions that it contends could have been avoided if the plaintiff entered into a protective order early in the litigation, and an allegedly needless motion to extend the case schedule (id., pp. 13-14). These actions are patently insufficient to impose the drastic and extraordinary remedy of assessing attorneys' fees personally against counsel, and X/Open does not provide any legal authority supporting the imposition of §1927 fees in such a circumstance.

X/Open also argues that the plaintiff's discovery was an overreaching fishing expedition because he served "162 requests for admissions, 77 document requests, and 20 interrogatories" (id., p. 14). This amount of discovery, which is not even extraordinary, clearly does not rise to the level of vexatiousness that would support an award of fees against counsel

under §1927. The appropriate remedy for abusive discovery is pursuant to Rule 37, F.R.Civ.P.[20]

Finally, X/Open points out that there were "2,300 pages of pleadings, motions and exhibits in this litigation, including over 1,600 pages of summary judgment briefs and exhibits alone" (Doc. 164, p. 14). However, merely asserting these page numbers does not suffice to establish unreasonable and vexatious litigation, especially here where there were multiple summary judgment cross-motions on complex issues. In sum, X/Open failed to show that plaintiff's counsel unreasonably multiplied the proceedings.

X/Open, furthermore, has not shown that plaintiffs' counsel's conduct was "vexatious." 28 U.S.C. 1927. Thus, X/Open made no cogent argument, and presented no probative evidence, that plaintiff's counsel's actions were intended to harass X/Open or that their conduct was tantamount to bad faith.

---

[20]In its fee motion, X/Open discussed in some detail the TTAB proceedings (see Doc. 164, pp. 7-9) to illustrate that discovery in this case was excessive because it was duplicative of discovery in the TTAB action (id., p. 14). However, §1927 pertains to the unnecessary multiplication of the federal lawsuit, and X/Open has not provided any legal authority that this court should take into consideration the TTAB proceedings in determining whether sanctions are appropriate under §1927.

The closest X/Open comes to improper conduct that could be construed as vexatious is the contention that counsel abdicated their role and acted like a surrogate sign-off for the plaintiff. In this connection, X/Open quoted a statement by former counsel David Partlow that the plaintiff "is an active participant in this proceeding, performing most of the fact research and preparing drafts of almost all of his documents and pleadings" (Doc. 164, p. 14). However, Partlow clarified that this work was done "with oversight by his undersigned counsel"(see Doc. 165-8, p. 3). Consequently, X/Open's contention that the plaintiff acted with "loose (or no) oversight" (Doc. 164, p. 6) is not adequately substantiated. Moreover, this statement pertains to former counsel's role in this case, and X/Open has not presented any probative evidence of vexatious conduct by attorney Steele.

Finally, X/Open's request for fees under §1927 also fails to meet the third prong of this standard, which requires the movant to show that the dollar amount of the sanction bears a financial nexus to the excess proceedings. See Peterson v. BMI Refractories, supra, 124 F.3d at 1396. In this connection, X/Open has sought recovery of all of its attorneys' fees, but it has completely failed to show that some, much less all, of its attorneys' fees

are related to sanctionable conduct by plaintiff's counsel (Doc. 164, pp. 21-22).

For the foregoing reasons, X/Open has failed to show that attorneys' fees against plaintiff's counsel are warranted under §1927. Accordingly, I recommend that X/Open's request that attorneys' fees be assessed against plaintiff's counsel pursuant to §1927 be denied.

## V.

Finally, X/Open seeks an award of costs pursuant to Rule 54(d), F.R.Civ.P., and 28 U.S.C. 1920; the Florida RICO Act, Fla. Stat. §895.05(7); and the FCRCPA, Fla. Stat. §772.104(3) (Doc. 164, p. 22). Rule 54(d)(1), F.R.Civ.P., provides that a prevailing party is entitled to costs enumerated in 28 U.S.C. 1920. Further, the FCRCPA provides that a litigant may recover costs when the opposing party has asserted a RICO claim without substantial factual or legal basis. Fla. Stat. §772.104(3).

The plaintiff does not deny that, as a prevailing party, X/Open is entitled to an award of its costs under Rule 54(d), F.R.Civ.P. (see Doc. 178). Further, the plaintiff's opposition memorandum does not mention X/Open's other basis for claiming costs, which is Fla. Stat. §772.104(3).

Consequently, it is assumed that the plaintiff does not disagree that X/Open is entitled to recovery of its costs under this statute upon a finding that the RICO claims lacked a substantial basis. See Local Rule 3.01(b) (the party opposing a motion shall file a response that includes a memorandum of legal authority in opposition to the request).

Rather, the crux of the plaintiff's argument in opposition to an award of costs is that X/Open seeks costs that are not recoverable (Doc. 178). In this connection, X/Open has been afforded an opportunity to reply to the plaintiff's objections within twenty days after resolution of the appeal (Doc. 191, pp. 62-63). Accordingly, I recommend that X/Open be awarded its reasonable costs pursuant to Rule 54(d)(1), F.R.Civ.P., and Fla. Stat. §772.104(3), with the amount of the costs to be determined after the appeal is resolved.

## VI.

In conclusion, X/Open sought an award of attorneys' fees pursuant to the Lanham Act, 15 U.S.C. 1171(a); the Florida RICO Act, Fla. Stat. §895.05(7); the FCRCPA, Fla. Stat. §772.104(3); and 28 U.S.C. 1927. As discussed, X/Open has shown that it is entitled to an award of attorneys'

fees incurred in defending the plaintiff's claims that it violated the Florida RICO Act. Further, X/Open is entitled to its costs pursuant to Rule 54(d)(1), F.R.Civ.P., and Fla. Stat. §772.104(3). However, X/Open has not established entitlement to attorneys' fees under the Lanham Act or 28 U.S.C. 1927. Further, in order to conserve the resources of the judiciary and the parties, the determination of the amount of attorneys' fees and costs should be deferred until after the resolution of the appeal.

Accordingly, I recommend that X/Open's Motion for Attorneys' Fees and Costs (Doc. 164) be granted to the extent that X/Open is entitled to recover its reasonable attorneys' fees incurred in defending the Florida RICO Act claims, and its reasonable costs pursuant to Rule 54(d)(1), F.R.Civ.P., and Fla. Stat. §772.104(3). It is further recommended that the determination of the amount of the fees and costs be deferred pending resolution of the appeal. In all other respects, I recommend that the motion be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: FEBRUARY 22, 2010

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. 636(b)(1).