UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE R. GRAY,

       Plaintiff,

v.

                            Case No. 8:06-CV-1950-T-33TGW

NOVELL, INC., THE SCO
GROUP, INC., and
X/OPEN COMPANY LIMITED,

       Defendants.

_____

## O R D E R

Defendant X/Open, who prevailed on summary judgment on all eleven counts of the plaintiff's complaint, and was awarded its reasonable attorneys' fees incurred in defending the Florida RICO Act claims, has filed a Motion for Determination of Attorney Fee Amount (Doc. 262). X/Open asserts that it is entitled to attorneys' fees of $840,537, which encompasses the defense of all counts of the complaint, because all of the claims were inextricably intertwined. The plaintiff opposes the motion (Doc. 269), arguing that X/Open is entitled, at most, to

an attorneys' fees award of $1,038.12.   The motion was referred to me for disposition (Doc. 265).

Although the claims asserted in this case are intertwined to a great extent, X/Open's contention that there can be no allocation of fees between the claims is mistaken.   Furthermore, the time records include non-compensable work and excessive attorney conferencing, and the hourly rates for counsel and the paralegal are too high.   Therefore, X/Open's Motion for Determination of Attorney Fee Amount (Doc. 262) will be granted to the extent that X/Open will be awarded attorneys' fees of $404,820.

I.

The plaintiff brought this lawsuit against the defendants after X/Open opposed the plaintiff's registration of the "iNUX" mark for his computer software business with the U.S. Patent and Trademark Office. X/Open argued that the "iNUX" mark is confusingly similar to X/Open's famous "UNIX" mark (see Doc. 161, p. 9).   The plaintiff argued that X/Open was not the legal owner of the UNIX mark and, therefore, could

not challenge his trademark application (see Doc. 245, p. 3).[1] The plaintiff alleged further that the defendants had engaged in a fraudulent scheme to conceal the true owner of the UNIX mark (id.).   Based on these allegations, the plaintiff filed an eleven-count complaint alleging violations of federal and state RICO statutes, 28 U.S.C. 1962(c)(d) and Fla. Stat. 895.03(3), (4); fraudulent federal trademark registration in violation of the Lanham Act, 15 U.S.C. 1120, 1125(a), and a criminal statute, 15 U.S.C. 1001; unfair competition in violation of the Lanham Act, 15 U.S.C. 1125(a); common law fraud; conspiracy to defraud; and violations of Florida's Communications Fraud Act, Fla. Stat. 817.034(4)(a), (b) (Doc. 1).

The parties subsequently filed cross-motions for summary judgment.   The court granted X/Open's Motion for Summary Judgment on all eleven counts of the complaint, holding that all of the plaintiff's claims fail based on its finding that X/Open is the owner of the UNIX trademark (Doc. 161).   In particular, the court explained that the plaintiff's RICO claims, which were premised on the allegation that the defendants engaged in a scheme to conceal from the public the true owner

---

[1]Page numbers refer to the pages assigned by the CM/ECF system.

of the UNIX mark, were not cognizable because X/Open was the lawful owner of the mark after 1998 and, prior to that time, there was no probative evidence of fraudulent concealment of ownership of the UNIX mark (id., p. 33).   Judgment was entered accordingly (Doc. 162).

X/Open (hereinafter "the defendant") then filed a Motion for Attorneys' Fees and Costs (Doc. 164).   That motion was referred to me for a report and recommendation (Doc. 181).   I recommended that the motion be granted to the extent that the defendant is entitled to recover its reasonable attorneys' fees incurred in defending the Florida RICO Act claims and its reasonable costs, pursuant to Fla. Stat. 772.014(3) and Rule 54(d)(1), F.R.Civ.P. (Doc. 196).   The defendant's arguments that it was entitled to attorneys' fees incurred in defense of the plaintiff's other claims were rejected (see id.).   That recommendation was adopted, and the determination of the amount of the fees and costs was deferred pending resolution of the appeal (Doc. 218).

After the Eleventh Circuit Court of Appeals affirmed the district court's Order (Doc. 245), the defendant filed a Motion for

-4-

Determination of the Amount of the attorneys' fees (Doc. 262).[2]   The motion was referred to me for disposition (Doc. 265).

As indicated, the defendant seeks an attorneys' fees award of $840,537, which includes fees incurred in defending all eleven counts of this lawsuit (Doc. 262).   The defendant argues that such an award is appropriate because all of the claims are inextricably intertwined so that defense counsel cannot separate its efforts spent defending each of the plaintiff's claims. The plaintiff controverts that the counts are intertwined, and argues that the defendant made no attempt to allocate hours to the discrete issues or to identify impermissibly billed hours (Doc. 269). Further, the plaintiff argues that the hourly rates for the defendant's attorneys and paralegals are too high for the Tampa area (id.).   In support of its contentions, the defendant submitted its attorney time records and an expert affidavit (Docs. 263, 264), and the plaintiff submitted a copy of the time records with hand-written objections and other documentation (Doc. 270).

---

[2]X/Open also filed a Bill of Costs totaling $15,007.35 (Doc. 166).   The plaintiff filed an opposition to the Bill of Costs (Doc. 178).

II.

It has been found that the defendant is entitled to an award of attorneys' fees based upon a fee-shifting provision contained in Florida's civil RICO statute, Fla. Stat. §772.104(3) (Doc. 218). The statute provides, in pertinent part, that "[t]he defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support."[3]

Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards.[4] <u>Florida Patient's Compensation Fund</u> v. <u>Rowe</u>, 472 So.2d 1145, 1150 (Fla. 1985); <u>Bell</u> v. <u>U.S.B. Acquisition Co., Inc.</u>, 734 So.2d 403, 406 (Fla. 1999). This method requires the court to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable

---

[3]The statute also states that "[i]n awarding attorney's fees and costs under this section, the court shall not consider the ability of the opposing party to pay such fees and costs." Fla. Stat. §772.104(3). Accordingly, the plaintiff's financial circumstances are not considered.

[4]In diversity cases, the determination of a reasonable attorney's fee is governed by state law. <u>Perkins State Bank</u> v. <u>Connolly</u>, 632 F.2d 1306, 1309-10 (5th Cir. 1980).

hourly rate for the services of the prevailing party's attorney. Bell v. U.S.B. Acquisition Co., Inc., supra. The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Norman v. Housing Authority of the City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1998); Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150-51.

In computing the lodestar amount, the following factors, enumerated in Rule 4-1.5 of the Rules Regulating the Florida Bar, are to be considered (Standard Guaranty Ins. Co. v. Quanstrom, 555 So. 2d 828, 830-31 n.3 (Fla. 1990)):

> (1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

> (4) The significance of, or amount involved in, the subject matter of the representation, the

responsibility involved in the representation, and the results obtained;

(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) Whether the fee is fixed or contingent....

After the lodestar is determined, the court considers an adjustment for results obtained. Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1302. However, there is a strong presumption that the lodestar is a reasonable fee. Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Notably, the defendant does not seek an enhancement of the lodestar in this case.

## A. REASONABLENESS OF THE NUMBER OF HOURS EXPENDED

Florida courts first calculate the number of hours reasonably expended on the litigation. In this regard, "the attorney fee applicant

should present records detailing the amount of work performed....Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary." <u>Florida Patient's Compensation Fund</u> v. <u>Rowe</u>, <u>supra</u>, 472 So.2d at 1150.   The fee opponent then "has the burden of pointing out with specificity which hours should be deducted." <u>Centex-Rooney Const. Co., Inc.</u> v. <u>Martin County</u>, 725 So.2d 1255, 1259 (Fla. App. 1999); <u>see</u> <u>also</u> <u>Norman</u> v. <u>Housing Authority of the City of Montgomery</u>, <u>supra</u>, 836 F.2d at 1301.

The defendant in this case seeks compensation for 1,880.8 hours of legal work on this matter, comprising 1,549.7 hours billed by three attorneys and 331.1 hours by a paralegal (Doc. 263-2, p. 2).   This encompassed work defending all eleven counts of the complaint between December 2006 and February 2009 (Doc. 263, p. 3, ¶7).

Specifically, the attorneys seek compensation for the following number of hours: Mark Sommers-408.7 hours, Evan Raynes-929.2 hours, and Naresh Kilaru-211.8 hours (Doc. 263-2, p. 2).

Additionally, the defendant seeks reimbursement for 331.1 hours of services by paralegal Susannah Kolstad (id.).[5]

In support of the requested hours, the defendant has submitted the affidavit of its fee expert, Ava K. Doppelt (Doc. 264).   Doppelt has been a member of the Florida Bar since 1984 and is board-certified in intellectual property law (id., ¶¶2, 5).   She is a shareholder with the Orlando law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A. (id., ¶2).   Doppelt opines that, "given the issues involved in this case and the number of filings made by the plaintiff, the overall number of hours worked was quite reasonable" (id., ¶20; see also id., ¶21).

Further, defense counsel avers that the requested number of hours reflects the removal of redundant or incorrect charges (Doc. 263, p. 2, ¶5).   Additionally, the defendant is not seeking recovery of local counsel's fees, or fees incurred in connection with its motions for attorneys' fees (Doc. 262, pp. 10-11).

---

[5]The defendant's legal team is identified in the time records as follows: Mark Sommers (MSS), Evan Raynes (EAR), Naresh Kilaru (NZK), and paralegal Susannah Klank (SCK) (Doc. 263-1).   Klank is referred to as Kolstad in the memorandum and affidavits (Docs. 262, 263, 264) and therefore will be referred to as Kolstad in this Order.

On the other hand, the defendant asserts that it is entitled to attorneys' fees for defending all eleven counts of the complaint.   In this regard, the defendant relies upon caselaw which holds that, when a claim which provides for the recovery of attorney's fees is "inextricably intertwined" with other allegations so that the fees for the claims cannot be distinguished, it is permissible to award fees for the entire litigation (Doc. 262, pp. 5-7).   See United States v. Jones, 125 F.3d 1418, 1430 (11th Cir. 1997); Country Manors Ass'n., Inc. v. Master Antenna Systems, Inc., 534 So.2d 1187, 1192-93 (Fla. App. 1988).

The defendant argues that this principle applies in this case. Thus, it contends (Doc. 262, pp. 4-5):

> [B]ecause all of [the plaintiff's] claims hinged on the common issue of whether X/Open owned the UNIX mark, the effort required to defend [the plaintiff's] Florida RICO claims was the same as that required to defend each and every one of [the plaintiff's] other claims.   As such, there is no practicable way for X/Open to separately determine the time spent in defense of [the plaintiff's] Florida RICO claims.

In support of this contention, defense fee expert Doppelt opines that that no allocation of hours spent defending the different claims

-11-

"is necessary here because all the claims arose out of a common core of facts" and were related to the issue of the identity of the owner of the UNIX trademark (Doc. 264, pp. 7-8, ¶¶16, 18).   The plaintiff controverts that the claims are inextricably intertwined, and argues that the defendant made no attempt to allocate hours to the discrete issues or identify impermissibly billed hours (Doc. 269).

"The party seeking fees has the burden to allocate them to the issues for which fees are awardable or to show that the issues were so intertwined that allocation is not feasible." Chodorow v. Moore, 947 So.2d 577, 579 (Fla. App. 2007); Crown Custom Homes, Inc. v. Sabatino, 18 So.3d 738, 740 (Fla. App. 2009).   Judge Howard recently explained the application of this principle in Durden v. Citicorp Trust Bank, FSB, 763 F.Supp.2d 1299, 1306-07 (M.D. Fla. 2011)(citations and some quotation marks omitted):

> Where ... a party is entitled to an award of fees for only some of the claims involved in the litigation, i.e., because a statute or contract authorizes fees for a particular claim but not others, the trial court must evaluate the relationship between the claims to determine the scope of the fee award.  If the claims involve a "common core" of facts and are based on "related

legal theories," a full fee may be awarded unless it can be shown that the attorneys spent a separate and distinct amount of time on counts as to which no attorney's fees were sought or were authorized. Thus, for example, where a particular claim is subject to a fee entitlement but one or more related claims are not, "time spent marshaling the facts" of the related claims is compensable because it "likely would have been spent defending any one or all of the counts." In contrast, time spent researching a "discrete issue" as to a claim without a fee entitlement should not be included in a fee award.

As the defendant has shown (Doc. 262, pp. 7-9), all of the plaintiff's claims arose from the same core factual allegations that X/Open was not the lawful owner of the UNIX trademark, and that the defendants engaged in a scheme to conceal the lawful owner of the mark. Thus, as the Eleventh Circuit stated, "[t]his case center[ed] on ownership of the UNIX trademark" (Doc. 245, p. 3). Further, ownership of the UNIX trademark was dispositive of the entire case on summary judgment (see id., Doc. 161). Moreover, the plaintiff himself admits that trademark ownership had to be decided before he could move forward with the other elements of his Florida RICO claims (Doc. 269, p. 6). Therefore, it is clear

that a great majority of the legal work in this case was devoted to the common defense of all of the plaintiff's claims.

However, the defendant's assertion that "the work done in defense of the Florida RICO claims was exactly the same as the work done in defense of all of the other claims" (Doc. 262, p. 9) is overstated. Thus, although there was a common core of facts upon which the claims were based, the Eleventh Circuit noted that "[t]he complaint raised eleven distinct claims for relief" (Doc. 245, p. 10). Specifically, the plaintiff alleged violations of Florida common law and several Florida and federal statutes. The notion that separate and distinct legal research and analysis was not conducted with regard to at least some of this authority is untenable. In this circumstance, the prevailing party is not entitled to recover its entire attorneys' fee. See Durden v. Citicorp Trust Bank, FSB, supra, 763 F.Supp.2d at 1307 ("although the services performed and fees rendered were often intertwined, Defense counsel also spent a separate and distinct amount of time in some respects on the [non-compensable] ... claims" and therefore should "not recover in entirety for all defense of those claims"); Action Sec. Service, Inc. v. America Online, Inc., 2007 WL

-14-

191308 at *2 (M.D. Fla. 2007)(unpub. dec.)(reducing the attorney's fee even though all of these claims were contingent on the same underlying facts because the complaint alleged distinct claims which would reasonably be the subject of distinct legal research and evaluation).

Furthermore, a review of the time records shows that fees are sought for matters that are not attributable to the defense of the civil RICO claim. For example, "legal research concerning ... unfair competition claim" (Doc. 263-1, p. 5, 11/10/06); "legal research concerning Florida Communications Fraud Act claims" (id., p. 6, 11/14/06); and work related to TTAB proceedings (id., p. 142, 2/24/09) are distinct from the defense of the civil RICO claim and, therefore, are not properly compensable under the civil RICO statute. This circumstance indicates that the defendant did not make a sufficient effort to separate time devoted to different claims unrelated to the defense of the civil RICO action. See In the Matter of Central Ice Cream Co., 836 F.2d 1068, 1073-74 (7th Cir. 1987)(rejecting contention that "it [was] impossible or unnecessary to segregate the time according to its cause."). The defendant also has not explained why its substantial work on a joint defense agreement (Doc. 263-1, pp. 13, 16, 22,

23, 26), which was a preference that was not reasonably necessary for the defense of the civil RICO claim, should be chargeable to the plaintiff.

Doppelt's expert opinion that "the appropriate measure of hours here should take into account the time spent in defending the entire lawsuit" (Doc. 264, ¶18) is not given any weight because there is no indication that she actually attempted to allocate the billing hours.  See Lubkey v. Compuvac Systems, Inc., 857 So.2d 966, 968 (Fla. App. 2003) (expert witness's testimony that all issues in the complaint were interrelated was not competent proof because, among other reasons, the expert did not testify that he made any attempt to allocate the time); Crown Custom Homes, Inc. v. Sabatino, supra, 18 So.3d at 740 (an expert opinion lacking a sufficient factual foundation does not assist the court).   Rather, Doppelt's opinion was based on her experience that, where a single factual issue is at the heart of multiple claims, it is impossible to separate out the time spent on the different claims (Doc. 264, ¶18).   Thus, she does not state that she made any attempt at allocation in this case.

Additionally, the distinction between the civil RICO and other claims may be more pronounced than the fee application suggests because

there are time entries that do not contain sufficiently detailed descriptions of the work performed. Thus, unidentified research and general descriptions such as "Communicate with counsel" (see, e.g., Doc. 263-1, p. 16, 12/13/06; p. 6, 11/15/06; p. 87, 3/25/08) do not provide any indication of the subject matter of the work. Such vague descriptions deny the court an opportunity to review meaningfully the fee petition to determine whether claims are inextricably intertwined. See H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)(the applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims").

Although counsel is not required to record in great detail how each minute of his time was expended, "the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303. Consequently, a court may discount time when the description of the work performed is overly vague. See Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150; Ocean Club Community Ass'n, Inc. v.

Curtis, 935 So.2d 513, 517 (Fla. App. 2006)(the party seeking attorney's fees bears "an affirmative burden to demonstrate what portion of the effort was expended on the claim which allowed attorney's fees," and if he cannot meet his burden for any reason, including inadequate timesheets or record keeping, attorney's fees may be denied).

In sum, the assertion that the civil RICO claims were inextricably intertwined with the other claims so that there could be no allocation of time devoted to different claims is incorrect. Therefore, the practical effect of granting this fee request would be improperly to render the plaintiff responsible for claims for which the defendant was not awarded fees.

Additionally, an award of the requested fee is not warranted because the billing records contain time entries that are not properly billed to the plaintiff, or are excessive. For example, the billing records contain a myriad of attorney conferences. Although a reasonable number of attorney conferences are necessary to the progress of the litigation, the amount of attorney conferences and communications in the time records is excessive. Thus, conferrals between members of the legal team, and with

counsel for the other defendants, appear on virtually every page of the more than 100 pages of time records. Compounding the problem is defense counsel's "block billing," in which numerous tasks are listed in one time entry, thereby making it impossible to determine the actual amount of time counsel spent conferring with each other. Therefore, a reduction of hours for excessive attorney conferencing is appropriate. See Duckworth v. Whisenant, 97 F.3d 1393, 1398 (11th Cir. 1996).

Further, regardless of whether the claims are considered inextricably intertwined, the time records include non-compensable work that should be deducted. Thus, work for TTAB proceedings (see, e.g., Doc. 263-1, p. 141, 2/20/09, 2/23/09); "review[ing] issues for appeal and factual findings for appeal" (id., p. 141, 2/20/09), and cryptic post-summary judgment entries regarding "strategy" (e.g., id., p. 141, 2/20/09, 2/23/09) all performed after summary judgment was granted, have not been shown to be reasonably related to the defense of the civil RICO claims.

Additionally, it is noted that the defendant stated that it was not seeking reimbursement of fees incurred in connection with the motions

for attorneys' fees (Doc. 262, pp. 10-11).   However, the billing records include work related to the attorneys' fees motions (see e.g., Doc. 263-1, p. 143, 2/28/09 (NZK)).   Further, the legal work related to the determination of the amount of the attorneys' fees (see, e.g., id., p. 142, 2/27/09 (SCK)) is not compensable.   McMahan v. Toto, 311 F.3d 1077, 1085 (11th Cir. 2002), cert. denied, 539 U.S. 914 (2003)(Under Florida law, fees incurred for litigating the amount of the attorney's fee are not recoverable).

Finally, there is a substantial amount of paralegal time spent on clerical and secretarial tasks that are not chargeable to the plaintiff. For example, the defendant is seeking to recover time the paralegal spent "retriev[ing] contact information for various outside counsels" (Doc. 263-1, p. 4, 11/01/06; p. 126, 11/24/08), which appears to be nothing more than obtaining telephone numbers. Similarly, "retrieve and distribute pleadings from Court docket" (see, e.g., id., p. 82, 2/14/08), "prepare attorney working copy of documents" (see, e.g., id., p. 91, 4/22/08), "update ... attorney docket to include current case deadlines" (see, e.g., id., p. 30, 2/9/07), and vague entries such as "[r]etrieve documents at attorney request" (see, e.g., id., p. 31, 2/13/07) all indicate clerical and secretarial

work.   There are also cryptic entries by the paralegal for "Monitor[ing] Court's electronic filing system for [the plaintiff's] Oppositions to Motions for Summary Judgment" (id., pp. 119, 120, 10/13/08; 10/16/08).

Work by paralegals is recoverable "only to the extent that the paralegal performs work traditionally done by an attorney."   Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988). See TCC Air Services, Inc. v. Schlesinger, 2009 WL 565516 at *5 (S.D. Fla. 2009)(unpub. dec.) (identifying paralegal tasks such as researching, shepardizing caselaw, digesting and indexing depositions and interviewing clients).   Costs associated with clerical tasks are overhead expenses which are not compensable in the attorney's fees award.   Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir. 1982).   Thus, although the defendant may prefer to employ a paralegal for such tasks, it has not shown that they are "work traditionally done by an attorney" in order to justify billing them to an adversary under a fee-shifting statute.

In sum, the defendant should have excluded from its fee application work that was distinct from the defense of the Florida civil RICO allegations.   It should also have excluded other non-compensable

and excessive time entries.  Further, it should have kept more detailed time records of tasks to facilitate the determination of whether the claims are inextricably intertwined.  It is noted, in addition, that the number of hours spent on this case appears to be on the high side considering that the case was resolved on summary judgment, there were no depositions taken, and the case boiled down to two agreements that established X/Open's ownership of the trademark.[6]

Accordingly, under these circumstances, a reduction of the requested fee is warranted.  In this regard, the plaintiff argues frivolously that the defendant is entitled to no more than $1,038.12 (Doc. 269, p. 20). Further, the plaintiff's conclusory, hand-written scribbles on the time records (Doc. 270, Ex. 1) are not helpful.  Thus, the plaintiff's contention that time spent establishing trademark ownership is not compensable is baseless.  Further, the plaintiff provides no legal authority for eliminating all attorney conferences, and his other objections, such as "unrelated,"

---

[6]On the other hand, the plaintiff's vexatious conduct in this litigation undoubtedly played a substantial role in multiplying these proceedings (see Doc. 262, pp. 13-14).

"duplicative," and "other impermissible" are too vague to assist the court in determining the propriety of the time entries.

"A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Therefore, when faced with a voluminous billing record, the court has two choices if it "finds the number of hours claimed is unreasonably high": it "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., supra, 548 F.3d at 1350; see, e.g., Villano v. City of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001)(569.30 hours is extensive enough that the district court is not expected to conduct an hour-by-hour analysis of the billing records); Durden v. Citicorp Trust Bank, FSB, supra, 763 F.Supp.2d at 1299 (when faced with imprecise billing records and objections, and non-compensable work that was not extracted from the billing records, court elected an across the board cut).

In this case, not only is an in-depth analysis of more than 100 pages of time records a waste of judicial resources, see Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994), it would not be beneficial

because many entries contain work descriptions that are too general and/or are grouped together in block billing so that it would be impossible to discern on an entry-by-entry basis what time should be cut. Therefore, upon review of the time records, the complaint, and orders of the court, and considering my own experience, I find that an award of 70% of the requested time appropriately compensates the defendant for the defense of the Florida civil RICO claims. The same 30% reduction is appropriately applied to the paralegal work because, as discussed above, there are numerous entries which reflect non-compensable clerical and secretarial work.

Accordingly, the number of hours of legal work that will be awarded for each individual in this action is as follows:[7]

| Attorney/Paralegal | Number of hours |
|---|---|
| Sommers | 286 |
| Raynes | 650 |
| Kilaru | 148 |
| Kolstad | 232 |

_____

[7] These numbers are rounded to the nearest whole digit.

**Total hours of legal work:     1316**

B.  HOURLY RATES.

The second half of the lodestar equation requires the court to

determine a reasonable hourly rate for the services of the prevailing party's

attorney.   In <u>Florida Patient's Compensation Fund</u> v. <u>Rowe, supra,</u> 472

So.2d at 1150-51, the Florida Supreme Court stated:

> In establishing this hourly rate, the court should
> assume the fee will be paid irrespective of the
> result, and take into account all of the [Rule 4-1]
> factors except the "time and labor required," the
> "novelty and difficulty of the question involved,"
> the "results obtained," and "[w]hether the fee is
> fixed or contingent."   The party who seeks the
> fees carries the burden of establishing the
> prevailing "market rate," *i.e.,* the rate charged in
> that community by lawyers of reasonably
> comparable skill, experience and reputation, for
> similar services.

Further, "[t]he court ... is itself an expert on the question [of attorneys'

fees] and may consider its own knowledge and experience concerning

reasonable and proper fees."   <u>Norman</u> v. <u>Housing Authority of the City of

Montgomery, supra,</u> 836 F.2d at 1303.

Sommers and Raynes request fees based on an average hourly

rate of $610 and $482, respectively (Doc. 263-2, p. 2).   Kilaru requests a

fee based on an average hourly rate of $405, and paralegal Kolstad seeks an average hourly rate of $195 (id.).   This average reflects the change in legal counsel's hourly rates during the pendency of the litigation from 2006 to 2009.   Thus, Sommers's hourly rate ranged from $570 in 2007 to $670 in 2009; Raynes's rate increased from $447 in 2006 to $530 in 2009; and Kilaru's rate of $350 in 2006 increased to $455 in 2009 (id.). Additionally, paralegal Kolstad's hourly rate ranged from $178 in 2006 to $215 in 2009 (id.).

The defendant asserts that these billing rates are "generally comparable to those charged by other large law firms with sizeable intellectual property law practices" (Doc. 262, p. 16).   The plaintiff argues that the requested rates are too high, and contends that reasonable hourly rates for Sommers, Raynes, Kilaru, and Kolstad are: $335, $335, $164, and $95, respectively (Doc. 269, p. 13).

Sommers is a partner with Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, in Washington, D.C., ("the Finnegan firm") (Doc. 263, p. 3, ¶9).   He has more than twenty years of legal experience, and has been identified as a trademark expert (id.).   Raynes, a partner with the

Finnegan firm and the lead attorney in this case, has more than ten years of legal experience (id., ¶¶4, 9). Kilaru, an attorney with the Finnegan firm, has more than five years of legal experience (id., ¶9). Kolstad has worked as a legal assistant for the Finnegan firm for more than five years (id.). The defendant states that the Finnegan firm is one of the largest intellectual property law firms in the world, and has been ranked as a first tier law firm in the field of intellectual property (id., p. 2, ¶3; see also Doc. 264, ¶9).

Doppelt, the defendant's fee expert, states that she is familiar with the prevailing rates for legal services in intellectual property cases in Central Florida and around the country, and opines that "the rates charged by the four professionals here are well within reason for the particular circumstances of this case" (Doc. 264, ¶¶6, 15). More specifically, Doppelt acknowledges that these hourly rates are higher than intellectual property litigators in Tampa, but asserts that, for a case of this type and magnitude, "litigants often select counsel such as [the Finnegan firm] with a particular expertise from the national marketplace" (id., ¶¶11, 12).

The plaintiff objects to defense counsel's hourly rates, arguing that they are "unreasonably high" for the Tampa area, and that the

defendant's selection of a Washington D.C. firm was a personal choice that was not necessitated by the circumstances of the case (Doc. 269, pp. 12-13). Thus, he contends that there are several highly qualified local firms that could have litigated this matter, with hourly rates that are hundreds of dollars less than the Finnegan firm (id.).

Considering the probative evidence in this case, and my knowledge of the prevailing market rate in Tampa for intellectual property litigators with comparable experience, reasonable hourly rates for defense counsel are: Sommers-$425; Raynes-$337; Kilaru-$285; and Kolstad-$95. See Norman v. Housing Authority of the City of Montgomery, supra, 836 F.2d at 1303 (the court is itself an expert). In arriving at this conclusion, I have disregarded Doppelt's opinion because she "evaluated the reasonableness of the fees requested from the perspective ... of a nationally known Washington D.C. intellectual property firm" (Doc. 264, ¶12) and does not opine as to a range of hourly rates for intellectual property attorneys in Tampa.

Thus, the "relevant market" for purposes of determining the reasonable hourly rate for an attorney's services is "the place where the

case is filed." American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). Although the hourly rates of these Washington D.C. attorneys may be comparable to those of other large intellectual property firms, they are much higher than average attorney rates for Tampa.   In order to recover the non-local rates of an attorney, the defendant must show there was a lack of competent local counsel who were willing and able to handle its claims.   Id.   The defendant did not satisfy this burden.   Rather, defense expert Doppelt states (Doc. 264, ¶11):

> [B]ecause of the plaintiff's multi-million dollar damage demand, the importance of the world famous UNIX trademark at issue and its value to X/Open, the sophistication of X/Open, a United Kingdom-based global company, and the complexity of the issues, X/Open retained as its lead counsel the world-renowned intellectual property specialty law firm, Finnegan, Henderson, which is based in Washington D.C.

However, this evidence shows nothing more than the defendant's personal preference for the Finnegan firm.   Thus, the defendant does not assert, nor does this explanation establish, that the defendant could not find experienced intellectual property litigators in Tampa to competently defend this case.   See American Civil Liberties Union of Georgia v. Barnes,

supra, 168 F.3d at 437 ("A prevailing plaintiff is not entitled to have the losing party pay for an attorney with the most expertise on a given legal issue, regardless of price, but only for one with reasonable expertise at the market rate."); see also Kearney v. Auto-Owners Ins. Co., 713 F.Supp.2d 1369, 1379 (M.D. Fla. 2010)("Although [a party] can opt to hire an out-of-town lawyer, an opposing party should not be required to pay for this choice unless no local counsel can be found.").   The fact that the crux of this case was ownership of the UNIX trademark, which was established by two long-standing agreements, buttresses the conclusion that employment of the Finnegan firm was the defendant's personal preference, and that the case was not so complex as to conclude that no Tampa counsel could adequately defend this case.   Further, even if this were a complex trademarks case, my experience is that there are a number of intellectual property lawyers in Tampa that could have skillfully handled this matter. In all events, the defendant has not met its burden on this point.

In sum, because there is no probative evidence that the Tampa area lacks counsel who could competently litigate this case the reasonable hourly rate should be based on customary rates in Tampa for an attorney

with comparable credentials.   See American Civil Liberties Union of
Georgia v. Barnes, supra, 168 F.3d at 437.   In this regard, the attorneys
are being awarded hourly rates that I consider to be top of the scale for
Tampa, in recognition of Sommers's specialized skills and the law firm's
reputation.

      Finally, with regard to paralegal Kolstad, my experience is
that a reasonable hourly rate for an experienced paralegal in the Tampa
area is $95.   Kolstad's experience as a legal assistant with the Finnegan
firm for more than five years does not warrant a higher hourly rate, nor has
it been shown that the type of work she performed in this case justifies a
higher rate.   Thus, although it was represented that Kolstad performed
many of the tasks of a first year associate (Doc. 262, p. 15), as discussed
above, Kolstad also billed for numerous tasks that are clerical or secretarial
work.

      Additionally, the Florida Supreme Court has identified other
factors to consider in determining a reasonable hourly rate.   See Florida
Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150-51.

However, the defendant has not argued, and it does appear, that any of the other Rowe factors warrant a higher hourly rate in this case.

Therefore, for the foregoing reasons, the hourly rates of the defense team will be set as follows:

| Counsel or Staff | Rate per hour |
| --- | --- |
| Sommers | $425 |
| Raynes | $337 |
| Kilaru | $285 |
| Kolstad | $95 |

Accordingly, the sum of these hourly rates multiplied by the number of hours expended in this case, results in the following lodestar amount:

| Counsel or Staff | Hourly Rate | Number of Hours | Total |
| --- | --- | --- | --- |
| Sommers | $425 | 286 | $121,550 |
| Raynes | $337 | 650 | $219,050 |
| Kilaru | $285 | 148 | $42,180 |
| Kolstad | $95 | 232 | $22,040 |
| **Total Lodestar** | | | **$404,820.** |

Finally, there is no request, or basis, for a modification of the lodestar.

It is, therefore, upon consideration

ORDERED:

That the Motion for Determination of Attorney Fee Amount (Doc. 262) is hereby **GRANTED to the extent** that defendant X/Open is hereby awarded attorneys' fees of $404,820, plus interest at 6% from June 28, 2010, until September 30, 2011, and interest at a rate of 4.75% from October 1, 2011, to the present date.[8]

DONE and ORDERED at Tampa, Florida, this 6 day of September, 2012.

_Thomas G. Wilson_
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[8]As noted by the defendant, it is entitled to pre-judgment interest on the attorneys' fees award (Doc. 262, pp. 16-17). See Butler v. Yusem, 3 So.2d 1185, 1186 (Fla. 2009) ("prejudgment interest begins to accrue on the date entitlement to attorney fees is fixed). Therefore, in this case prejudgment interest has been accruing since June 28, 2010 (see Doc. 218). While, as the defendant notes, the pertinent interest rate at the outset was 6%, Florida's Chief Financial Officer has set the rate at 4.75% as of October 1, 2011. Accordingly, after that date, the lower rate applies. See Talking Walls, Inc. v. Hartford Casualty Insurance Company, 2005 WL 6011243 (N.D. Fla.).

-33-